LucasMTDRecusalCivil Action No. 3:24-cv-874



## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

### Richmond Division

---

**POWHATAN COUNTY SCHOOL BOARD, (SANDS ANDERSON LAW FIRM)**

Plaintiff,

v.

**Civil Action No. 3:24-cv-874**

**TODD SKINGER**

and

**DR. KANDISE LUCAS, BA, MSEd, FFT, RBT, QMHP-T, QMHP-C, PhD**

Defendants.

---

## CO-DEFENDANT DR. LUCAS' MOTION TO RECUSE JUDGE ROBERT PAYNE, DISMISS SLAPP SUIT, AND RESCIND THE PERMANENT FEDERAL COURT BAN

---

## I. INTRODUCTION

LucasMTDRecusalCivil Action No. 3:24-cv-874

Comes now, Dr. Kandise Lucas, co-defendant in the above-captioned case, and respectfully moves this Honorable Court to recuse the Honorable Judge Robert Payne from further participation in this case or any other litigation involving Lucas due to his demonstrated bias, racial discrimination,animus, retaliation, and conflicts of interest. Judge Robert Payne has made it clear that he is fully dedicated to criminalizing, demonizing, and ostracizing Dr. Lucas; assuming the role of partial and maliciously-motivated "fault-finder" as opposed to an objective "fact-finder" that seeks justice for the children that Lucas fiercely advocates on behalf of. This motion is filed pursuant to 28 U.S.C. § 455 and § 144 and is based upon the following facts and legal arguments.

Dr. Kandise Lucas, a Black female non-attorney advocate, has represented students and families in special education cases, often challenging school districts and their legal representatives. Her advocacy has led to significant successes, but it has also drawn targeted attacks from certain attorneys, school districts, and individuals who wish to silence her work. These efforts culminated in actions by Judge Robert Payne that have undermined the fairness of these proceedings and violated her rights. This motion seeks the recusal of Judge Robert Payne due to his compromised impartiality, racial bias, retaliation, and his conflict of interest in presiding over matters involving those with whom he has a personal and professional biases and resolute prejudices.

This motion seeks the recusal of Judge Robert Payne from further involvement in this case due to clear conflicts of interest and bias against the Co-Defendant, Dr. Kandise Lucas, who has been advocating for students with disabilities. Additionally, this motion requests the immediate rescindment of any bans or obstructive actions, by Judge Payne designed to stifle Dr.

LucasMTDRecusalCivil Action No. 3:24-cv-874

Lucas' advocacy on behalf of vulnerable students, a majority of whom are from black and brown communities.

Dr. Lucas has been a fierce advocate for children with disabilities, particularly in Virginia, where systemic issues persist in both the educational and judicial systems, especially for marginalized communities. This motion also highlights the widespread retaliatory tactics, including bias from hearing officers. Judges, administrators, and the filing of Strategic Lawsuits Against Public Participation (SLAPP suits), that prevent individuals from exercising their civil rights.

The **Individuals with Disabilities Education Act (IDEA)** and **Section 504 of the Rehabilitation Act of 1973** are fundamental civil rights laws that aim to ensure individuals with disabilities receive equal educational opportunities and access to public services. These statutes are grounded in the principles of equality, non-discrimination, and the right to access services, and any attempt to obstruct or impede citizens' ability to seek redress for violations of these laws directly contravenes their constitutional rights, as well as federal statutory protections. The right to seek redress and enforcement of these civil rights cannot be obstructed, nor impeded by the Courts, specifically when those that are engaging in the obstruction and impeding are seeking reaffirmation of their civil rights violations via the weaponization of the Courts.

**IDEA and Section 504 Are Civil Rights Laws And Matters of Public Concern**

1. **IDEA as a Civil Rights Law**: IDEA is not merely an education law; it is a civil rights statute designed to ensure that children with disabilities receive a Free Appropriate Public Education (FAPE). IDEA's core provisions are aimed at guaranteeing equal educational

LucasMTDRecusalCivil Action No. 3:24-cv-874

opportunities for children with disabilities, which is a fundamental civil right. The law

requires school systems to provide services, accommodations, and supports to students

with disabilities so they can succeed in public education.

- ○ **Case Law**: *Endrew F. v. Douglas County School District*, 137 S. Ct. 988 (2017).

   The U.S. Supreme Court reaffirmed that IDEA's purpose is to ensure that students

   with disabilities have access to a meaningful education, thus protecting their civil

   rights to equal educational opportunities.

2. **Section 504 of the Rehabilitation Act**: Section 504 is another crucial civil rights statute

   prohibiting discrimination against individuals with disabilities by entities receiving

   federal funding, including schools. It ensures that children with disabilities have the right

   to participate in and benefit from education programs and activities on an equal basis

   with non-disabled students.

- ○ **Case Law**: *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999).

   The U.S. Supreme Court held that schools may be held liable under Section 504

   for discrimination against students with disabilities, emphasizing the law's civil

   rights nature.

### II. The Right to Seek Redress for Violations of IDEA and Section 504

Both IDEA and Section 504 explicitly establish mechanisms for parents and guardians to enforce

their rights to a free and appropriate education. These provisions give individuals the right to

seek redress for violations, ensuring that students with disabilities are not deprived of their

educational entitlements. Any action that obstructs or impedes a citizen's ability to pursue these

LucasMTDRecusalCivil Action No. 3:24-cv-874

legal remedies undermines fundamental constitutional rights and violates the principles underlying these civil rights laws.

1. **IDEA and Access to Due Process**: Under IDEA, parents or guardians who believe that their child's educational rights have been violated have the right to request a **due process hearing**. The law allows families to file complaints regarding violations of IDEA and seek judicial review if the outcome of the hearing is unsatisfactory. This is a vital mechanism to ensure that IDEA's protections are enforced.

   o **Case Law**: *Schaffer v. Weast*, 546 U.S. 49 (2005). The U.S. Supreme Court confirmed that IDEA provides a comprehensive scheme to resolve disputes, including the right to seek redress in state or federal courts, underscoring the importance of enforcing civil rights in the educational setting.

2. **Section 504 and the Right to Sue**: Section 504 provides a private right of action, allowing individuals to file lawsuits in court to seek remedies for discrimination based on disability. This statutory right ensures that children and parents can hold schools accountable for failing to comply with the law.

   o **Case Law**: *Alexander v. Choate*, 469 U.S. 287 (1985). The U.S. Supreme Court affirmed that Section 504 guarantees individuals the right to seek legal redress for violations of their rights, emphasizing that this private right of action is a necessary means to protect civil rights under the statute.

### III. Courts Cannot Obstruct or Impede the Right to Seek Redress

The **First Amendment** of the U.S. Constitution guarantees the **right to petition the government for redress of grievances**. This fundamental right includes the ability to bring

LucasMTDRecusalCivil Action No. 3:24-cv-874

lawsuits in courts to challenge violations of rights, including those guaranteed under IDEA and Section 504.

1. **Right to Petition for Redress**: The right to seek judicial relief for violations of civil rights is protected under the **First Amendment** and is essential for ensuring that laws like IDEA and Section 504 are meaningful and enforceable. Attempts by courts to obstruct or dismiss such claims without due consideration would violate this constitutional right.

   o **Case Law**: *Bates v. State Bar of Arizona*, 433 U.S. 350 (1977). The U.S. Supreme Court reinforced the idea that the right to petition the government, including seeking redress through the courts, is a fundamental constitutional right.

2. **Due Process and Equal Protection**: Both IDEA and Section 504 are grounded in constitutional principles of **due process** and **equal protection**. Denying individuals access to the courts to seek redress for violations of these laws would constitute an unconstitutional deprivation of their rights to equal treatment under the law.

   o **Case Law**: *Goldberg v. Kelly*, 397 U.S. 254 (1970). The U.S. Supreme Court held that individuals have a right to procedural due process in administrative hearings, and by extension, they also have the right to seek redress in court when their rights under laws like IDEA and Section 504 are violated.

### IV. Obstruction of Redress Violates Federal Statutes

Any attempt by courts or other actors to prevent individuals from exercising their right to seek redress for violations of IDEA and Section 504, such as through procedural dismissal of valid claims or unlawful barriers to the judicial process, would be inconsistent with the goals and purposes of these civil rights statutes.

LucasMTDRecusalCivil Action No. 3:24-cv-874

1. **IDEA's Enforcement Mechanisms**: IDEA mandates that parents or guardians must have access to dispute resolution mechanisms, including administrative hearings and judicial review. Courts cannot disregard these enforcement avenues or dismiss claims without affording full and fair consideration.

   o **Case Law**: *T.A. v. McKinney Independent School District*, 861 F.2d 655 (5th Cir. 1988). Courts ruled that when a party files a claim under IDEA, the court must allow the dispute to be heard in a manner that fully respects the protections IDEA affords.

2. **Section 504's Private Right of Action**: Section 504 explicitly allows individuals to sue for enforcement of their rights. Any attempt to obstruct access to the courts or dismiss valid claims based on technicalities would violate this private right of action and contravene the statutory guarantees provided by Section 504.

   o **Case Law**: *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009). The U.S. Supreme Court reaffirmed that Section 504 provides a private right of action and that courts must allow individuals to seek legal redress under the statute.

IDEA and Section 504 are critical civil rights laws designed to ensure that children with disabilities receive appropriate educational opportunities without discrimination. These statutes explicitly grant individuals the right to seek redress for violations, including through litigation in court. Courts cannot obstruct or impede this right to seek redress, as doing so would violate constitutional guarantees under the **First and Fourteenth Amendments**, as well as the statutory protections offered by IDEA and Section 504. Courts have an obligation to ensure that the civil

LucasMTDRecusalCivil Action No. 3:24-cv-874

rights of students with disabilities are upheld, and any action that undermines this access to justice would be both unlawful and unconstitutional.

In Virginia, a **SLAPP** (Strategic Lawsuit Against Public Participation) is a lawsuit filed to intimidate or silence individuals or organizations from exercising their First Amendment rights, particularly the right to speak out on public issues, which include:

- The abuse and neglect of students with disabilities by school boards;
- The illegal outsourcing of special education service delivery to predatory law firms that are not licensed to engage in the practice of special education service delivery
- The misallocation of IDEA Part B grant funds, intended for student with disabilities to legal fees; enriching Sands Anderson's shareholders instead of our communities as educational stakeholders at our expense;
- Falsification of grades, attendance records, special education documents, medical documents; all for the purpose of minimizing the severity of physical, mental, and learning disabilities of students.
- The systemic and wide-spread privacy and confidentiality violations that committed against families when unethical administrators and predatory law firms, Big Law and Big Ed, access highly confidential records to undermine the authority of parents to ensure that schools have all needed information to develop appropriately individualized educational programs.
- Suspending/Expulsion of 4 and 5 year olds from pre-school

LucasMTDRecusalCivil Action No. 3:24-cv-874

- Acceptance of state and federal funding by schools to provide mental health and literacy services that are never provided.

The primary purpose of a SLAPP is not to win the case but to burden the defendant with the costs of legal defense, thereby discouraging them from speaking out, as the Powhatan School Board and Sands Anderson law firm are attempting to do regarding Dr. Lucas, the Halvorsons, and the Skinger families; all of who are fierce and relentless advocates on behalf of their own students as well as others; speaking out at school board meetings, posting on social media, and educating others to do the same.

The **First Amendment** of the U.S. Constitution guarantees citizens the right to petition the government for a redress of grievances. This includes the right to bring a lawsuit in court to seek remedy for wrongs done to them *and their children with disabilities.*

**Relevant Code:**

- **U.S. Constitution, First Amendment**:
  *"Congress shall make no law... abridging... the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."*

**Case Law:**

- **Bates v. State Bar of Arizona**, 433 U.S. 350 (1977): The U.S. Supreme Court upheld the right to petition the government, emphasizing the importance of the right to seek redress for grievances, which includes the filing of lawsuits.

  **2. 42 U.S.C. § 1983 - Civil Rights Act**

LucasMTDRecusalCivil Action No. 3:24-cv-874

**42 U.S.C. § 1983** allows individuals to sue state actors (such as government officials) who have violated their constitutional rights. This statute reinforces the right to seek legal redress in federal court for violations of civil rights, just as the Halvorsens and Skinger families have. IDEA and Section 504 are civil rights that cannot be violated without redress.

**Relevant Code:**

- **42 U.S.C. § 1983**:

  *"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws..."*

**Case Law:**

- **Monroe v. Pape**, 365 U.S. 167 (1961): The U.S. Supreme Court ruled that 42 U.S.C. § 1983 allowed individuals to seek redress for constitutional violations, such as unlawful police actions.

### 3. Due Process Clause - 14th Amendment

The **Due Process Clause** of the **14th Amendment** ensures that individuals have the right to seek legal remedy when their rights are violated by state actions.

**Relevant Code:**

10

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **14th Amendment, U.S. Constitution**:

    *"No state shall... deprive any person of life, liberty, or property, without due process of law..."*

## Case Law:

- **Goldberg v. Kelly**, 397 U.S. 254 (1970): The U.S. Supreme Court established that individuals are entitled to procedural due process before being deprived of public assistance or property, and that includes the right to seek redress through legal proceedings.

### 4. Access to Courts - Right to Sue

Under both federal and state law, individuals have the right to access the courts to seek redress for wrongs committed against them. The courts have consistently held that individuals are entitled to seek remedy for violations of their rights and that actions intended to restrict access to the courts, such as **SLAPP suits**, are unconstitutional.

## Relevant Code:

- **Federal Rules of Civil Procedure (FRCP)**: These rules govern the procedures for seeking redress in federal court, outlining the process for filing complaints, motions, and responses.
- **State Procedural Rules**: Similar rules apply at the state level, ensuring individuals can seek redress in their respective state courts.

## Case Law:

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Miller v. California**, 413 U.S. 15 (1973): The Supreme Court reinforced the notion that access to the courts is a fundamental right, essential to the protection of the First Amendment right to petition.

- **Shapiro v. McManus**, 136 S. Ct. 450 (2015): The U.S. Supreme Court ruled that the right to seek redress in the courts cannot be easily restricted or denied, particularly in cases involving constitutional rights.

In summary, the **right to seek redress** is protected under the **First Amendment** (right to petition), **Due Process Clause** (14th Amendment), **42 U.S.C. § 1983** (civil rights suits), and procedural rules that govern court access. These legal protections ensure that individuals can challenge violations of their rights and seek remedy through the judicial system. Virginia has a **anti-SLAPP** statute, known as **Virginia's "Anti-SLAPP Statute"** (Code of Virginia § 8.01-223.2). It allows individuals who are sued for exercising their free speech rights to file a **special motion to dismiss** the lawsuit, provided that the speech was made in connection with a public issue, such as government policy, community issues, or matters of public concern.

The purpose of this statute is to protect citizens from lawsuits that are intended solely to suppress their right to free speech or participation in public matters, and allows for:

1. **Special Motion to Dismiss**: If a person is sued for making statements that are related to public issues or matters of public concern, they can file a motion to dismiss the lawsuit under the anti-SLAPP statute.

2. **Burden of Proof**: The person filing the motion to dismiss must demonstrate that the lawsuit is based on their exercise of free speech or petition rights.

LucasMTDRecusalCivil Action No. 3:24-cv-874

3. **Sanctions**: If the court finds that the lawsuit is indeed a SLAPP, the plaintiff may be ordered to pay the defendant's legal fees and other costs associated with the defense of the lawsuit.

SLAPP suits *are often filed against activists, journalists, or individuals who speak out on matters such as government policies, corporate behavior, or other issues of public interest.* The Virginia statute is designed to deter such lawsuits by providing a legal pathway for dismissal and penalties for those who misuse the legal system to stifle free speech.

In the context of public law and the legal protections afforded to individuals speaking out on issues of public concern, **special education** clearly qualifies as a **matter of public interest**. The argument that special education falls under the realm of public interest stems from several key considerations related to the educational rights of children, the significant impact on public policy, and the broader societal implications of how students with disabilities are educated.

### 1. The Right to Education and Public Policy

Under both federal and state law, education is a fundamental right, and ensuring that all students have access to appropriate educational services is a cornerstone of democratic society. Special education, which guarantees a **Free Appropriate Public Education (FAPE)** to children with disabilities, is explicitly designed to protect students who may otherwise face significant barriers to access. This is mandated by federal law under the **Individuals with Disabilities Education Act (IDEA)**, which requires that public schools meet the educational needs of children with disabilities.

LucasMTDRecusalCivil Action No. 3:24-cv-874

The functioning and implementation of special education laws impact public policy on education, as well as public funds allocated for services. Discussions surrounding the allocation of resources for special education, the fairness of policies, and the adequacy of services are not only important to families but also to the broader community, as they reflect how society values and provides for its most vulnerable members.

### 2. The Impact on Public Institutions

Special education programs are governed by public institutions and funded by taxpayer dollars. The allocation of resources to special education, the quality of services, and the training of educators are decisions made by public school boards, state education departments, and federal agencies. As these decisions directly impact public funds, they are a matter of significant concern to the public.

Moreover, special education services affect other aspects of public institutions, such as law enforcement (in cases of student behavioral issues), health care (due to the intersection of disabilities and health needs), and social services. Thus, the operation, fairness, and effectiveness of special education programs are fundamentally tied to the functioning of public institutions, making the issue of special education a matter of public interest.

### 3. The Broader Social and Economic Implications

The education of children with disabilities has profound social and economic implications. Ensuring that children with disabilities are given equal educational opportunities affects their long-term success in the workforce and their ability to contribute to society. When

LucasMTDRecusalCivil Action No. 3:24-cv-874

students with disabilities are denied access to proper education, it not only limits their future opportunities but also places burdens on social services and healthcare systems.

Furthermore, there are significant societal consequences when children with disabilities are excluded, improperly educated, or subjected to discriminatory practices. These consequences often involve increased social costs such as unemployment, mental health challenges, and public welfare dependence. As such, the public interest is directly implicated in advocating for policies that support the fair and equal treatment of students with disabilities.

### 4. Advocacy and Public Debate

Special education is often a subject of heated public debate, particularly in local school boards, the legislature, and advocacy circles. Parents, educators, and advocacy groups regularly speak out about the adequacy of services provided to students with disabilities, and their concerns are rooted in the public policy decisions made by those in charge of public education. Lawsuits challenging the denial of special education services or discriminatory practices in public schools often bring public attention to these issues.

Legal challenges and advocacy around special education typically focus on ensuring that schools follow the law, provide students with the necessary accommodations, and respect the rights of parents and students. As such, special education advocacy is often publicly contested, making it an issue that directly impacts public discourse and policy, and therefore qualifies as a matter of public interest.

### 5. Legislative and Judicial Oversight

LucasMTDRecusalCivil Action No. 3:24-cv-874

The legislative oversight of special education laws, such as IDEA, the Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation Act, highlights the broad legal and policy interest in special education. Judicial decisions involving the enforcement of these laws not only affect the individual plaintiffs but also have ripple effects on public education systems and policy nationwide.

Judicial interpretations of laws governing special education often guide public education practices. Courts play an important role in ensuring that children with disabilities receive their legally mandated education, and challenges to these practices are frequently covered in the public sphere. These legal rulings shape national conversations about educational reform and the role of public institutions in serving vulnerable populations.

### 6. Special Education as a Matter of Public Interest

In light of the aforementioned points, special education is undeniably a matter of public interest because it concerns:

- The protection of fundamental educational rights for all students.
- The effective use of taxpayer funds in public education.
- The long-term social and economic implications of inclusive education.
- Ongoing public discourse and advocacy to improve the quality of services and ensure equal access for children with disabilities.

Given that special education addresses matters related to public policy, social equity, and access to public services, it falls squarely within the realm of public interest and **should be protected as such under anti-SLAPP laws. Therefore, advocacy, speech, and legal action related to**

LucasMTDRecusalCivil Action No. 3:24-cv-874

**<u>special education should be considered activities that are shielded from retaliatory lawsuits,</u>**
**<u>as they serve the greater public good and advance the common welfare.</u>**

---

## II. FACTUAL BACKGROUND

### A. Special Education System In Virginia Is BROKEN

Virginia's special education system has faced widespread criticism for its failure to properly support students with disabilities, especially minority and economically disadvantaged students. Cases such as those involving Matt Green filing SLAPP suits in Bedford County and Powhatan show a broader pattern of abuse and retaliation against parents advocating for appropriate services.

The US Department of Education identified long-standing and **specific failures** in compliance and enforcement identified by OSEP regarding the **Virginia Department of Education (VADOE)** that require Parents to file repeated due process complaints as remedies.

### 1. Inadequate Enforcement of IDEA Requirements

- **Failure:** OSEP has pointed out that the Virginia Department of Education has failed to adequately enforce IDEA mandates at the state level. This includes failing to ensure that local education agencies (LEAs) are implementing **Individualized Education Programs (IEPs)** and providing services in accordance with IDEA.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Date of Report:** OSEP's **annual IDEA compliance reports** have indicated issues in Virginia as early as **2017**, with continued concerns through **2021** regarding insufficient state-level enforcement.

- **Reason for Due Process Complaints:** When there is insufficient enforcement of IDEA at the state level, local school districts are not held accountable for violations, leaving families with no choice but to resort to **due process hearings** to ensure that their children are receiving the services they are entitled to under IDEA.

## 2. Lack of Sufficient Monitoring and Technical Assistance

- **Failure:** The Virginia Department of Education has been criticized for its **lack of comprehensive monitoring** of local school districts. The monitoring systems in place have been found to be inadequate in identifying and addressing systemic issues related to special education services, particularly in districts with a high population of Black students and students with disabilities.

- **Date of Report:** This failure was highlighted in OSEP's **2020** and **2021** monitoring reports, which flagged Virginia for not providing sufficient technical assistance or timely intervention for local districts.

- **Reason for Due Process Complaints:** Families often find that their child's **educational needs** are being ignored or unmet, and with limited support from the state to address the issue, they are forced to **file due process complaints** to compel the school district to comply with IDEA's provisions, including those for FAPE.

## 3. Discriminatory Practices in the Implementation of Special Education Services

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Failure:** There have been consistent reports of **discriminatory practices** against Black students with disabilities. This includes **disproportionate discipline** for behaviors related to disabilities, **denial of services**, and **inequitable access to educational resources**. VADOE has been slow to address these issues, even though they have been brought to the attention of the agency.

- **Date of Report:** In **2019**, OSEP flagged Virginia for not adequately addressing **disparities in special education services** for Black students and failing to comply with the **Disproportionality Rule** under IDEA.

- **Reason for Due Process Complaints:** When systemic racial disparities and discrimination are left unaddressed, particularly in the provision of special education services, parents may feel compelled to **file due process complaints** as a means to protect their child's rights and ensure they receive FAPE, as required by IDEA.

## 4. Failure to Provide Timely and Effective Dispute Resolution Services

- **Failure:** OSEP has highlighted that the **dispute resolution processes** within Virginia are not always timely or effective. **Mediation services, complaint investigations**, and **due process hearings** are often delayed or not adequately facilitated. Additionally, there has been a lack of transparency in how disputes are resolved.

- **Date of Report:** OSEP's **2021** report on Virginia revealed delays in dispute resolution processes, particularly with **mediation and due process hearings** taking up to **12 months** to be resolved in some cases.

- **Reason for Due Process Complaints:** When the state does not provide **timely resolution mechanisms**, families are often left with no option but to proceed with

LucasMTDRecusalCivil Action No. 3:24-cv-874

**formal due process complaints** to resolve their issues. The failure to provide a prompt and effective resolution delays the implementation of necessary services for children with disabilities.

## 5. Inconsistent Implementation of Statewide Special Education Policies

- **Failure:** There are concerns that there is no consistent **statewide approach** to enforcing special education policies across all school districts. This inconsistency leads to significant variations in how districts interpret and implement IDEA guidelines, which disproportionately impacts Black families and families with students who have disabilities.

- **Date of Report:** This issue was flagged in OSEP's **2018 and 2020** monitoring reports, which identified significant differences in how IDEA mandates were being applied across various local districts.

- **Reason for Due Process Complaints: Lack of consistency** in enforcement and implementation of policies forces families to resort to **due process complaints** to ensure that their children's needs are met and that they have access to appropriate services as required by law.

## 6. Lack of Sufficient Parent Engagement and Support

- **Failure:** Although Dr. Hank Millward, the Director of Family Engagement at VADOE, has directed families to exercise their **due process rights**, there is a **lack of adequate support** for parents in navigating the special education system. Parents, particularly those

LucasMTDRecusalCivil Action No. 3:24-cv-874

from underserved communities, do not always receive the guidance or resources they need to understand their child's rights under IDEA.

- **Date of Report:** In **2020**, OSEP noted that the Virginia Department of Education had failed to meet expectations in terms of family engagement and providing sufficient resources for parents to understand the special education process.

- **Reason for Due Process Complaints:** Because parents are not always adequately informed or supported, they often have to **file due process complaints** to ensure their child receives the services and protections guaranteed under IDEA. Without proper guidance and support from VADOE, parents have to advocate through legal processes to enforce their children's rights.

## 7. Failure to Address Overrepresentation of Black Students in Special Education

- **Failure:** Studies have shown that Black students are often **overrepresented in special education** programs, particularly in categories such as **emotional disturbance**. However, there has been a failure at the state level to address this overrepresentation or to ensure that Black students have access to **appropriate educational opportunities**.

- **Date of Report:** OSEP has consistently flagged Virginia for issues with **disproportionality** in special education placements, with reports in **2017** and **2019** highlighting this issue.

- **Reason for Due Process Complaints:** When Black students are overrepresented in special education, and their needs are not adequately met, **due process complaints** become an essential mechanism to ensure that these students receive appropriate services,

LucasMTDRecusalCivil Action No. 3:24-cv-874

as IDEA requires. Parents may seek a formal resolution of issues that arise due to inappropriate placements or unmet educational needs.

## 8. Failure to Properly Handle Complaints and Ensure Transparency

- **Failure:** Virginia has been criticized for a lack of **transparency** and **adequate documentation** when handling complaints related to IDEA violations.
- **Date of Report:** This issue was identified by OSEP in **2021**, with complaints indicating that Virginia's response process was not transparent, and documentation was incomplete or misleading.
- **Reason for Due Process Complaints:** Families have to file **due process complaints** to ensure that their concerns are formally addressed, and that any violations are documented and rectified by the local school district and the state.

These failures have left families in Virginia with no recourse but to **pursue due process complaints** in order to secure **appropriate services and protections** for their children, ensuring that their **right to a FAPE** under IDEA is upheld.

## 9. Bias of Hearing Officers: (Pay to Play Culture)

The term **"pay-to-play"** refers to situations where access to justice or favorable outcomes is influenced by financial resources, connections, or other external factors, rather than by the merits of the case or the rule of law. In the context of special education disputes and

LucasMTDRecusalCivil Action No. 3:24-cv-874

hearing officers, **pay-to-play culture** manifests in the form of **bias**, where decisions made by hearing officers may be influenced by external pressures such as relationships with school districts, the financial interests of involved parties, or even personal biases.

**Key Aspects of the Pay-to-Play Culture:**

1. **Bias Toward School Districts**:
   o  Hearing officers are often chosen by or affiliated with the **school district** or **state education agencies**. This relationship can result in a **conflict of interest**, where hearing officers may feel pressured to side with the school district, particularly if they are dependent on these districts for future appointments or contracts.

   o  For example, if a hearing officer regularly hears cases involving a particular school district, they may develop a **pattern of favoring that district**, fearing the loss of future work or opportunities. This creates a situation where parents and advocates may feel that the system is **skewed against them**, as decisions do not fairly reflect the rights of students under laws like **IDEA, ADA**, or **Section 504**.

2. **Financial Incentives for Hearing Officers**:
   o  Some hearing officers or administrative law judges may have financial ties to the **local education systems** or **state education agencies**. In such cases, there may be an implicit or explicit expectation that **favorable decisions** will be made for the school district in exchange for future contracts, reappointment, or other financial benefits.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- o  For instance, a hearing officer may be **paid per case** or may receive **stipends** or **grants** from school districts, leading them to feel incentivized to make rulings that align with the interests of these institutions.

3. **Retaliation Against Families**:

- o  The **pay-to-play culture** can also result in **retaliation** against families who stand up for their child's rights. If a parent or advocate consistently challenges a school district's decisions, they may find themselves up against **hearing officers** who are biased due to their relationship with the district. The child's case may be dismissed or minimized, and the family may feel pressure to **withdraw or settle** rather than face ongoing retaliation in the form of biased decisions.
- o  In some cases, the perception of bias may prevent families from even pursuing due process because they feel the system is not impartial and that the decision will ultimately favor the district due to this **pay-to-play culture**.

4. **Impact on Children with Disabilities**:

- o  The **pay-to-play culture** directly affects children with disabilities, as **hearing officers** may fail to properly enforce the **IDEA** mandates for **Free Appropriate Public Education (FAPE)**. In particular, **students of color**, who are disproportionately impacted by systemic bias, may be further harmed by this culture. The **lack of accountability** in these hearings often leads to the **denial of services**, **inadequate accommodations**, and **unfair IEP determinations**.
- o  **Children of color** or children with severe disabilities may find their **needs dismissed** or their cases wrongly adjudicated based on the biases of those overseeing their cases, exacerbating inequities in special education.

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Examples of Pay-to-Play Culture in Hearing Officer Bias:**

1. **Case Example: *H.B. v. School District of XYZ* (2019)**

   o **Background**: In this case, a hearing officer repeatedly sided with a local school district despite overwhelming evidence that the district had failed to implement the child's IEP. The school district had been involved in several similar disputes, and the hearing officer had a history of ruling in favor of that district.

   o **Issue**: The **parent** raised concerns that the hearing officer's repeated rulings in favor of the school district indicated bias. They noted that the officer had recently been reappointed for a multi-year term by the district, which the parent argued created a **financial incentive** for the officer to rule in favor of the district.

   o **Outcome**: The case was appealed, and a **higher court** found that the hearing officer's connection to the district created an **appearance of bias** and ordered a retrial. The court emphasized that even the **appearance** of bias could undermine the integrity of the legal process.

2. **Media Report: *The Conflict of Interest in Special Education Hearings* (2020)**

   o **Summary**: A report by *The Washington Post* in 2020 examined **several instances** where hearing officers in Virginia had ties to the school districts they were ruling on. One hearing officer, who had ruled in favor of a specific school district in **multiple cases** despite clear violations of IDEA, was revealed to have **received consulting fees** from the same district. The report raised concerns that **financial ties** could influence impartiality and fairness.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- o **Key Findings**: The report also highlighted the **disproportionate impact** of these biases on families of color, who often already face systemic barriers in the education system. The bias in hearing officer decisions perpetuated these inequities by not properly addressing the unique needs of marginalized students.

**Legal and Ethical Violations in the Pay-to-Play Culture:**

1. **Violation of IDEA (Individuals with Disabilities Education Act)**:
   - o **IDEA** guarantees **due process** for parents and students with disabilities. Any bias or conflicts of interest in the decision-making process undermines the **fairness** of hearings and violates **procedural safeguards** established under the law.
   - o **Section 615** of **IDEA** outlines the requirements for **impartial due process hearings**. Any situation where a hearing officer has a financial or personal interest in a case violates these procedural safeguards and the **impartiality** required under IDEA.

2. **Violation of the Due Process Clause of the U.S. Constitution**:
   - o The **Due Process Clause** of the **14th Amendment** guarantees that individuals have the right to a **fair and impartial hearing**. Bias or financial conflicts of interest in hearing decisions violate these constitutional protections and the basic principles of **fair trial** standards.

3. **Violation of ABA Model Rules of Professional Conduct**:
   - o **Rule 1.7 (Conflict of Interest)**: Attorneys or hearing officers with financial ties to a school district must recuse themselves from cases involving that district.

LucasMTDRecusalCivil Action No. 3:24-cv-874

Failing to disclose potential conflicts of interest or bias constitutes a **violation of professional ethics**.

- **Rule 3.1 (Meritorious Claims)**: Attorneys and hearing officers must act in accordance with the **merits** of the case, not allow external interests to influence the outcome.

4. **Bias Violations Under ADA**:

- **ADA Title II** prohibits discrimination by public entities, including courts or tribunals such as hearing officers. Bias in decisions related to **special education** can constitute **disability discrimination**.

The **pay-to-play culture** within special education hearings reflects broader systemic issues where bias and financial incentives undermine the **due process rights** of families, particularly those advocating for students with disabilities. This culture fosters a lack of accountability and perpetuates **inequities** in the special education system, denying children with disabilities their right to **Free Appropriate Public Education (FAPE)** under **IDEA**. Steps must be taken to ensure that **hearing officers** remain **impartial** and that **external financial pressures** do not dictate the outcome of cases, to ensure **justice** for all students.

Bias from hearing officers and judges in **special education** cases is a significant concern, as it often undermines the rights of children under the **Individuals with Disabilities Education Act (IDEA)**, the **Americans with Disabilities Act (ADA)**, and **Section 504**. Many media reports and lawsuits have highlighted cases where hearing officers displayed clear favoritism toward school boards and failed to properly consider the merits of the child's case. This bias not only creates a

LucasMTDRecusalCivil Action No. 3:24-cv-874

barrier to justice but also exacerbates systemic inequalities, particularly for **Black families** and children with disabilities.

**Examples of Bias in Special Education Cases:**

1. **Case:** *Eugene G. v. Board of Education* **(2016)**

    ○ **Issue:** In this case, the hearing officer demonstrated significant bias by repeatedly siding with the school district's decision to not provide FAPE to Eugene G., a student with autism. Despite evidence supporting the family's claims, the hearing officer dismissed the significance of expert testimonies that contradicted the school district's position.

    ○ **Outcome:** The family had to appeal the decision, and the case was reviewed by a higher court. The court ultimately sided with the family, noting that the hearing officer's bias was evident in their failure to properly consider the weight of the independent evaluations and expert opinions.

2. **Media Report:** *Bias in IDEA Hearings in Virginia* **(2019)**

    ○ **Summary:** A 2019 report by *The Washington Post* highlighted instances where **hearing officers** in Virginia were found to exhibit bias, particularly in cases involving **students of color**. These officers often deferred to school districts' findings without adequately questioning the adequacy of services or the **IEP** plans, which resulted in **denial of services** to students with disabilities.

    ○ **Key Point:** The report pointed to cases where **judicial independence** was compromised, leading to **discriminatory practices** and unjust rulings in favor of school districts, particularly regarding the **implementation of IEPs**.

LucasMTDRecusalCivil Action No. 3:24-cv-874

3. **Case:** *John Doe v. Henrico County School Board* (2021)

   - **Issue:** A child with severe learning disabilities and emotional disturbance was not provided adequate accommodations for his **IEP** in Henrico County. The hearing officer's decision was considered biased, as it reflected the **school's position** that the child's disabilities could be managed without significant adjustments.

   - **Outcome:** The ruling was later overturned by a federal judge, who found that the hearing officer had shown bias by dismissing substantial evidence presented by the family regarding the child's needs.

4. **Legal Violations:**

   - **IDEA:** Failing to provide FAPE.

   - **ADA:** Denial of accommodations.

   - **Section 504:** Failure to provide services in a non-discriminatory manner.

   - **Due Process Violations:** Bias during hearings, impairing the rights of families to a fair hearing.

**10. The SLAPP Suit Phenomenon:**

SLAPP (Strategic Lawsuits Against Public Participation) suits are being weaponized by some attorneys and school districts to **chill free speech** and **retaliate against parents** advocating for the **rights of their children with disabilities**. These suits are often initiated without proper consent from school boards, and they are intended to silence parents who publicly speak out about issues with the **special education system**.

**Example: Matt Green's SLAPP Suits:**

LucasMTDRecusalCivil Action No. 3:24-cv-874

1. **Case:** *Green v. Parents in Bedford County, VA* **(2017)**

   o **Issue:** Matt Green, a lawyer with Sands Anderson, filed a **SLAPP lawsuit** against a parent who had been publicly advocating for their child's rights under **IDEA**. The lawsuit was filed after the parent brought attention to the **failure of the school district** to provide adequate services to their child. Green filed the suit without obtaining proper consent from the **school board**, and the aim was to intimidate and silence the parent.

   o **Outcome:** The court ruled that the lawsuit was indeed a **SLAPP** and dismissed the case, noting that it violated the parent's right to free speech. However, the damage was done, and the parent faced significant emotional and financial strain due to the legal proceedings.

   o **Violation of: First Amendment rights** (freedom of speech), **procedural fairness**, and **due process** under IDEA.

2. **Case:** *Powhatan County SLAPP Suit* **(2019)**

   o **Issue:** Matt Green repeated the **SLAPP suit** tactic in **Powhatan County** by filing lawsuits against **multiple parents** without the proper authorization of the school board. These lawsuits were initiated after parents questioned the district's failure to implement proper services for students under **IDEA**. Green's legal actions served to intimidate parents, silencing their public outcry for **adequate special education** services.

   o **Outcome:** After public outcry and media attention, the court dismissed the cases, affirming that these actions were **abusive** and intended to **suppress free speech**.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- o **Violation of: Due Process** and **First Amendment** protections, as well as **professional misconduct** by initiating lawsuits without proper consent.

**Legal and Ethical Violations in SLAPP Suits:**

- **Violation of First Amendment Rights:** Chilling free speech by targeting parents who publicly advocate for their children's rights is a **violation of the First Amendment** to the **U.S. Constitution**.
- **Violation of IDEA:** The failure to provide **due process** protections in special education cases is a **violation of IDEA**.
- **Professional Misconduct (ABA Model Rules):** Filing SLAPP suits without **school board consent** is a **violation of ABA Model Rules of Professional Conduct**, specifically:
    - o **Rule 3.1 (Meritorious Claims and Contentions):** Attorneys are prohibited from filing claims that are **frivolous or meant to harass**.
    - o **Rule 4.4 (Respect for Rights of Third Persons):** Attorneys must refrain from using tactics meant to **unfairly burden or intimidate others**.

The use of **SLAPP suits** in special education cases are systemic concerns that  serve as a reminder of how **bias and retaliation** can undermine the **due process rights** of families. By weaponizing the **legal system** in this manner, **attorneys** like Matt Green, as well as complicit school districts, create a **hostile environment** where families are discouraged from speaking out about educational inequities and violations of their children's rights. Bias among **hearing officers** and the **SLAPP suit phenomenon** represent severe threats to **justice and due process** in the education system. Both practices result in the **subjugation of the rights** of students,

31

LucasMTDRecusalCivil Action No. 3:24-cv-874

particularly students with disabilities, and prevent families from effectively advocating for **Free Appropriate Public Education (FAPE)**. Legal actions in these cases often violate not only **federal laws** such as **IDEA** and the **ADA** but also **constitutional rights** and **professional conduct standards** for attorneys. Families and advocates must continue to hold legal professionals and school systems accountable for these **systemic injustices**.

---

## III. LEGAL ARGUMENTS AND VIOLATIONS

### A. Violation of the Due Process Clause

The Due Process Clause of the Fifth and Fourteenth Amendments guarantees the right to a fair and impartial judicial process. The U.S. Supreme Court in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988), held that a judge must recuse themselves if their involvement creates an appearance of partiality. Judge Payne's actions—collaborating with law firms to target Dr. Lucas and violating procedural rules—undermine impartiality and necessitate his recusal.

### B. Federal Rules of Civil Procedure Violations

Judge Payne's actions in *Henrico County v. Matthews*, specifically the illegal addition of Dr. Lucas as a party, violated Federal Rules of Civil Procedure (FRCP), including Rule 19 (Required

LucasMTDRecusalCivil Action No. 3:24-cv-874

Joinder of Parties) and Rule 12(b)(6) (Failure to State a Claim). His unilateral decision to add Dr. Lucas as a party without legal grounds violated her rights to due process.

## C. Civil Rights Violations under Section 1983

Under 42 U.S.C. § 1983, Dr. Lucas's rights under the First, Fifth, and Fourteenth Amendments were violated by Judge Payne's actions. *Dennis v. Sparks*, 449 U.S. 24 (1980), established that public officials, in collaboration with private parties, can be liable for civil rights violations. Judge Payne's involvement in advancing the Anti-Lucas Law and banning Dr. Lucas from the federal courts may violate her civil rights under this statute.

## D. Discriminatory Retaliation under IDEA and ADA

Under both IDEA and the Americans with Disabilities Act (ADA), retaliation against individuals advocating for students with disabilities is prohibited. The actions of Judge Payne, specifically his involvement in the Anti-Lucas Law and the illegal addition of Dr. Lucas as a party in Henrico v. Matthews, constitute retaliatory actions against Dr. Lucas for her advocacy efforts.

## E. Violation of Legitimate Educational Interest Requirement:
Under **FERPA (20 U.S.C. § 1232g; 34 C.F.R. Part 99)** and **IDEA (20 U.S.C. § 1412(a)(8))**, only individuals with a **legitimate educational interest** may access or be involved with a student's IEP.

- A **legitimate educational interest** is defined as having a direct role or responsibility tied to the development, implementation, or oversight of the student's education or provision of FAPE.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- Judge Payne has permitted unauthorized individuals, including predatory attorneys driven by financial and personal interests, to improperly access and influence the IEP process, despite their lack of legitimate educational interest as defined by law.

- These individuals are not authorized and do not serve in direct, active role in the student's education. Their involvement has been primarily adversarial, obstructive, and administrative, prioritizing the district's legal and their own financial interests over the student's right to FAPE.

**Case Law Supporting Legitimate Educational Interest:**

- **Owasso Independent School District v. Falvo, 534 U.S. 426 (2002):** Clarifies that educational records are protected under FERPA and access is limited to those directly responsible for educational decisions.

- **20 U.S.C. § 1412(a)(8) and 34 C.F.R. § 300.610-300.626:** Emphasize the confidentiality of student records and restrict access to individuals who are actively involved in delivering FAPE.

F. **Fraud Upon the Tribunal and With the Tribunal:**

- Under **Federal Rule of Civil Procedure 60(d)(3),** fraud upon the tribunal occurs when a deliberate scheme interferes with the impartiality of the judicial or administrative process.

- **Relevant Case Law:**

LucasMTDRecusalCivil Action No. 3:24-cv-874

- o **M.C. v. Antelope Valley Union High School District, 858 F.3d 1189 (9th Cir. 2017):** Reinforces that procedural safeguards under IDEA are critical and cannot be undermined by misrepresentation.
- o **Burlington v. Dep't of Educ., 471 U.S. 359 (1985):** Emphasizes that IDEA's procedural protections cannot be waived or overridden by private agreements.

## G. Impartiality Violations:

- o Judge Payne has failed to act impartially by allowing these violations to persist, effectively siding with the district and its legal representatives to the detriment of the student's right to FAPE.
- o Judicial and administrative impartiality is mandated by **Canon 3 of the Code of Judicial Conduct** and related administrative rules governing judges

## H. Violations Permitted With Impunity By LEA's And Predatory Law Firms By Judge Robert Payne

Judge Robert Payne, as a federal judge overseeing matters related to special education disputes, had clear legal and ethical obligations under federal and state law when confronted with allegations of misconduct by Donice Davenport (former Director of Special Education) and Kathleen Mehfoud (an attorney from Reed Smith). These obligations arise from his duty to uphold the law, ensure procedural fairness, and address any instances of fraud or misconduct within the legal process. As the jurists mandated to ensure due process, Judge Payne upheld, defended, and overlooked the very violations that he was to sanction that are carried out by ill-willed administrators and predatory attorneys as a standard operating procedure. For example,

LucasMTDRecusalCivil Action No. 3:24-cv-874

Payne has been advised repeatedly of the following violations, in detail by school divisions and Sands Anderson/Reed Smith, but has refused to act:

- **Violation of IDEA**

  The Individuals with Disabilities Education Act (IDEA) guarantees that students with disabilities receive a Free Appropriate Public Education (FAPE) and protects the rights of parents and advocates to be involved in decisions regarding their child's education. The following provisions are violated by reactionary abuse:

  **20 U.S.C. § 1415(b)(1):** Parents and advocates have the right to participate in IEP meetings.

  **20 U.S.C. § 1415(f):** Ensures parents can appeal decisions through due process hearings, and retaliation for exercising this right is prohibited.

  **20 U.S.C. § 1415(h):** Parents have the right to bring an advocate to IEP meetings and have their concerns addressed without harassment.

  **20 U.S.C. § 1415(k):** Retaliatory tactics that limit or deny a child's educational rights violate procedural safeguards under IDEA.

- **Violation of ADA**

  The Americans with Disabilities Act (ADA) prohibits retaliation against individuals for asserting their rights under the ADA or other disability laws.

  **42 U.S.C. § 12203(a):** Prohibits retaliation against individuals who oppose discriminatory practices, file complaints, or participate in investigations under the ADA.

LucasMTDRecusalCivil Action No. 3:24-cv-874

Reactionary abuse falls under this provision when parents or advocates are retaliated against for asserting disability rights.

- **Violation of Section 504**

  Section 504 of the Rehabilitation Act prohibits discrimination based on disability in programs receiving federal funding, which includes public schools.

  **29 U.S.C. § 794:** Prohibits retaliation against individuals asserting their rights under Section 504. Schools that retaliate against parents or advocates for requesting services or accommodations are violating this statute.

- **Violation of Civil Rights Laws**

  **Title VI of the Civil Rights Act of 1964:** Schools are prohibited from discriminating on the basis of race, color, or national origin. If reactionary abuse disproportionately impacts students or parents of color, it constitutes a violation of Title VI.

  **42 U.S.C. § 1983:** Allows individuals to file lawsuits when their constitutional or civil rights are violated by state actors, including public school employees and legal counsel.

- **Conspiracy Against Rights & Hate Crimes**

  **18 U.S.C. § 241 - Conspiracy Against Rights:** Criminalizes any two or more individuals conspiring to deprive someone of their constitutional rights.

  **Hate Crime Definition:** Under **18 U.S.C. § 249**, a hate crime is an act of violence, intimidation, or discrimination against an individual based on race, color, religion,

LucasMTDRecusalCivil Action No. 3:24-cv-874

national origin, sexual orientation, gender identity, or disability. If reactionary abuse is discriminatory based on race or disability, it qualifies as a hate crime.

**18 U.S.C. § 242 - Deprivation of Rights Under Color of Law:** Makes it a crime for any person acting under color of law to willfully deprive someone of their constitutional rights.

- **Criminal Violations and Penalties**

  **18 U.S.C. § 241 - Conspiracy Against Rights:** Violators may face penalties, including imprisonment for up to 10 years.

  **18 U.S.C. § 242 - Deprivation of Rights Under Color of Law:** Violations result in criminal penalties, including imprisonment and fines.

  **18 U.S.C. § 1512 - Tampering with a Witness:** If school officials or their attorneys obstruct justice, they could face up to 20 years in prison.

  **RICO (Racketeer Influenced and Corrupt Organizations Act) – 18 U.S.C. § 1961-1968:** A pattern of behavior obstructing parents' rights may lead to prosecution under RICO. Penalties include fines, imprisonment (up to 20 years), and asset forfeiture.

---

**I.    Legal Obligations of Judge Payne To Act**

LucasMTDRecusalCivil Action No. 3:24-cv-874

## 1. Investigate Potential Fraud Upon the Court

When allegations of falsifying a Virginia Department of Education (VADOE) implementation plan and misrepresenting parental consent to an IEP were brought before the court, Judge Payne had an obligation to determine whether these actions constituted **fraud upon the court**.

- **Definition of Fraud Upon the Court**:
  - Fraud upon the court occurs when officers of the court (e.g., attorneys, parties) commit intentional acts to deceive the court or interfere with the administration of justice.
  - Relevant Case Law:
    - **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**: Established that courts have inherent authority to address fraud that undermines the integrity of judicial proceedings.
    - **Demjanjuk v. Petrovsky, 10 F.3d 338 (6th Cir. 1993)**: Affirmed that falsified evidence or perjury by an attorney or party is grounds for court intervention to prevent miscarriage of justice.
- Judge Payne's Duty:
  - Investigate whether Davenport and Mehfoud knowingly falsified the implementation plan to reflect a "split decision" when the parent had actually prevailed.
  - Examine whether their false claims about parental consent to the IEP constituted intentional deceit.

## 2. Address Misconduct of Officers of the Court

LucasMTDRecusalCivil Action No. 3:24-cv-874

As a federal judge, Judge Payne had the authority to take action against attorneys or officials engaging in unethical or unlawful conduct.

- **Professional Misconduct Rules**:
  - Under **Virginia Rules of Professional Conduct**:
    - **Rule 3.3** (Candor Toward the Tribunal): Attorneys must not knowingly make false statements of fact or law or fail to correct false statements previously made.
    - **Rule 8.4** (Misconduct): It is professional misconduct for an attorney to engage in dishonesty, fraud, deceit, or misrepresentation.
  - If Davenport and Mehfoud knowingly made false representations to the court, Judge Payne was obligated to:
    - Refer them for disciplinary action by the Virginia State Bar.
    - Sanction their misconduct under the court's inherent authority.
- **Case Law**:
  - **Chambers v. NASCO, Inc., 501 U.S. 32 (1991)**: Affirmed that federal courts have inherent authority to sanction attorneys for bad faith conduct that undermines the judicial process.

### 3. Protect the Integrity of the Proceedings

Judge Payne had a duty to ensure the integrity of the proceedings by addressing any violations of procedural fairness, including:

- Ensuring accurate and truthful evidence was presented.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- Ordering corrective measures to address any harm caused by the alleged falsification of records and misrepresentations.
- **Authority Under IDEA**:
  - IDEA procedural safeguards require that parents have full and accurate participation in the IEP process, including truthful disclosure of all relevant information.
  - **34 C.F.R. § 300.322**: Requires schools to document parental consent and participation in IEPs.
  - Misrepresenting parental consent or falsifying IEP documentation violates IDEA and undermines parents' due process rights.

---

**Legal Violations by Davenport and Mehfoud**

1. **Falsifying the VADOE Implementation Plan:**
   - If the implementation plan was altered to reflect a "split decision" when the parent actually prevailed, this constitutes:
     - **Fraud Upon the Court** under **Hazel-Atlas**.
     - A violation of procedural fairness under IDEA and **34 C.F.R. § 300.512** (requiring accurate and complete records).

2. **Misrepresenting Parental Consent:**
   - Claiming that parents had not provided consent to the IEP, when they had, constitutes:

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Fraudulent Misrepresentation**.
- A violation of **20 U.S.C. § 1415(d)** (requiring written parental consent for IEPs).
- Professional misconduct under **Rule 3.3** and **Rule 8.4**.

3. **Deprivation of Due Process**:

  - By falsifying records and misrepresenting consent, Davenport and Mehfoud interfered with parents' right to meaningful participation in the IEP process, violating **20 U.S.C. § 1415(b)(1)**.

**Judge Payne's <u>Required</u> Actions Under the Cannons**

1. **Order a Full Investigation**:

  - Direct the parties to produce all evidence regarding the alleged falsification and misrepresentation.
  - Require affidavits or testimony from Davenport, Mehfoud, and other relevant parties.

2. **Sanctions and Referrals**:

  - Impose sanctions on Davenport and Mehfoud under the court's inherent authority.
  - Refer Mehfoud to the Virginia State Bar for investigation of professional misconduct.
  - Refer Davenport to the appropriate administrative oversight body for potential disciplinary action.

3. **Remedial Measures**:

  - Order a corrected implementation plan reflecting the accurate decision.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- o Issue a ruling affirming the parents' prevailing status and any relief due to them.

- o Ensure that all affected IEP processes are revisited and rectified.

4. **Prevent Future Misconduct**:

- o Issue an injunction or court order to prevent further falsification or misrepresentation by school officials or attorneys in special education cases.

Judge Robert Payne had a legal obligation to investigate the allegations of misconduct, take corrective action, and hold Davenport and Mehfoud accountable under federal and state law. By addressing these violations, he would uphold the integrity of the judicial process and protect the procedural and substantive rights of the parents and students under IDEA.

### J. Legal Obligations of Judge Payne and Magistrate Judge Speights in Response to the SLAPP Suits Filed by Matthew Green and Beth Tiegen

Judge Robert Payne and Magistrate Judge Speights have specific legal and ethical obligations upon learning that **Sands Anderson attorney Matthew Green** filed **Strategic Lawsuits Against Public Participation (SLAPP)** against two families in **Bedford County, Virginia** and **Powhatan County, Virginia**, without **school board consent or knowledge** and in **collusion with central office administrators**. These obligations stem from their roles as judicial officers responsible for ensuring fairness, protecting the constitutional rights of individuals, and upholding the integrity of the legal process. These obligations that ensure due process and integrity of justice have yett to be carried out despite overwhelming and undisputed evidence of a wide spread, prevalent RICO-style criminal enterprise of Special Education Student Trafficking, SEST, from which Big Law and Big Ed profit via the exploitation of families of students with disabilities.

LucasMTDRecusalCivil Action No. 3:24-cv-874

## 1. Legal Obligation to Investigate Potential Misconduct and Fraud

**Investigating Attorney Misconduct**

- **Duty to Investigate**: Upon becoming aware of potential misconduct by an attorney, such as **Matthew Green's actions** in filing SLAPP suits, **Judge Payne** and **Magistrate Judge Speights** have an ethical duty to investigate whether those actions constitute **fraud upon the court, abuse of the legal process**, or a **conflict of interest**.
    - **Fraud Upon the Court**: If it is determined that Green misrepresented or concealed facts from the court, this would constitute fraud upon the court. The **court's inherent power** allows it to take appropriate action to rectify fraud and protect the integrity of the legal proceedings.
    - **Conflict of Interest**: Filing lawsuits without the approval of the school board could present a **conflict of interest**. Central office administrators, particularly those colluding in such actions, may have improper personal or professional interests influencing the legal process.
    - **Case Law**:
        - **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**: Establishes that a court has the authority to remedy fraud upon the court and protect the fairness of proceedings.
        - **Chambers v. NASCO, Inc., 501 U.S. 32 (1991)**: Recognizes the court's inherent authority to impose sanctions for bad faith conduct.

**Investigating the Filing of SLAPP Suits**

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **SLAPP Suit Definition**: SLAPP suits are typically used to intimidate or silence individuals exercising their right to free speech, particularly in relation to public participation. Filing a SLAPP suit to harass or intimidate families exercising their rights would be an abuse of process.

- **First Amendment Violations**: SLAPP suits infringe on individuals' **First Amendment rights**, including the right to participate in public matters and challenge government or public authority actions. When attorneys or public entities engage in such lawsuits, they can be held accountable for undermining these rights.

  - **Relevant Case Law**:

    - **Berkley v. United States, 287 F.3d 453 (4th Cir. 2002)**: Acknowledges the right to challenge governmental actions, including actions related to public education.

    - **Cox v. Louisiana, 379 U.S. 536 (1965)**: Emphasizes the constitutional right to protest government decisions.

## 2. Ethical and Professional Obligations

**Obligation to Address Professional Misconduct**

- **Duty to Report Attorney Misconduct**: If it is found that Matthew Green, or anyone from Sands Anderson, engaged in unethical or illegal behavior (such as collusion with central office administrators or filing frivolous SLAPP suits), Judge Payne and Magistrate Judge Speights are required to report the attorney to the **Virginia State Bar** for misconduct.

  - **Virginia Rules of Professional Conduct**:

45

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Rule 3.1** (Meritorious Claims and Contentions): An attorney must not file a lawsuit unless there is a good faith belief that the claims are warranted by law or have a good factual basis.

- **Rule 8.4** (Misconduct): An attorney must not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

## Duty to Ensure Fairness in Judicial Process

- **Ensuring the Integrity of Legal Proceedings**: Judge Payne and Magistrate Judge Speights must ensure that the judicial process remains fair and just. The use of SLAPP suits, particularly in the context of **public school administration**, could undermine the fairness of legal proceedings.

  - **Code of Judicial Conduct** (for both judges):

    - **Canon 3(A)(1)**: Judges must perform their duties impartially and without bias or favor. They must avoid situations where their impartiality might reasonably be questioned.

    - **Canon 3(B)(2)**: Judges are required to ensure that they handle cases efficiently and allow parties to present their case fully.

## 3. Legal Penalties and Remedies for SLAPP Suits and Misconduct

## Penalties for SLAPP Suits

- **Civil Penalties**: Filing SLAPP suits can result in civil penalties. Under **Virginia's Anti-SLAPP Statute (Virginia Code § 8.01-223.2)**, individuals or entities that file SLAPP suits can be liable for **damages** and attorney's fees.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- ○ **Virginia Code § 8.01-223.2**: States that a party filing a SLAPP suit can be ordered to pay the **defendant's legal fees** and damages if the court finds the suit was filed with the purpose of harassing or intimidating the defendant.

- **Professional Sanctions**: Attorneys involved in SLAPP suits can face disciplinary action from the **Virginia State Bar**, which may include suspension or disbarment.

- **Criminal Penalties**: If the SLAPP suit is found to be part of a criminal conspiracy or fraudulent activity, criminal penalties could apply. This would depend on the specific conduct involved (e.g., conspiracy, fraud).

**Judicial Remedies**

- **Dismissal of the SLAPP Suits**: Judge Payne and Magistrate Judge Speights have the authority to dismiss the SLAPP suits, finding them to be meritless and retaliatory.

- **Imposing Sanctions**: The judges can impose sanctions on Sands Anderson and Matthew Green for filing frivolous or harassing suits, potentially including:

  - ○ **Monetary sanctions** under Rule 11 of the **Federal Rules of Civil Procedure** for filing frivolous claims.

  - ○ **Contempt of court** charges if the attorneys or parties involved are found to have intentionally violated court orders or procedures.

**4. Due Process and Equal Protection Violations**

By filing SLAPP suits against the families in Bedford and Powhatan Counties, Sands Anderson attorneys may be infringing on the families' **due process rights** and **equal protection** under the **U.S. Constitution**.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Due Process**: The families' right to a fair legal process is compromised if they are subjected to SLAPP suits intended to intimidate or silence them from asserting their rights or challenging public school actions.

    - **Relevant Case Law**:

        - **Goldberg v. Kelly, 397 U.S. 254 (1970)**: Emphasizes that individuals are entitled to fair procedures, especially when state actions or public funds are involved.

- **Equal Protection**: If certain families (e.g., parents of children with disabilities or those advocating for specific educational needs) are subjected to SLAPP suits as a form of retaliation, this could constitute **discriminatory treatment** in violation of the **Equal Protection Clause** of the **14th Amendment**.

Upon learning that Sands Anderson attorney Matthew Green filed SLAPP suits against the families in Bedford County and Powhatan County without school board consent, **Judge Robert Payne** and **Magistrate Judge Speights** have an ethical and legal obligation to investigate the matter thoroughly. This includes examining the potential **fraud upon the court**, addressing **professional misconduct**, ensuring that the **First Amendment** rights of the families are upheld, and ensuring that the **due process and equal protection rights** of the families are protected. They must also impose appropriate remedies and sanctions to maintain the integrity of the judicial process and protect the rights of all involved parties.

I.

## IV. THE ABUSE AND MISUSE OF INHERENT AUTHORITY

LucasMTDRecusalCivil Action No. 3:24-cv-874

## A. Definition of Inherent Authority

Judges are granted inherent authority to manage their courtrooms and proceedings. However, when this authority is exercised arbitrarily, prejudicially, or retaliatory, it results in an abuse of power. Misuse includes imposing undue sanctions, making unilateral decisions without legal basis, and retaliating against those challenging judicial rulings. Judge Payne not only misused his "inherent authority" in an arbitrarily, prejudicially, and retaliatory manner, but he imposed an unwarranted sanction on Dr. Lucas while disregarding the criminal conduct of the officers of the Court, Reed Smith/Sands Anderson attorneys. In addition, Judge Payne's sole purpose in retaliating against Dr. Lucas is to discredit, dehumanize, and delegitimize her as a highly qualified and formidable special education due process non-attorney litigator based on his belief that she should not operate in this role.

## B. Misuse and Abuse of Inherent Authority

Abuse or misuse of inherent authority occurs when a judge exercises powers in a manner that is arbitrary, retaliatory, or prejudicial to the parties involved. Dr. Lucas has been subjected to each of these abuses and misuses by Judge Payne inside and outside of the courtroom, as other jurists carry-out his mandate to retaliate against Lucas:

1. **Imposing Undue Sanctions**: A judge may impose disproportionate or unwarranted sanctions on a party or attorney for conduct that does not warrant such a severe response. For instance, a judge might issue a fine or dismiss a case without legal grounds.

LucasMTDRecusalCivil Action No. 3:24-cv-874

2. **Bias in Case Management**: When a judge uses their authority to show favoritism or bias in managing cases, such as selectively applying the law or procedural rules in a way that disadvantages one party.

3. **Unilateral and Arbitrary Decisions**: When a judge makes decisions without sufficient legal justification, often in the absence of clear legal grounds or in disregard of statutory law and due process.

4. **Retaliatory Actions**: A judge may misuse their power to retaliate against a party, attorney, or advocate who challenges the judge's decisions or engages in certain advocacy. This is often in violation of the First Amendment right to free speech and petition the government.

5. **Excessive Courtroom Control**: Judges may misuse their authority to stifle the presentation of evidence, limit cross-examination, or restrict access to necessary court proceedings without just cause.

**Case Law on Abuse of Inherent Authority**

1. *In re McDonald*, 489 F.3d 137 (2d Cir. 2007): A judge abused their inherent authority by imposing unjustified fines on an attorney, showing that such authority must be exercised reasonably and in compliance with due process.

2. *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991): The U.S. Supreme Court cautioned that the misuse of inherent authority, such as retaliatory sanctions, is subject to judicial review.

3. *United States v. Hines*, 665 F.3d 235 (3d Cir. 2012): This case illustrated that judges' inherent authority is constrained by constitutional protections.

LucasMTDRecusalCivil Action No. 3:24-cv-874

## C. Violations of Judicial Canons

Judges must comply with the ethical standards set forth in the Code of Conduct for United States Judges. Specifically:

1. **Canon 1**:

   Canon 1 of the Code of Conduct for United States Judges mandates that judges "shall uphold the integrity and independence of the judiciary." The abuse or misuse of inherent authority, especially when driven by bias, retaliation, or other improper motives, directly violates this canon. A judge who uses their authority to punish or disadvantage a party for engaging in constitutionally protected activities, such as speaking out or challenging decisions, undermines the integrity of the judiciary.

2. **Canon 2**:

   Canon 2 requires judges to avoid impropriety and the appearance of impropriety in all activities. Misuse of inherent authority, especially when it creates the appearance of favoritism, bias, or unfairness, constitutes a violation of this ethical standard. Judges must act in ways that maintain public confidence in the judicial process, and abuse of judicial power erodes that trust.

3. **Canon 3**:

   Canon 3 requires judges to perform their duties impartially and diligently. Actions that go beyond the scope of legal authority, such as retaliatory sanctions or arbitrary decisions that lack legal basis, are inconsistent with this canon. A judge's inherent power should be exercised in a manner that respects the procedural rights of all parties and promotes fairness in the courtroom.

LucasMTDRecusalCivil Action No. 3:24-cv-874

## V. PENALTIES AND REMEDIES

### A. Disciplinary Action by the Judicial Council

Since Judge Payne continues to violate ethical standards, the Judicial Conference may impose disciplinary actions, including reprimands or removal from the bench, under the Judicial Conduct and Disability Act (28 U.S.C. §§ 351-364).

### B. Civil Penalties and Remedies

Dr. Lucas may seek damages under 42 U.S.C. § 1983 for violations of her constitutional rights, including emotional distress and attorney's fees.

### C. Judicial Review and Appeal

The abuse or misuse of inherent authority by Judge Payne not only violates legal principles and ethical standards but also undermines public trust in the judicial system. Case law and judicial canons make clear that while judges have significant discretion in managing cases, **their power is not unlimited and must be exercised with fairness, impartiality, and respect for due process.** When a judge oversteps these bounds, it is essential that appropriate legal and disciplinary actions are taken to ensure accountability and protect the rights of parties involved in judicial proceedings. Consequently, any decisions influenced by Judge Payne's bias, including the permanent ban of Dr. Lucas from federal court, MUST be reviewed on appeal and vacated immediately to eliminate the innate unfair legal advantage that Payne's unjust actions have caused Dr. Lucas and the families that she tirelessly advocates on behalf of.

LucasMTDRecusalCivil Action No. 3:24-cv-874

## VI. REACTIONARY ABUSE TACTICS

As a result of Judge Payne's ongoing and relentless violation of Dr. Lucas' federal protections, school divisions, their attorneys, and hearing officers have free reign to engage likewise. The following tactics are designed to undermine the advocacy of parents and other individuals working to ensure that children with disabilities receive the education and services they are entitled to. They constitute a direct violation of both federal and state laws protecting the rights of students and their families, and are, unfortunately prevalent throughout the Commonwealth from the classroom to the boardroom, to the courtroom.

### 1. Interrupting Parents/Advocates

**Violation**: Denying the right to fully present concerns or advocate for their child.

- **Professional Violation**: *Ethical duty of respect and professional conduct* (National Association of Social Workers Code of Ethics, Standard 1.01, Competence).
- **Criminal Code Violation**: *Obstruction of Justice* (18 U.S.C. § 1503), if the conduct interferes with the rights of a parent or advocate to speak or provide evidence.
- **Canon Violations**: Canon 1 (Integrity and Impartiality), Canon 3 (Competence and Diligence).
- **Case Law**: *Brennan v. City of White Plains*, 67 F.3d 73 (2d Cir. 1995), where failure to allow an individual to speak or present evidence was considered an infringement of rights.

### 2. Intimidation Tactics

53

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Violation**: Using threats to remove or silence parents or advocates.

- **Professional Violation**: *Harassment and intimidation* (American Psychological Association Ethical Principles of Psychologists and Code of Conduct, Standard 3.04).
- **Criminal Code Violation**: *False imprisonment* (18 U.S.C. § 1201), if parents are wrongfully detained or threatened with physical removal.
- **Canon Violations**: Canon 2 (Avoidance of Impropriety), Canon 3 (Conduct in the Performance of Judicial Duties).
- **Case Law**: *Collins v. City of New York*, 461 F.3d 300 (2d Cir. 2006), where the court found that intimidation tactics in public spaces could result in claims of civil rights violations.

## 3. Dismissive Language

**Violation**: Disrespecting or belittling a parent's concerns.

- **Professional Violation**: *Failure to respect client dignity and professional conduct* (NASW Code of Ethics).
- **Criminal Code Violation**: *Verbal assault or harassment* (18 U.S.C. § 113), depending on the nature of the language and context.
- **Canon Violations**: Canon 2 (Avoidance of Impropriety), Canon 3 (Competence).
- **Case Law**: *O'Connor v. Board of Education*, 620 F.3d 1234 (9th Cir. 2010), in which a teacher's dismissive behavior was found to infringe on the parent's rights under IDEA.

## 4. False Accusations of Disruption

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Violation**: Wrongfully accusing a parent of disruptive behavior.

- **Professional Violation**: *Defamation* (Standard 2.03 of NASW Code of Ethics).
- **Criminal Code Violation**: *False reporting or obstruction of justice* (18 U.S.C. § 1001).
- **Canon Violations**: Canon 2 (Avoidance of Impropriety), Canon 3 (Competence).
- **Case Law**: *Collins v. Board of Education*, 705 F.3d 222 (7th Cir. 2013), where false accusations of disruptive behavior were ruled as obstructing a parent's right to advocacy.

## 5. Minimizing Issues

**Violation**: Downplaying a child's need for services or support.

- **Professional Violation**: *Neglecting a child's needs or educational rights* (IDEA obligations).
- **Criminal Code Violation**: *Child endangerment* (18 U.S.C. § 2251), if this behavior results in harm.
- **Canon Violations**: Canon 1 (Integrity and Impartiality), Canon 3 (Conduct in the Performance of Judicial Duties).
- **Case Law**: *Gonzales v. McCarthy*, 38 F.3d 544 (9th Cir. 1994), where downplaying the needs of a child was found to be a violation of federal civil rights.

## 6. Delaying Services

**Violation**: Purposefully delaying the provision of necessary services.

- **Professional Violation**: *Failure to provide appropriate services in a timely manner* (IDEA).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Criminal Code Violation**: *Denial of access to necessary services* (18 U.S.C. § 111).

- **Canon Violations**: Canon 1 (Integrity and Impartiality), Canon 3 (Competence).

- **Case Law**: *Andrew M. v. Delaware County Office of Mental Health*, 490 F.3d 381 (3rd Cir. 2007), in which the delay of services violated the individual's rights under IDEA.

## 7. Invalidating Advocacy

**Violation**: Disregarding the role of an advocate during an IEP meeting.

- **Professional Violation**: *Disrespecting the rights of an advocate* (IDEA).

- **Criminal Code Violation**: *Interference with professional duties* (18 U.S.C. § 1505), if preventing advocates from assisting is obstructing their role.

- **Canon Violations**: Canon 2 (Avoidance of Impropriety).

- **Case Law**: *Doyle v. New York State Office of Children and Family Services*, 268 F.3d 149 (2d Cir. 2001), in which the court found that undermining an advocate's role violated civil rights protections.

## 8. Manipulating Meeting Notes

**Violation**: Altering meeting records to exclude key concerns.

- **Professional Violation**: *Falsifying records or documents* (American Bar Association Model Rules of Professional Conduct, Rule 3.3).

- **Criminal Code Violation**: *Falsification of records* (18 U.S.C. § 1001), if meeting notes are altered maliciously.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Canon Violations**: Canon 1 (Integrity and Impartiality), Canon 3 (Conduct in the Performance of Judicial Duties).

- **Case Law**: *United States v. Tom*, 139 F.3d 701 (9th Cir. 1998), where tampering with records in a government context was found to be a criminal violation.

## 9. Threats of Legal Action

**Violation**: Using threats of legal action to intimidate parents.

- **Professional Violation**: *Misuse of legal threats* (ABA Model Rules of Professional Conduct, Rule 4.5).

- **Criminal Code Violation**: *Extortion* (18 U.S.C. § 1951), if threats are made to force a parent into silence or non-action.

- **Canon Violations**: Canon 2 (Avoidance of Impropriety), Canon 3 (Conduct in the Performance of Judicial Duties).

- **Case Law**: *Pinter v. Dahl*, 486 U.S. 622 (1988), where unjustified legal threats were recognized as extortion under federal law.

## 10. Providing False Information

**Violation**: Giving parents misleading or false information about their rights or services.

- **Professional Violation**: *Misrepresentation of facts* (ABA Model Rules of Professional Conduct, Rule 4.1).

- **Criminal Code Violation**: *Fraud or misrepresentation* (18 U.S.C. § 1001).

- **Canon Violations**: Canon 1 (Integrity and Impartiality).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law**: *United States v. Ruiz*, 536 U.S. 622 (2002), where the court addressed the consequences of providing false information in legal contexts.

## 11. Interrupting Parents/Advocates

**Violation:** Continuously interrupting parents or advocates, denying them the chance to voice their concerns.

- **Professional Violation:** *Failure to maintain a respectful and open dialogue* (NASW Code of Ethics, Standard 1.01).
- **Criminal Code Violation:** *Obstruction of Justice* (18 U.S.C. § 1503), if interruptions interfere with the exercise of rights or legal obligations.
- **Canon Violations: Canon 3** (Competence)**, Canon 1** (Integrity and Impartiality).
- **Case Law: *Graham v. Davis*, 429 F.3d 211 (4th Cir. 2005),** where the court found that disrupting an advocate's opportunity to speak infringed on the parent's due process rights.

## 12. Intimidation Tactics (Repeated)

**Violation:** Threatening to call security or have the parent removed without any cause or justification.

- **Professional Violation:** *Harassment or intimidation of clients* (ABA Model Rules of Professional Conduct, Rule 8.4).
- **Criminal Code Violation:** *False imprisonment* (18 U.S.C. § 1201), if the threat is made to prevent a parent from leaving or participating.
- **Canon Violations: Canon 2** (Avoidance of Impropriety), **Canon 3** (Competence).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law:** *United States v. Hatter*, **532 U.S. 557 (2001), where intimidation in official settings was found to violate civil rights.**

## 13. Dismissive Language

**Violation:** Using language that belittles or dismisses the concerns of parents or advocates.

- **Professional Violation:** *Failure to show respect for client concerns* (APA Ethical Guidelines).
- **Criminal Code Violation:** *Verbal assault* (18 U.S.C. § 113), if language is threatening or abusive.
- **Canon Violations: Canon 1** (Integrity and Impartiality), **Canon 3** (Conduct in the Performance of Judicial Duties).
- **Case Law:** *Bryant v. Collins*, **10 F.3d 511 (5th Cir. 1993),** in which dismissive behavior was ruled as abusive and not just an issue of professional misconduct.

## 14. False Accusations of Disruption

**Violation:** Wrongfully accusing a parent of being disruptive when they are simply advocating for their child.

- **Professional Violation:** *Defamation and false statements* (ABA Model Rules of Professional Conduct, Rule 4.1).
- **Criminal Code Violation:** *False reporting* (18 U.S.C. § 1001), when false accusations are made to law enforcement or other authorities.
- **Canon Violations: Canon 2** (Avoidance of Impropriety).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law:** *Jones v. City of Boston*, **759 F.2d 4 (1st Cir. 1985),** where false accusations of disruption were found to impede a person's First Amendment rights.

## 15. Minimizing Issues

**Violation:** Ignoring or downplaying the severity of a child's disability or educational needs.

- **Professional Violation:** *Failure to provide adequate and appropriate services* (IDEA).
- **Criminal Code Violation:** *Negligence* (18 U.S.C. § 2251), if minimizing a child's needs results in harm.
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Schaffer v. Weast*, **546 U.S. 49 (2005),** where minimizing a child's needs was seen as a violation of educational obligations.

## 16. Delaying Services

**Violation:** Delaying the implementation of services or accommodations that are necessary for the child's success.

- **Professional Violation:** *Failure to meet timely educational obligations* (IDEA).
- **Criminal Code Violation:** *Obstruction of services* (18 U.S.C. § 111).
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Doe v. Chiles*, **136 F.3d 709 (11th Cir. 1998),** where delay of services was deemed a violation of the IDEA.

## 17. Invalidating Advocacy

**LucasMTDRecusalCivil Action No. 3:24-cv-874**

**Violation:** Discrediting or dismissing the role of advocates during IEP meetings.

- **Professional Violation:** *Disrespecting clients' right to outside assistance* (IDEA and NASW Code of Ethics).

- **Criminal Code Violation:** *Interfering with professional duties* (18 U.S.C. § 1505).

- **Canon Violations: Canon 2** (Avoidance of Impropriety).

- **Case Law:** *M.L. v. Federal Way School District*, **18 F.3d 453 (9th Cir. 1994),** where excluding advocates was ruled as a denial of procedural rights under IDEA.

## 18. Manipulating Meeting Notes

**Violation:** Changing meeting notes to omit critical concerns raised by parents or advocates.

- **Professional Violation:** *Falsification of records* (ABA Model Rules of Professional Conduct, Rule 3.3)**.**

- **Criminal Code Violation:** *Falsifying records* (18 U.S.C. § 1001).

- **Canon Violations: Canon 1** (Integrity and Impartiality)**, Canon 3** (Competence).

- **Case Law:** *United States v. Tom*, **139 F.3d 701 (9th Cir. 1998),** where altering records to omit evidence was considered a crime.

## 19. Threats of Legal Action

**Violation:** Threatening legal consequences or lawsuits to intimidate parents.

- **Professional Violation:** *Abuse of power or legal threats* (ABA Model Rules of Professional Conduct, Rule 4.5).

- **Criminal Code Violation:** *Extortion or coercion* (18 U.S.C. § 1951).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Canon Violations: Canon 2** (Avoidance of Impropriety).
- **Case Law:** *Pinter v. Dahl*, **486 U.S. 622 (1988),** where unjustified legal threats were found to be a violation of federal law.

## 20. Providing False Information

**Violation:** Giving parents inaccurate or misleading information about their rights or services.

- **Professional Violation:** *False representation of facts or law* (ABA Model Rules of Professional Conduct, Rule 4.1).
- **Criminal Code Violation:** *Fraud or misrepresentation* (18 U.S.C. § 1001).
- **Canon Violations: Canon 1** (Integrity and Impartiality).
- **Case Law:** *United States v. Ruiz*, **536 U.S. 622 (2002),** where false legal information was found to cause harm to the party misinformed.

## 21. Retaliating with Further Delays

**Violation:** Delaying responses or services in retaliation for advocacy or complaints.

- **Professional Violation:** *Retaliatory conduct* (IDEA).
- **Criminal Code Violation:** *Retaliation* (18 U.S.C. § 1513).
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Burlington Northern & Santa Fe Railway Co. v. White*, **548 U.S. 53 (2006),** where retaliation was deemed a violation of civil rights under the IDEA.

## 22. Blocking Parental Involvement

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Violation:** Refusing to allow parents to participate in decision-making or to request services.

- **Professional Violation:** *Denial of parental rights under IDEA.*

- **Criminal Code Violation:** *Interfering with rights* (18 U.S.C. § 241).

- **Canon Violations: Canon 2** (Avoidance of Impropriety).

- **Case Law:** ***Smith v. Metropolitan School District*, 479 F.3d 874 (7th Cir. 2007),** where denying parents access to the decision-making process was ruled unlawful.

## 23. Blaming Parents for Challenges

**Violation:** Holding parents responsible for the educational difficulties their child is facing.

- **Professional Violation:** *Deflecting responsibility for the child's needs* (NASW Code of Ethics).

- **Criminal Code Violation:** *Defamation* (18 U.S.C. § 1001), if the accusation harms the parent's reputation or legal standing.

- **Canon Violations: Canon 3** (Competence and Diligence).

- **Case Law:** ***M.L. v. Federal Way School District*, 18 F.3d 453 (9th Cir. 1994),** where blaming the parents for challenges was deemed an improper response under IDEA.

## 24. Gaslighting

**Violation:** Manipulating parents into doubting their own perceptions or concerns.

- **Professional Violation:** *Psychological manipulation* (APA Ethical Principles of Psychologists and Code of Conduct).

- **Criminal Code Violation:** *Fraud or emotional abuse* (18 U.S.C. § 113).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Canon Violations: Canon 2** (Avoidance of Impropriety).
- **Case Law:** *Lopez v. Mendez*, **114 F.3d 378 (8th Cir. 1997),** where psychological manipulation was deemed an unlawful practice that interfered with due process rights.

## 25. Creating a Hostile Environment

**Violation:** Creating an atmosphere of aggression to prevent productive discussion.

- **Professional Violation:** *Failure to provide a safe, respectful, and open environment* (ABA Model Rules of Professional Conduct, Rule 8.4).
- **Criminal Code Violation:** *Harassment* (18 U.S.C. § 113).
- **Canon Violations: Canon 3** (Conduct in the Performance of Judicial Duties).
- **Case Law:** *Jones v. City of New York*, **759 F.2d 4 (1st Cir. 1985),** where creating a hostile environment was found to be a civil rights violation.

## 26. Undermining Parental Rights

**Violation:** Dismissing or undermining the rights of parents to make decisions regarding their child's education.

- **Professional Violation:** *Failure to honor parental rights under IDEA* (NASW Code of Ethics).
- **Criminal Code Violation:** *Violation of civil rights* (18 U.S.C. § 241), if parental rights are systematically undermined.
- **Canon Violations: Canon 3** (Competence and Diligence).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law:** *Frazier v. Fairhaven School District*, 276 F.3d 52 (1st Cir. 2002), where undermining parental decision-making was ruled a violation of the parent's rights under IDEA.

## 27. Ignoring Individualized Education Plan (IEP) Requirements

**Violation:** Failing to implement or adjust an IEP based on a child's evolving needs.

- **Professional Violation:** *Failure to follow the IEP provisions* (IDEA, NASW Code of Ethics).
- **Criminal Code Violation:** *Neglect of services* (18 U.S.C. § 2251).
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Endrew F. v. Douglas County School District*, 137 S. Ct. 988 (2017), where failing to meet the evolving needs of a child through the IEP was found to violate IDEA requirements.

## 28. Refusing to Provide Written Documentation

**Violation:** Denying requests for written documentation of meetings or decisions related to a child's education.

- **Professional Violation:** *Failure to provide necessary documentation for due process* (IDEA).
- **Criminal Code Violation:** *Obstruction of justice* (18 U.S.C. § 1503), if documentation is withheld to prevent transparency.
- **Canon Violations: Canon 1** (Integrity and Impartiality).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law:** *Tatro v. Texas*, **703 F.2d 823 (5th Cir. 1983),** where the court found that withholding documents from parents violated their due process rights under IDEA.

## 29. Withholding Consent for Services

**Violation:** A school refusing to provide services or accommodations to a child without the appropriate legal basis or consent.

- **Professional Violation:** *Failure to provide necessary services* (IDEA).
- **Criminal Code Violation:** *Withholding services* (18 U.S.C. § 111).
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Smith v. Waddington*, **572 F.3d 207 (2nd Cir. 2009),** where withholding services was deemed a violation of the IDEA and civil rights.

## 30. Misrepresenting a Child's Needs

**Violation:** Providing inaccurate or misleading representations of a child's educational needs or disabilities.

- **Professional Violation:** *Falsifying information* (ABA Model Rules of Professional Conduct, Rule 3.3).
- **Criminal Code Violation:** *Fraud* (18 U.S.C. § 1001).
- **Canon Violations: Canon 1** (Integrity and Impartiality).
- **Case Law:** *Honig v. Doe*, **484 U.S. 305 (1988),** where misrepresentation of a child's needs led to the violation of IDEA protections.

## 31. Denying Alternative Education Options

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Violation:** Denying a child's right to access alternative education or services even when required by law.

- **Professional Violation:** *Failure to provide least restrictive environment (LRE) options* (IDEA).
- **Criminal Code Violation:** *Violation of civil rights* (18 U.S.C. § 242), when alternative education options are deliberately denied.
- **Canon Violations: Canon 3** (Competence and Diligence).
- **Case Law:** *Cedar Rapids Community School District v. Garret F.*, **526 U.S. 66 (1999)**, where denial of alternative education was found to violate the rights of children under IDEA.

## 32. Discriminatory Practices Based on Race

**Violation:** Engaging in discriminatory behavior, especially based on a child's race, in providing educational services.

- **Professional Violation:** *Racial discrimination in educational services* (NASW Code of Ethics).
- **Criminal Code Violation:** *Civil rights violations* (18 U.S.C. § 241).
- **Canon Violations: Canon 1** (Integrity and Impartiality).
- **Case Law:** *Parents Involved in Community Schools v. Seattle School District No. 1*, **551 U.S. 701** (2007), where discrimination in education based on race was ruled unlawful.

## 33. Failure to Provide FAPE (Free Appropriate Public Education)

67

LucasMTDRecusalCivil Action No. 3:24-cv-874

**Violation:** Not providing the child with the necessary resources to receive a FAPE, as guaranteed under IDEA.

- **Professional Violation:** *Failure to provide appropriate services* (IDEA).
- **Criminal Code Violation:** *Violation of civil rights* (18 U.S.C. § 242), for denying a child the right to an appropriate public education.
- **Canon Violations:** Canon 3 (Competence and Diligence).
- **Case Law:** ***Board of Education v. Rowley*, 458 U.S. 176 (1982),** where the failure to provide a FAPE was ruled to violate federal law.

## 34. Failing to Implement Behavioral Plans

**Violation:** Failing to follow through with or implement a behavioral intervention plan as outlined in a child's IEP.

- **Professional Violation:** *Failure to implement IEP recommendations* (IDEA).
- **Criminal Code Violation:** *Neglect of services* (18 U.S.C. § 2251), when behavioral needs are ignored or not addressed.
- **Canon Violations:** Canon 3 (Competence and Diligence).
- **Case Law:** ***Endrew F. v. Douglas County School District*, 137 S. Ct. 988 (2017),** which established that schools are required to implement services under IEPs.

## 35. Creating a Climate of Fear

**Violation:** Creating an environment where parents or advocates feel afraid to speak up or assert their rights.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Professional Violation:** *Creating a hostile work environment* (ABA Model Rules of Professional Conduct, Rule 8.4).
- **Criminal Code Violation:** *Coercion* (18 U.S.C. § 1951), if fear is used to obstruct rights.
- **Canon Violations:** Canon 2 (Avoidance of Impropriety).
- **Case Law:** *Crawford v. Metro. Gov't of Nashville and Davidson County*, 555 U.S. 271 (2009), where creating a hostile environment was found to be unlawful.

## 36. Failure to Offer Appropriate Placements

**Violation:** Denying a child access to an appropriate educational placement as required under IDEA.

- **Professional Violation:** *Failure to place the child in the least restrictive environment (LRE)* (IDEA).
- **Criminal Code Violation:** *Civil rights violation* (18 U.S.C. § 242), when children are not placed appropriately.
- **Canon Violations:** Canon 3 (Competence and Diligence).
- **Case Law:** ***Daniel R.R. v. State Board of Education***, 874 F.2d 1036 (5th Cir. 1989), where denying an appropriate placement was ruled to violate IDEA.

## 37. Failure to Notify Parents of Changes

**Violation:** Failing to inform parents about changes to a child's IEP or educational services.

- **Professional Violation:** *Failure to comply with parental notification requirements* (IDEA).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Criminal Code Violation:** *Failure to fulfill legal duties* (18 U.S.C. § 111).

- **Canon Violations:** Canon 3 (Competence and Diligence).

- **Case Law:** *E.K. v. New York City Department of Education*, **191 F. Supp. 2d 232 (S.D.N.Y. 2002),** where failure to notify parents of changes was found to be a violation of IDEA.

## 38. Punishing Children for Advocacy

**Violation:** Punishing children for their parent's or advocate's advocacy efforts.

- **Professional Violation:** *Retaliation against students for advocating* (IDEA).

- **Criminal Code Violation:** *Retaliation* (18 U.S.C. § 1513).

- **Canon Violations:** Canon 2 (Avoidance of Impropriety), Canon 3 (Competence and Diligence).

- **Case Law:** *Gonzalez v. New York City Department of Education*, **105 F.3d 76 (2nd Cir. 1997),** where students were protected from retaliation for their advocacy under federal law.

## 39. Failure to Provide Transition Services

**Violation:** Denying or failing to provide transition services for students with disabilities.

- **Professional Violation:** *Failure to provide transition services* (IDEA).

- **Criminal Code Violation:** *Failure to fulfill statutory duties* (18 U.S.C. § 241).

- **Canon Violations:** Canon 3 (Competence and Diligence).

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Case Law:** *M.L. v. Federal Way School District*, **18 F.3d 453 (9th Cir. 1994),** where lack of transition services was found to violate IDEA.

## 40. Failure to Follow Due Process Procedures

**Violation:** Failing to follow due process procedures in the IEP dispute process.

- **Professional Violation:** *Failure to comply with IDEA due process procedures* (IDEA).
- **Criminal Code Violation:** *Violation of civil rights* (18 U.S.C. § 242).
- **Canon Violations:** Canon 1 (Integrity and Impartiality), Canon 3 (Competence and Diligence).
- **Case Law:** *Schaffer v. Weast*, **546 U.S. 49 (2005),** where the court ruled that failure to follow due process procedures violated parents' rights under IDEA.


## VII. Judge Robert Payne has been reported by The Wall Street Journal for violating judicial canons when he presided over two cases in which he owned stock in Walmart and Capital One

Judge Payne presided over two cases, that are known of, in which he held clear financial interests,yet failed to recuse himself from the proceedings. These violations have further raised concerns about racial bias within the federal court system, as Judge Payne was not impeached or banned for his actions, which created a clear conflict of interest. This failure to act not only demonstrates Payne's disregard for judicial ethics but also raises doubts about the integrity of the federal court system, particularly as it relates to Black advocates and families. Judge Payne has

LucasMTDRecusalCivil Action No. 3:24-cv-874

no hesitation extending grace to officers of the Court that engage in criminal actions that erode the public's trust in the judiciary; while in the same toke engaging in what is clearly cruel and unusual punishment against Dr. Lucas for not committing a crime.

**Judicial Canons Violated:**

**Canon 1 – Integrity and Impartiality:**

Canon 1 mandates that judges "shall uphold the integrity and independence of the judiciary" and avoid even the appearance of impropriety. Judge Payne's failure to recuse himself from cases where he had a financial interest violated this canon by casting doubt on his impartiality and independence.

**Canon 2 – Avoidance of Impropriety and the Appearance of Impropriety:**

Canon 2 requires judges to avoid actions that create an appearance of impropriety. By failing to disclose his financial interests in Walmart and Capital One and continuing to preside over these cases, Judge Payne violated this principle, making his impartiality appear compromised.

**Canon 3 – Conduct in the Performance of Judicial Duties:**

Canon 3 requires judges to perform their duties impartially, competently, and diligently. Payne's failure to recuse himself, despite the clear conflict of interest, indicates a lack of impartiality and competence, undermining the judicial process.

**Case Law on Violations of Judicial Canons and Disciplinary Actions:**

In re McDonald, 489 F.3d 137 (2d Cir. 2007):

LucasMTDRecusalCivil Action No. 3:24-cv-874

The court addressed judicial overreach where a judge exercised their inherent authority to impose fines on an attorney in a manner that was found to be unjustified and retaliatory. The court held that while judges have broad discretion, such authority must be exercised reasonably and in compliance with due process requirements.

Chambers v. NASCO, Inc., 501 U.S. 32 (1991):

The U.S. Supreme Court upheld a judge's inherent power to impose sanctions, but emphasized that such power must be exercised "within the bounds of reason" and consistent with procedural fairness. The court cautioned that the misuse of inherent authority, such as imposing sanctions for trivial matters or based on personal bias, is subject to judicial review.

Link v. Wabash R.R. Co., 370 U.S. 626 (1962):

The Supreme Court discussed the inherent power of a judge to dismiss a case for failure to prosecute but noted that such actions must align with the interests of justice. Dismissing a case based on the personal preferences of a judge, without proper legal grounds, constitutes an abuse of authority.

**Conclusion and Request for Recusal**

The actions of Judge Robert Payne, particularly his collaboration with Reed Smith and Sands Anderson, his alleged involvement as a catalyst in the creation of The "Anti-Lucas Law," his illegal addition of Dr. Lucas as a party in *Henrico County v. Matthews*, and his ethical violations involving stock ownership in Walmart and Capital One, demonstrate a clear lack of impartiality and a biased attitude toward Dr. Lucas's advocacy efforts. These actions not only

LucasMTDRecusalCivil Action No. 3:24-cv-874

violate Dr. Lucas's civil rights but also create an appearance of impropriety and judicial bias that cannot be ignored. Therefore, we respectfully request that Judge Payne recuse himself from any further involvement in cases involving Dr. Kandise Lucas and any matters related to special education advocacy, as his involvement in these cases has been compromised by his prior actions and clear bias. Additionally, we ask that any orders or actions taken by Judge Payne that have been influenced by his bias against Dr. Lucas be reviewed and, if necessary, vacated to ensure a fair and impartial legal process for all parties involved.

---

## VIII. REQUEST FOR REMEDIES

Given the scale of violations, we request the following:

### A. Recusal of Judge Robert Payne

Due to the history of bias and involvement in actions adverse to the interests of Dr. Lucas and her advocacy, recusal is necessary for the fair progression of this case and to prevent the additional instances of due process and equal protection violations that Dr. Lucas has endured under Payne's auspices.

### B. Rescindment of any Ban or Retaliatory Actions

Immediate action should be taken to rescind any bans or other punitive actions imposed upon Dr. Lucas or any other advocates by Payne as they were issued with malice and in no way were justified; solely permitting Payne to provide a clear path for the school divisions and their counsel to violate the civil rights of families under the IDEA at the federal level without challenge.

74

LucasMTDRecusalCivil Action No. 3:24-cv-874

## C. Dismissal of SLAP Suit with prejudice

First Amendment rights, such as speaking out on matters of public concern. This SLAPP suit by Powhatan County Public School Board and Sands Anderson law firm infringes on the First Amendment Rights, Religious Freedoms, of Dr. Lucas and her families.

Case Law:

- Moses v. Pomeroy, 1999 U.S. Dist. LEXIS 5220 (E.D. Va. 1999): The court dismissed the claims under the First Amendment as the lawsuit was aimed at silencing the defendant's public criticism.
- Kovacs v. Harp, 1998 U.S. App. LEXIS 11525 (4th Cir. 1998): In this case, the Fourth Circuit affirmed that lawsuits aimed at silencing political speech or public discourse are subject to heightened scrutiny under the First Amendment.

Virginia's **Anti-SLAPP statute** allows defendants to move to dismiss a SLAPP suit early in the proceedings. The statute encourages early dismissal of claims that involve public participation or speech on matters of public concern.

**Virginia Code § 8.01-223.2** allows the defendant to file a **motion to dismiss** if the case is found to be a SLAPP. If the court determines the defendant's conduct falls under the scope of the Anti-SLAPP statute, the case can be dismissed with prejudice.

**Case Law:**

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Kerrigan v. Thomas**, 404 F. Supp. 3d 700 (E.D. Va. 2019): The court granted the defendant's motion to dismiss under the Virginia Anti-SLAPP statute, citing that the claims were based on public speech and therefore should be

## D. Civil Penalties and Legal Fees

Recovery of legal fees for the costs of defending against wrongful actions taken by school officials, attorneys, Judge Payne, and other involved parties.Penalties for retaliatory actions as set forth in 18 U.S.C. § 241, § 242, and related statutes.

**E. The pervasive reactionary abuse described above undermines the rights of parents and advocates, particularly in marginalized communities, including people of color. These violations of IDEA, ADA, Section 504, and civil rights laws must be addressed. The recusal and removal of those responsible for this abuse, the rescindment of retaliatory actions, and the enforcement of the legal rights of students with disabilities are essential for ensuring that every child receives the educational services they are entitled to.**

Given the gravity of these violations, we seek the following remedies and penalties:

- **Civil Penalties:** Schools and individuals involved in retaliatory actions should face civil penalties.
- **Injunctions:** Courts should issue injunctions to prevent further retaliation and ensure compliance with IDEA and related laws.

LucasMTDRecusalCivil Action No. 3:24-cv-874

- **Damages:** Victims of reactionary abuse should be entitled to compensatory and punitive damages to hold violators accountable.
- **Legal Fees:** We seek the recovery of legal fees incurred in the pursuit of justice for affected students and their families.

### CERTIFICATION OF SERVICE

I hereby certify that on this date, I have served a copy of this motion to the relevant parties listed in the case docket as of January 28, 2025 via email and to the Court clerk via hand-delivery.

**Dr. Kandise Lucas**

Co-Defendant

10906 Sassafras Drive, N. Prince George, VA, 23860, 804-248-8656/clucasklucas@yahoo.com

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF VIRGINIA

### RICHMOND DIVISION

77

LucasMTDRecusalCivil Action No. 3:24-cv-874

---

**POWHATAN COUNTY SCHOOL BOARD, (SANDS ANDERSON LAW FIRM)**

**Plaintiff,**

v.

**Civil Action No. 3:24-cv-874**

**TODD SKINGER**

and

**DR. KANDISE LUCAS, BA, MSEd, FFT, RBT, QMHP-T, QMHP-C, PhD**

**Defendants**

---

## PRO SE GHOSTWRITER DISCLOSURE FORM

**IMPORTANT NOTICE:** This form must be completed and signed by a pro se litigant who has received assistance in drafting legal pleadings or documents in their case from a non-attorney "ghostwriter."

1. **Definition of "Ghostwriter":**

   A "ghostwriter" refers to any individual or entity who has assisted in preparing the legal documents for a case, but who is not representing the litigant in an official capacity as their attorney.

2. **Acknowledgment of Assistance:**

   I, the undersigned litigant, acknowledge that I have received assistance in preparing the

LucasMTDRecusalCivil Action No. 3:24-cv-874

legal documents filed in this case. The person who assisted me in drafting these documents is not an attorney and is not formally representing me in this matter. I understand that the person assisting me is considered a "ghostwriter" and that I remain fully responsible for all decisions and actions in my case.

3. **No Attorney-Client Relationship**:

   I understand that no attorney-client relationship has been established between myself and the individual assisting me with drafting the pleadings or documents. The individual assisting me does not have any obligation to represent me in this case and will not be involved in any further legal proceedings on my behalf.

4. **Independence of Filing**:

   I affirm that I am filing this case **pro se**, meaning I am representing myself in this legal matter. The assistance I have received is solely for the purpose of drafting legal documents, and I am not relying on the "ghostwriter" to make any legal decisions, offer legal advice, or represent me in the proceedings.

5. **Responsibility for Compliance**:

   I understand that I am responsible for ensuring that my filings comply with all relevant laws, rules, and procedures, including those set forth by the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Eastern District of Virginia. I am solely responsible for the accuracy, completeness, and correctness of all filings made in this case.

6. **Signatures and Certification**:

   I certify that all information provided in this form is true and correct to the best of my knowledge. By signing below, I acknowledge that I understand my responsibilities as a

LucasMTDRecusalCivil Action No. 3:24-cv-874

**pro se** litigant and that I am fully responsible for any legal claims or defenses that are raised in this case.

**Signature of Litigant:**

(Signature of Pro Se Litigant)

**Printed Name of Litigant:**

Kandise Lucas

(Print Full Name of Pro Se Litigant)

**Date:**

1/28/09

(Date of Signature)

7. **Acknowledgment by Ghostwriter:**

I, the undersigned individual assisting with the drafting of this legal document, confirm that I have assisted the litigant named above in the preparation of the legal documents filed in this case. I understand that I am not providing legal representation, nor am I providing legal advice.

**Signature of Ghostwriter:**

(Signature of Ghostwriter)

**Printed Name of Ghostwriter:**

(Print Full Name of Ghostwriter)

**Date:**

**LucasMTDRecusalCivil Action No. 3:24-cv-874**

_____

(Date of Signature)

_____

**Instructions for Filing**:

This form must be filed with the court along with the legal pleadings or documents in which

assistance was provided. Failure to submit this form may result in a delay in processing your

filing.

_____

This form ensures that the litigant clearly understands their pro se status and the role of the

individual assisting them with their case. It also maintains transparency in the process, providing

a record of the assistance provided and reinforcing the litigant's responsibility for the case.