IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

POWHATAN COUNTY SCHOOL BOARD,

    Plaintiff,

v().                                      Civil Action No. 3:24-cv-874

TODD SKINGER AND
KANDISE LUCAS,

    Defendants.

## MEMORANDUM OPINION

Before the Court is Defendant Kandise Lucas' ("Lucas") RENEWED MOTION TO RECUSE JUDGE ROBERT E. PAYNE AND TO VACATE PRIOR RULINGS FOR CAUSE, ECF No. 169 ("the MOTION"). For the reasons set forth before, it was ORDERED that the MOTION was DENIED.[1]

---

[1] The MOTION contains two portions. The first, from pages one (1) through six (6), seems to be a motion to recuse the undersigned. The second, from pages seven (7) through fifteen (15), seems to be Lucas' response to the Court's show cause ORDER, ECF No. 157. Such "multipurpose filings" have become Lucas' standard practice in this Court, both in this case and in others to which she is a party, notwithstanding several judicial admonishments to cease such a practice. ECF Nos. 94, 170, 171; Powhatan Cnty. Sch. Bd. v. Halvorsen, No. 3:24-cv-216, 2024 U.S. Dist. LEXIS 150086, at *8-9 (E.D. Va. Aug. 21, 2024) (ECF No. 26); Goochland Cnty. Sch. Bd. v. Sims, No. 3:25-cv-238 (ECF No. 19). In these previous ORDERS addressing these multipurpose filings, the Court has held each time that filing the papers in this format constitutes (at least one basis) for STRIKING the filing from the record. The Court has the authority to do so here, too. However, it chooses not to do so because the second portion of the MOTION, ECF No. 169, at 7-15, contains Lucas' response to the Court's show cause ORDER, which, if it were stricken, would result in the imposition of $6,000.00 in sanctions against Lucas for violating a judicial ORDER and engaging in the unauthorized practice of law without a law license. ECF No. 157. That is a serious consequence. Therefore, the Court will not strike ECF No. 169 so that the Court can consider Lucas'

The MOTION seeks the undersigned's recusal on the grounds of "extrajudicial bias, judicial retaliation, obstruction of due process, racial and professional animus, and improper interference with federally protected rights and responsibilities under the Individuals with Disabilities Education Act" ("IDEA"). ECF No. 169, at 1 (emphasis removed). She also seeks the vacatur of <u>all rulings</u> issued by the undersigned. <u>Id.</u> She seeks this relief pursuant to 28 U.S.C. §§ 144, 455(a), (b)(1), and Fed. R. Civ. P. 60(b). <u>Id.</u> at 2. Lucas is proceeding as a <u>pro se</u> litigant. Thus, her arguments must be considered with leniency and understanding. Her claims, however, remain unpersuasive and fail even under that deferential standard.

To begin, Lucas' request for relief under Fed. R. Civ. P. 60(b) is not proper. Rule 60(b) permits a party to file a motion to seek relief "from a final judgment, order, or proceeding" for a litany of reasons. Fed. R. Civ. P. 60(b)(1)-(6). By its plain terms, Rule 60(b) requires that the movant seek relief from a "final" judgment or order, meaning one that "end[s] the litigation, leaving nothing to be done except the execution of the judgment." <u>Bernstein v. Menard</u>, 728 F.2d 252, 253 (4th Cir. 1984) (citing <u>Coopers & Lybrand v. Livesay</u>, 437 U.S. 463, 467, 98 S. Ct. 2454,

---

response to the show cause ORDER, to which she clearly intended to respond—even if done so improperly in the present form. The Court will address Lucas' response to its show cause ORDER in a separate MEMORANDUM OPINION and ORDER.

2

57 L. Ed. 2d 351 (1978)); Kinsale Ins. Co. v. Jdbc Holdings, Inc., 31 F.4th 870, 874 (4th Cir. 2022). Not only has the Court not yet entered any final judgment or order in this case but Lucas does not even point to a single such judgment or order that she believes can be the source of relief under Rule 60(b). Instead, she blanketly seeks such relief from every single opinion and order entered by the Court in this matter. That is not an appropriate request under Rule 60(b). Therefore, the MOTION will be DENIED to the extent that it seeks relief under Rule 60(b).

And, none of the several bases for recusal pass muster. Each will be considered in turn.

First, the MOTION requests recusal under 28 U.S.C. § 144. That aspect of the MOTION fails at this threshold because Lucas did not file an "affidavit that the judge before whom the matter is pending has a personal bias or prejudice." 28 U.S.C. § 144. That requirement is important because the affidavit must be under oath, thereby assuring that what is said is objective provable fact and is not just opinion. See Lilley v. Levchuk, No. 5:16-cv-193, 2017 U.S. Dist. LEXIS 107792, at *3 (W.D.N.C. July 12, 2017) (citations omitted). And, because a false affidavit subjects its affiant to perjury charges, the requirement seeks to motivate the affiant to take care in what is said. The MOTION is not proper under the statute because there is no affidavit. It will be DENIED to the extent that it is based on 28 U.S.C. § 144.

3

Second, the MOTION for recusal relies on 28 U.S.C. § 455(a) and (b)(1). Section 455(a) provides that any judge "shall disqualify himself in any proceeding in which his impartiality might <u>reasonably</u> be questioned." 28 U.S.C. § 455(a) (emphasis added). For recusal to be appropriate under Section 455(a), there must be a "reasonable factual basis [that] exists for doubting the judge's impartiality. The inquiry is whether a person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial." <u>In re Beard</u>, 811 F.2d 818, 827 (4th Cir. 1987) (citation omitted). However, judges are "not . . . required to recuse [themselves] simply because of 'unsupported, irrational, or highly tenuous speculation.'" <u>United States v. Cherry</u>, 330 F.3d 658, 665 (4th Cir. 2003) (quoting <u>United States v. DeTemple</u>, 162 F.3d 279, 287 (4th Cir. 1998). Similarly, Section 455(b)(1) provides that a judge "shall also disqualify himself" when "he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." <u>Id.</u> § 455(b)(1). To meet Section 455(b)(1)'s standard, the movant "must demonstrate that such bias or prejudice arose from an extrajudicial source, or, if such bias arose from a judge's official role, the litigant must demonstrate that the judge displayed a 'deep-seated favoritism or antagonism.'" <u>Canslor v. Clarke</u>, No. 2:13-cv-116, 2016 U.S. Dist. LEXIS 85601, at *10 (E.D. Va. June 29, 2016) (quoting <u>Liteky v.</u>

United States, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994)). For the reasons set forth below, the MOTION does not satisfy any of these requirements.

Lucas claims that the undersigned has (1) repeatedly entered adverse rulings based on "personal viewpoint discrimination rather than law"; (2) used "defamatory language . . . to discredit" Lucas; (3) abused its discretion to "retaliate" against Lucas; and (4) targeted Lucas with "sanctions and exclusion without equivalent scrutiny of Plaintiffs [sic] or similarly situated parties." ECF No. 169, at 2. These general, conclusory accusations appear as bullet points in one section of the MOTION without any sort of evidence or reasoning to substantiate or otherwise support them. The MOTION gives no examples of purported "viewpoint discrimination" in which the Court purportedly has engaged. Nor does it give examples of the "defamatory language" or "retaliat[ory]" actions that the Court has purportedly used against Lucas. It is true that the Court has imposed sanctions on Lucas once in this case, ECF No. 158, but the MOTION fails to explain how the Court has purportedly failed to scrutinize the conduct of the Plaintiff, Powhatan County School Board ("PCSB"), in equal measure. Simply put, PCSB has not conducted itself in a way that necessitates sanctions. Lucas has. So, she has been sanctioned and PCSB has not. Were PCSB to act in a way that warranted sanctions, however, the Court would consider that

5

conduct and impose them if deemed necessary at that time. These unsubstantiated claims fail to meet the standards for recusal under Section 455(a) or (b)(1).

Next, the MOTION asserts that the Court, in conjunction with United States Magistrate Judge Summer L. Speight, somehow acted improperly by referring Lucas and her co-Defendant, Todd Skinger ("Skinger"), and PCSB to a settlement conference. The Court referred, by written ORDER, the parties to Magistrate Judge Speight for settlement purposes. ECF No. 19. Upon that referral, Magistrate Judge Speight set a settlement conference between PCSB and Skinger, but did not include Lucas in that conference. ECF No. 90.[2]

---

[2] The Court understands that Magistrate Judge Speight did not include Lucas in the settlement conference or the negotiations between PCSB and Skinger because such negotiations proved futile in yet another case before the Court involving PCSB and Lucas, Powhatan Cnty. Sch. Bd. v. Halvorsen, No. 3:24-cv-216. In that case, the Court referred PCSB as well as both Lucas and the parents for whom she was a special advocate (the Halvorsens) to Magistrate Judge Speight for settlement purposes. Id. (ECF No. 90). However, the Court instructed that Lucas could "not participate in" the settlement discussions dealing with how to educationally accommodate the child in that case (H.S.) or otherwise "serve as a Special Education Advisor" to the Halvorsens during those negotiations. Id. at 1-2. Instead, the Court instructed that Lucas, the Halvorens and PCSB engage in a separate set of settlement negotiations for the claims brought directly against them. Id. at 2. The Court did so believing that such a process would be most conducive to reaching a mutually agreeable settlement.

Notwithstanding the Court and Magistrate Judge Speight's efforts in Halvorsen to generate a productive settlement process and ameliorable settlement outcome, Lucas took actions to hinder the settlement process (for both herself and the Halvorsens) in that case. Ultimately, the Halvorsens did eventually settle with PCSB. Lucas did not settle and, in time, default judgment was entered

6

The MOTION takes the view that this "obstructed Lucas from accessing court-ordered settlement meetings," which "violated both[] Lucas and Skinger's due process rights" as well as hindered Lucas' ability to (1) participate in the "defense of claims filed against her jointly"; (2) resolve matters "collaboratively through alternative dispute resolution"; and (3) fulfill her "responsibilities under ethical, constitutional, and statutory mandates." ECF No. 169, at 3. She concludes by asserting that this conference "barr[ed her] from working with and consulting with [Skinger]," which "unlawfully interfered with her legal interest and civil rights, thereby rendering the proceedings structurally unconstitutional." Id.

Just like her first argument, this argument rests on no evidence or reasoning. She cites no legal authority—caselaw, statutes, regulations, constitutional provisions, treatises, law review articles, or otherwise—that would support any of these positions. Indeed, the accusations are so bare that it is almost

---

against her. Id. (ECF No. 55).

Similarly in this case, Magistrate Judge Speight's ORDER stated that Lucas would not participate in the settlement negotiations or conferences held between Skinger and PCSB to resolve the claims brought by PCSB against Skinger only. ECF No. 90, at 1. That reflects a well-reasoned effort to best effectuate a settlement agreement between the parties based on Magistrate Judge Speight's experience with Lucas and PCSB in the Halvorsen matter. Of course, all of this does not mean that PCSB and Lucas cannot pursue settlement on their own terms—an outcome the Court would welcome were it to occur.

7

impossible for the Court substantively to address them. Lucas does not provide any ethical code, statutory provision, or constitutional clause that provides her with "responsibilities" that the Court somehow obstructed.

Furthermore, the Court has inherent authority to facilitate settlements as a means of "providing an orderly and peaceful resolution of controversies" and managing the "judicial process" before it. Mitchell v. Ocwen Loan Servicing, LLC, No. 4:14-cv-169, 2016 U.S. Dist. LEXIS 36736, at *5 (E.D. Va. Feb. 16, 2016) (quoting Hensley v. Alcon Labs, Inc., 277 F.3d 535, 540 (4th Cir. 2002). And, the Local Civil Rules expressly permit the engagement of the Court and its Magistrate Judges to act as mediators in settlement negotiations between parties. Local Civ. R. U.S. Dist. Ct. E. Dist. of Va. 83.6. The MOTION cites no authority to support Lucas' claim that having Skinger alone participate in a settlement conference with PCSB for the claims brought against him specifically, and not those brought against Lucas, violates her constitutional rights, and, after a diligent search, the Court could locate no such authority. Contrary to Lucas' claims, having Skinger participate in a settlement conference with PCSB did not "bar" her and Skinger's communication over the merits claims that remain under consideration before the Court. Indeed, the fact that settlement negotiations between Skinger and PCSB were ongoing did not stop the merits case against Lucas or Skinger from

8

progressing.³ Id. § 83.6(D) ("The appointment of a mediator or neutral shall not operate to postpone or stay the scheduling of any case or controversy nor shall such appointment be grounds for the continuance of a previously scheduled trial date or the extension of any deadlines previously scheduled by the Court."). The Court has never "barred" Lucas and Skinger, as co-Defendants, from coordinating their defense to those merits claims. It merely enjoined Lucas from acting as an IDEA "special advocate" to Skinger in these federal judicial proceedings. Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110 (ECF Nos. 220, 221).⁴ Lastly, because Magistrate Judge Speight ORDERED Lucas to not participate in the settlement negotiations between PCSB and Skinger, Lucas should not have been having conversations with Skinger about that process regardless because to do so would violate the confidentiality of that separate proceeding. These procedural safeguards are not matters of obstruction. They exist to ensure judicial efficiency in the conducting of the settlement negotiations—a matter entirely separate from the merits case against Lucas and Skinger as co-

---

³ Skinger has since settled with PCSB for the claims against him. ECF No. 193.

⁴ Individuals whom the Court refers to as "IDEA special advocates" are permitted to advise parents in IDEA proceedings at the administrative (nonfederal) level on issues related to their child's Individualized Education Plan that is devised between the parent, their advocate, and the public school that must accommodate the disabled child's needs. 20 U.S.C. § 1415(h)(1).

9

Defendants. Therefore, this basis for her relief likewise fails.

Next, the MOTION argues that the Court has somehow suppressed "protected activities" under the IDEA by "targeting" Lucas for "fulfilling her role" as an IDEA special advocate. ECF No. 169, at 3-4. Here, again, the MOTION provides no examples or instances of what conduct the Court has undertaken to "target" or "suppress" her. This argument is so underdeveloped in the MOTION that it need not be fully addressed. Any rights or responsibilities that Lucas has as a special advocate under the IDEA and its regulations, including the "related services" provision, 34 C.F.R. § 300.34(c)(8), are not relevant here because the Court has permanently enjoined her from acting in her capacity as an IDEA special advocate when participating in cases before this Court. Matthews, supra, (ECF Nos. 220, 221). In a separate, published MEMORANDUM OPINION and ORDER, the Court fully addresses the underlying merits of this argument. The Court need not address the argument as it pertains to the recusal MOTION because it is simply "unsupported, irrational, or highly tenuous speculation," that does not warrant the undersigned's recusal. DeTemple, 162 F.3d at 287.

Lastly, the MOTION argues that:

> Even absent actual bias, the totality of conduct and procedural irregularities—especially the calculated targeting of a Black female civil rights advocate and IDEA service provider—creates a clear appearance of impropriety under § 455(a). The Court's favoritism

10

>toward Plaintiff's opponents, including Sands Anderson attorneys and school officials engaged in fraud, further reinforces this conclusion.

ECF No. 169, at 4 (emphasis added). This contention also lacks merit. Conspicuously absent from all of the allegations in the MOTION are any concrete instances of "conduct" taken by the undersigned against Lucas that demonstrate, or even suggest, bias or prejudice. Likewise, the MOTION does not mention any valid, concrete examples of "procedural irregularities" committed by the Court. So, it is unclear what the MOTION even refers to when it states that the "totality of conduct and procedural irregularities" warrants recusal. The accusation that the undersigned has somehow racially discriminated against Lucas appears nowhere else in the MOTION (aside from the last sentence of the introductory paragraph) and, again, lacks any evidentiary support.

Then, the MOTION argues that the Court has somehow acted in a manner that favors PCSB and ignores fraudulent behavior by PCSB (and its legal counsel).[5] The fact that the Court has issued favorable rulings for Lucas' opponent does not mean that the Court expresses "favoritism" towards PCSB. It merely demonstrates that,

---

[5] There is utterly no support for the charges that PCSB or its counsel have acted fraudulently. So, those accusations are STRICKEN from the MOTION pursuant to Rule 12 of the Federal Rules of Civil Procedure as "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f)(1).

11

in that instance, PCSB's arguments prevailed on the merits. Nothing more. Nothing less. There is simply no support for the claim that any actions taken by this Court towards PCSB, or its counsel, "further reinforces" the threadbare and unsupported "conclusion" of improper judicial bias or prejudice that would necessitate recusal.

Having examined every (both proper and improper) purported basis for the undersigned's recusal under 28 U.S.C. § 455(a) and (b)(1), it is clear that the claims are conclusory, lack any evidentiary or analytical support, and, by and large, represent instances of "unsupported, irrational, or highly tenuous speculation" that are insufficient to warrant the recusal of the undersigned. Cherry, 330 F.3d at 665. On this record, no "reasonable factual basis exists for doubting the [undersigned's] impartiality" because no reasonable person could so conclude. In re Beard, 811 F.2d at 827. Therefore, recusal is not warranted under Section 455(a). And, Lucas has not demonstrated that any claimed "bias or prejudice arose from an extrajudicial source," or, that the undersigned has "displayed a 'deep-seated favoritism or antagonism'" due to his judicial role. Canslor, 2016 U.S. Dist. LEXIS 85601, at *10 (quoting Liteky, 510 U.S. at 555). Therefore, recusal is also not warranted under Section 455(b)(1). Finding no reasonable basis for recusal under 28 U.S.C. § 144 or § 455(a) or (b)(1), or basis for vacatur under Fed. R. Civ. P. 60(b), it was

ORDERED that the MOTION, to the extent that it seeks recusal and reconsideration, was DENIED.

The Clerk shall send a copy of this MEMORANDUM OPINION and the accompanying ORDER to Lucas.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: July 16, 2025