IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

POWHATAN COUNTY SCHOOL BOARD,

     Plaintiff,

v.                                    Civil Action No. 3:24-cv-874

TODD SKINGER AND
KANDISE LUCAS,

     Defendants.

MEMORANDUM OPINION

Before the Court is DEFENDANT KANDISE LUCAS'S MOTION FOR RECONSIDERATION OF MAY 23, 2025 ORDER (ECF NO. 157), ECF No. 168 (the "RECONSIDERATION MOTION"), and Defendant Kandise Lucas' ("Lucas") RENEWED MOTION TO RECUSE JUDGE ROBERT E. PAYNE AND TO VACATE PRIOR RULINGS FOR CAUSE, ECF No. 169 (the "RECUSE AND VACATE MOTION"), (collectively, "the MOTIONS"). For the reasons set forth below, the RECONSIDERATION MOTION will be denied.

Further, the Court finds that Lucas has not shown sufficient cause why she should not be sanctioned for practicing law without a license and violating a permanent injunction in effect against her in Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110 (ECF No. 220). Therefore, the Court will impose a sanction on Lucas in the amount of $3,000.00 for each violation identified in the show cause ORDER, ECF No. 157, for a total of $6,000.00.

Lastly, part of ECF No. 169 will be stricken from the record, specifically, the material beginning on page ten (10) at Header

"E." through the bottom of page fourteen (14).

## I. BACKGROUND[1]

## A. THE INDIVIDUALS WITH EDUCATION DISABILITIES ACT AND "SPECIAL ADVOCATES"

This case arises under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("the IDEA"), and its accompanying federal regulations, 34 C.F.R. Part 300, and state regulations, 8 Va. Admin. Code § 20-81-10 et seq. The IDEA guarantees students a "free appropriate public education" ("FAPE"), which includes requiring states to provide "special education and related services" that meet specified standards. 20 U.S.C. § 1401(9)(A)-(D). To meet this guarantee, the statute requires public schools to provide students with certain disabilities with an "Individualized Education Plan" ("IEP") that is devised (with the involvement of the school and parents) to meet the needs of the particular student's disability. Id. § 1414(d).

Parents may opt to obtain the assistance of "other individuals who have knowledge or special expertise regarding the child, including related services personnel as appropriate," to assist them and their child in developing the IEP and navigating the

---

[1] The facts of this case have been set out by the Court in various ORDERS and MEMORANDUM OPINIONS. E.g., ECF No. 104, at 1-4. The Court includes only the relevant facts here to resolve the issues presented by the MOTIONS.

IDEA's complex procedures. <u>Id.</u> § 1414(d)(1)(B)(vi). Those individuals are generally known as "special advocates."

Special advocates may provide services and advice to parents and children to assist them in navigating the complex IDEA and special education process. These services are known as "related services." 20 U.S.C. § 1401(26)(A); 34 C.F.R. § 300.34(a). A subset of those related services is "parent counseling and training services," which includes having the special advocate: "assisting parents in understanding the special needs of their child"; "[p]roviding parents with information about child development"; and "[h]elping parents to acquire the necessary skills that will allow them to support the implementation of their child's IEP or IFSP." 34 C.F.R. § 300.34(c)(8).

If an issue arises in the creation or implementation of a student's IEP, the IDEA provides procedural safeguards that protect the student. 20 U.S.C. § 1415. These safeguards allow the parents, and special advocates in coordination with the consenting parent and on behalf of the student, to file with an administrative hearing officer a so-called "due process complaint" that alleges a violation of the child's rights under the IDEA. <u>Id.</u> § 1415(b)(6). Those administrative hearing officers then may conduct a "due process hearing" to resolve the complaint. <u>Id.</u> § 1415(f). If the hearing officer rules against the parent, the parent may file an administrative appeal or choose not to do so. <u>Id.</u> § 1415(g). If

3

the parent loses on appeal, or, if the parent chooses not to administratively appeal an adverse decision pursuant to the statute's requirements, then the hearing officer's decision is final. Id. § 1415(k)(3). At that point, the parent may bring a civil action against the school in either state or federal court. Id. 1415(i)(2).

If an "issue separate from [one alleged in] a due process complaint already filed" with an administrative hearing officer arises, then the parent may file another complaint at the administrative level. Id. § 1415(o). The process then begins anew as to that new and different due process complaint.

If the administrative hearing officer decides the case against the school board, it may too file an administrative appeal. And, if the school board does not prevail in that appeal, it may bring a civil action in state or federal court. Id. § 1415(i)(2).

Either prevailing party may seek attorneys' fees by filing an action in state or federal court. Once a federal court has jurisdiction in such a proceeding, it may entertain requests for other forms of relief. Id. § 1415(i)(3).

In Virginia, parents "shall have the right to be represented by legal counsel or other representative before [administrative] hearing officer[s]." Va. Code Ann. § 22.1-214 (emphasis added). Consequently, special advocates may provide guidance, including "related services," to parents as they navigate the hearing process

4

at the administrative level. This guidance at the administrative
level by special advocates does not constitute the practice of
law. <u>Henrico Cnty. Sch. Bd. v. Matthews</u>, No. 3:18-cv-110, 2019 WL
2179221, at *1 n.1 (E.D. Va. May 20, 2019) (citing Va. Code Ann.
§§ 22.1-214, 54.1-3904). However, neither the "IDEA nor Virginia
law authorizes these advocates to represent the parents once the
matter is appealed to federal court." <u>Id.</u> (citing 20 U.S.C. §
1414(d)(1)(B)(vi); Va. Code Ann. § 22.1-214). Therefore, once the
dispute reaches this Court, only attorneys licensed to practice
law in the Commonwealth of Virginia may represent the parents, or,
the parents may proceed <u>pro se</u>. <u>Id.</u> (citing Local Civil Rule
83.1(A)-(B), (D), (F), (H)). Under no circumstances does
Virginia's special advocate law allow a special advocate to
represent another individual in a federal court.

     Lucas has represented publicly and to the Court that she is
an IDEA special advocate accredited in Virginia. The record shows
that Lucas has a Doctor of Philosophy in Education (a Ph.D.) with
a concentration in education law from Liberty University and has
multiple certifications from the Virginia Department of Health
Profession's Board of Counseling, including QMHP-T and QMHP-C
certifications.[2] However, when called upon to produce evidence of

___

[2] QMHP-T stands for "Qualified Mental Health Professional-Trainee"
and QMHP-C stands for "Qualified Mental Health Professional-
Child." These individuals have met minimum educational and
competency requirements to provide "such services as an employee

accreditation to serve as an IDEA special advocate, Lucas provided none.

Moreover, the record shows that, even though Virginia allows special advocates in administrative IDEA proceedings, Virginia neither issues certificates to them nor otherwise regulates their conduct. Lucas is neither licensed nor accredited as a special advocate because Virginia does not issue such licenses or accreditation to such people. Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110, 2019 U.S. Dist. LEXIS 171735, at *4-5 (E.D. Va. Oct. 2, 2019), aff'd sub nom. Henrico Cnty. Sch. Bd. v. Lucas, 827 Fed. App'x 367 (4th Cir. 2020) (per curiam) (unpublished) ("Virginia does not regulate or review non-attorney advocates who undertake a representational role in the due process hearing under the IDEA . . . [T]he course taken by Virginia is fraught with problems."). So, Lucas is incorrect when she represents, either to parents or to the Court, that she is a licensed or accredited special advocate.

---

or independent contractor [for] the [Virginia] Department of Behavioral Health and Developmental Services, the Department of Corrections, or the Department of Education or [as] a provider licensed by the Department of Behavioral Health and Development Services." Qualified Mental Health Professionals, Va. Dep't of Health Pros., https://www.dhp.virginia.gov/Boards/Counseling/Appl icantResources/QMHPInformation/ (last accessed June 25, 2025). A separate certification is QMHP-A, which stands for "Qualified Mental Health Professional-Adult." However, as of May 7, 2025, the QMHP-C and QMHP-A certifications have been combined into a single certification: QMHP. Id.

For over a year before this case was filed, Lucas acted as a special advocate for co-Defendant Todd Skinger ("Skinger") and his daughter, H.S.[3] The record shows that, in that capacity, Lucas controlled the IEP process and the administrative process on behalf of Skinger and H.S., including in multiple due process hearings before state administrative hearing officers. Lucas is not a lawyer, however, and is not licensed to practice law in Virginia or in any other jurisdiction.

## B. PROCEDURAL HISTORY AND LUCAS' CONDUCT

Powhatan County School Board ("PCSB") brought this action. In its COMPLAINT, PCSB claims that Lucas, on behalf of Skinger and H.S., and Skinger himself, filed a slew of successive, repetitive due process complaints against PCSB. ECF No. 1, ¶ 2. At the time that the COMPLAINT was filed, ten due process complaints had been filed by Lucas and Skinger against PCSB regarding H.S. Id. ¶ 2. The first nine of those complaints had been resolved against Skinger and Lucas and the tenth was pending when this civil action was filed. Id. ¶¶ 2-3.

PCSB, the prevailing party at the administrative level in all nine already-decided due process complaints, brought this action

---

[3] On June 29, 2025, PCSB and Skinger settled the claims brought against Skinger. As part of that settlement agreement, Skinger was dismissed from the case and agreed to sever his "professional relationship" with Lucas, rendering Lucas now unable to act as an IDEA special advocate on his behalf or on behalf of his daughter.

to: (1) seek attorneys' fees that PCSB had incurred in defending against Skinger and Lucas' successive, repetitive due process complaints; (2) enjoin Skinger and Lucas from continuing to file due process complaints over the same issues that had already been administratively adjudicated by hearing officers (and not appealed); and (3) enjoin Lucas from serving as an IDEA special advocate for parents or students in Powhatan County. Id. ¶¶ 40-55., p. 11 ¶¶ (a)-(d).

For reasons neither explained nor readily apparent, Skinger and Lucas did not appeal any of the first nine administrative hearing officers' decisions. Instead, they simply filed a new due process complaint after each loss, alleging substantially the same facts that had been litigated in the nine previous proceedings. Id. ¶ 4.[4] As PCSB alleges, the hearing officers noted that pattern and began dismissing the later due process complaints based on res judicata or collateral estoppel grounds. Id. ¶¶ 23-37. The record, which contains the due process complaints as well as the decisions of the administrative hearing officers for each of the first ten due process complaints, substantiates these allegations. ECF Nos. 126-140.

The Court has not yet ruled on the merits of the COMPLAINT. However, notwithstanding the allegations against them in the

---

[4] Sometimes, the due process complaints mentioned

COMPLAINT, Skinger and Lucas continued to file due process complaints even after PCSB filed this action. After the eleventh due process complaint was filed with an administrative hearing officer, PCSB filed, in this case, a MOTION FOR PRELIMINARY INJUNCTION, ECF No. 12, to enjoin the consideration of that due process complaint at the administrative level. Neither Skinger nor Lucas responded immediately to that motion. Instead, within the span of a month, they filed another six administrative due process complaints. ECF Nos. 142-147. That prompted PCSB to file the EMERGENCY MOTION FOR PRELIMINARY INJUNCTION, ECF No. 14 (the "EMERGENCY MOTION"). In the EMERGENCY MOTION, PCSB sought preliminary injunctive relief: (1) to halt the consideration of the newly-filed due process complaints at the administrative level; and (2) to further enjoin the Defendants from filing any additional due process complaints on the same operative facts as those already decided by administrative hearing officers. ECF Nos. 14-15.

The Court convened an Evidentiary Hearing to take evidence about the EMERGENCY MOTION. That Evidentiary Hearing was in three sessions, one each on April 2, 9, and 10, 2025. ECF No. 81, 98, 102. At the session held on April 10, it was brought to the Court's attention that the Defendants had filed an eighteenth administrative due process complaint on the morning of April 2— just hours before the first session of the Evidentiary Hearing

9

began. At the conclusion of the Evidentiary Hearing's first session on April 2, the Court issued an oral ruling temporarily staying the consideration of due process complaints thirteen through eighteen at the administrative level[5] and Skinger and Lucas' ability to file additional IDEA due process complaints involving the facts in the previous administrative proceedings until the resolution of the Evidentiary Hearing. Following the Evidentiary Hearing, the Court issued a written ORDER that detailed its reasoning for the temporary stay, including its finding that due process complaints thirteen through eighteen all rested on the same set of operative facts as due process complaints one through ten and would likely be foreclosed by the doctrines of res judicata and/or collateral estoppel. ECF No. 104, at 4-6. Furthermore, as part of that ORDER, the Court conducted a full analysis of the injunctive factors under eBay v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006), and Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20, 129 S. Ct. 249, 172 L. Ed. 2d 249 (2008), which it found were met and justified the temporary stay. ECF No. 104, at 7-19. Ultimately, the temporary stay was lifted at the conclusion of the third session of the

---

[5] Upon the oral agreement of both parties, the Court did not temporarily stay consideration of due process complaint eleven and twelve because hearing dates had already been scheduled and the complaints were actively under the consideration of administrative hearing officers.

Evidentiary Hearing on April 10, 2025, and the Court ORDERED additional briefing to aid in deciding the EMERGENCY MOTION. Id. at 19-20. It also ORDERED that another Hearing would take place, on June 30, 2025, to assess remaining issues on the preliminary injunction motions. ECF No. 184. The Court's decisions on PCSB's preliminary and emergency injunction motions, ECF Nos. 12, 14, are forthcoming.

The practice of filing successive, repetitive due process complaints is not a development insofar as Lucas is concerned. In 2018, Lucas was involved in another IDEA case in this Court. Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110. In Matthews, the Court found that Lucas' "scorched earth strategy" of filing endless, redundant IDEA due process complaints was both intentional and ill-motivated. Matthews, 2019 U.S. Dist. LEXIS 171735, at *23 (ECF No. 220). Indeed, Lucas admitted the fact to a newspaper, the Richmond Times Dispatch, which attributed the following quotes to her:

> It was intentional to start filing due process [complaint] after due process [complaint] to show the financial impact we could have if the school division didn't address these issues.
>
> * * *
>
> We wanted to send a strong message to the school division: 'If you don't listen to us, we will start costing you money.' I think we got that message across.

Id. at *25-26 (alterations in original) (citation omitted). In the

same MEMORANDUM OPINION in Matthews that identified Lucas' "scorched earth" tactics, the Court also sanctioned Lucas for $1,000.00 for lying on several occasions to the Court. Id. at *34; Matthews, supra (ECF No. 221, at 1 (ORDER entering MEMORANDUM OPINION)). As part of that ORDER, the Court also entered a permanent injunction against Lucas that prohibited her "from participating in any way, directly or indirectly, in any case filed in this Court under the [IDEA]," which includes acting as a special advocate for parents appearing before the Court. Matthews, supra (ECF No. 221, at 1).[6] The Fourth Circuit affirmed that decision. Henrico Cnty. Sch. Bd. v. Lucas, 827 Fed. App'x 367, 367 (4th Cir. 2020) (per curiam) (unpublished).

The allegations of the COMPLAINT in this case show that Lucas' scorched earth practice of filing redundant due process complaints has not ceased since Matthews was decided. The record so far also establishes that Lucas' practice of making misrepresentations to the Court has not changed. Specifically, the Court has already sanctioned Lucas once in this case in the amount of $3,000.00, ECF No. 158 (the "SANCTIONS ORDER"), because the Court found that Lucas had made material misrepresentations to the Court about the effect that its temporary stay in this case had on due process hearings

---

[6] The ORDER did not prohibit Lucas from continuing to serve as a special advocate for parents and their children in IDEA matters at the administrative level.

across the Commonwealth of Virginia. ECF No. 119. Consequently, the Court ORDERED Lucas to show cause why she should not be sanctioned. Id. at 4. Lucas failed to show cause. Indeed, she never responded. Thus, based on the misrepresentations, a sanction in the amount of $3,000.00 was imposed on Lucas. ECF No. 158, at 1 ("SANCTIONS ORDER").[7]

The matter now being addressed deals with a separate ORDER, which required Lucas to show cause why the Court should not separately sanction her in the amount of $3,000.00 for violating the Matthews permanent injunction as well as another sanction in the amount of $3,000.00 for practicing law without a license to do so, for a total of $6,000.00. ECF No. 157. In that show cause ORDER, the Court found that Lucas violated the permanent injunction issued in Matthews and engaged in the unauthorized practice of law without a license based on an email communication that she sent to United States Magistrate Judge Summer L. Speight. ECF No. 157-1, at 2-3 (sometimes referred to as the "FUNDING BRIEF"). The email communication read as a legal brief and sought a form of relief for an individual who is a defendant in this civil action (Skinger) and was filed by Skinger's co-defendant in the same action (Lucas)

---

[7] Only after the Court entered its SANCTIONS ORDER imposing the sanction on Lucas did she attempt to respond. ECF No. 163. However, that response, too, failed to show cause. Therefore, Lucas must pay the $3,000.00 sanction imposed by ECF No. 158.

13

on behalf of Skinger.[8]

Lucas' stated reason for emailing the FUNDING BRIEF to Magistrate Judge Speight was to seek the appointment of legal counsel for Skinger. See ECF No. 157-1.[9] The FUNDING BRIEF actually

---

[8] The Court directed the Clerk to file that email communication on the docket as a brief, ECF No. 157-1, to ensure that it was properly considered as a part of the record. ECF No. 157-1 (the "FUNDING BRIEF").

[9] Before that email communication, the Court had referred the present action to Magistrate Judge Speight for settlement purposes on a parallel track to the Court's own consideration of the merits of the claims before it. ECF Nos. 19. The Court understands that Magistrate Judge Speight did not include Lucas in the settlement conference or the negotiations between PCSB and Skinger because settlement negotiations had been frustrated by Lucas' conduct in another case before the Court involving PCSB and Lucas, Powhatan Cnty. Sch. Bd. v. Halvorsen, No. 3:24-cv-216. In that case, the Court referred PCSB as well as both Lucas and the parents for whom she was a special advocate (the Halvorsens) to Magistrate Judge Speight for settlement purposes. Id. (ECF No. 90). However, the Court instructed that Lucas could "not participate in" the settlement discussions dealing with how to educationally accommodate the child in that case (H.S.) or otherwise "serve as a Special Education Advisor" to the Halvorsens during those negotiations. Id. at 1-2. Instead, the Court instructed that Lucas, the Halvorens and PCSB engage in a separate set of settlement negotiations for the claims brought directly against them. Id. at 2. The Court did so believing that such a process would be most conducive to reaching a mutually agreeable settlement.

Notwithstanding the Court and Magistrate Judge Speight's efforts in Halvorsen to generate a productive settlement process and ameliorable settlement outcome, Lucas took actions to hinder the settlement process (for both herself and the Halvorsens) in that case. Ultimately, the Halvorsens did eventually settle with PCSB. Lucas did not settle and, in time, default judgment was entered against her. Id. (ECF No. 55).

Similarly in this case, Magistrate Judge Speight's ORDER stated that Lucas would not participate in the settlement negotiations or conferences held between Skinger and PCSB to resolve the claims

purported to speak "on behalf of the Skinger family." Id. Therein, Lucas made legal arguments and conclusions that purported to rest on legal authority to advocate a position on behalf of Skinger (and Skinger alone), and Lucas alone signed it, without any apparent involvement by Skinger in its preparation or submission. For these reasons, the Court found that Lucas had violated the permanent injunction issued in Matthews and also had engaged in the unauthorized practice of law. ECF No. 157, at 1-3. Thus, by June 2, 2025, Lucas was required to show cause why the Court should not impose sanctions upon her for these violations.

## II. DISCUSSION & ANALYSIS

Lucas' response to the show cause ORDER, ECF No. 157, came in the form of the two pleadings: (1) the RECONSIDERATION MOTION, ECF No. 168, and (2) the RECUSE AND VACATE MOTION, ECF No. 169.[10] For

---

brought by PCSB against Skinger only. ECF No. 90, at 1. That reflects a well-reasoned effort to best effectuate a settlement agreement between the parties based on Magistrate Judge Speight's experience with Lucas and PCSB in the Halvorsen matter. Of course, all of this does not mean that PCSB and Lucas cannot pursue settlement on their own terms—an outcome that the Court would welcome were it to occur.

[10] The RECUSE AND VACATE MOTION, ECF No. 169, is actually two motions. The first seeks the recusal of the undersigned for a litany of reasons. ECF No. 169, at 1-6. The second seeks vacatur of the show cause ORDER, ECF No. 157. ECF No. 169, at 7-15. This MEMORANDUM OPINION considers the second argument of the motion (vacatur) because it is Lucas' attempt to show cause in response to the show cause ORDER and because Lucas is a pro se Defendant who deserves the Court's leniency and understanding when assessing what she presents. The Court addressed in a separate ORDER, ECF No. 224, the merits of the portion of ECF No. 169 that seeks the

the following reasons, the Court will deny the RECONSIDERATION
MOTION, ECF No. 168, and, to the extent explained below, will deny
the RECUSE AND VACATE MOTION, ECF No. 169.

### A. THE RECONSIDERATION MOTION

In the RECONSIDERATION MOTION, Lucas asks the Court to
"reconsider and vacate" the show cause ORDER, ECF No. 157, pursuant
to Fed. R. Civ. P. 54(b) and 60(b), because the ORDER: "(1)
mischaracterizes her role and conduct in this action, (2) imposes
unconstitutional and unjustified restrictions on her protected
rights as a named party and co-defendant, and (3) misconstrues the
scope of IDEA-related services, including parent counseling and
training, in violation of federal law"; and (4) because as an IDEA
special advocate, she is "immune from state UPL [(unauthorized
practice of law)] allegations under the Supremacy Clause of the
U.S. Constitution (Article VI, Clause 2)" when providing related
services under the IDEA as a special advocate. ECF No. 168, at 1.
Each argument will be addressed in turn. For the reasons that
follow, the RECONSIDERATION MOTION does not meet the requirements
to warrant the relief that Lucas seeks. Therefore, it will be
denied.

### 1. Legal Standards: Rule 54(b) and 60(b)

The RECONSIDERATION MOTION asserts two distinct grounds for

---

undersigned's recusal and denied that request for the reasons set
forth in an accompanying MEMORANDUM OPINION, ECF No. 227.

16

relief based on the Federal Rules of Civil Procedure: Rule 54(b) and Rule 60(b). Rule 54(b) states, in pertinent part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and <u>may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities</u>.

Fed. R. Civ. P. 54(b) (emphasis added). Although motions for reconsideration are not formally recognized in the Federal Rules of Civil Procedure, <u>Miller v. Live Nation Worldwide, Inc.</u>, No. CBD-14-2697, 2016 U.S. Dist. LEXIS 56420, at *8 (D. Md. Apr. 28, 2016), a court may "revise an interlocutory ruling under Rule 54(b) upon a showing of '(1) substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice.'" <u>Fed. Home Loan Mortg. Corp. v. Prudhomme</u>, No. 1:20-cv-125, 2021 U.S. Dist. LEXIS 263856, at *3 (E.D. Va. Mar. 11, 2021) (quoting <u>U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC</u>, 899 F.3d 236, 256-58 (4th Cir. 2018) (internal quotation marks and citation omitted)). By the plain terms of the Rule, a Rule 54(b) motion is proper and timely so long as the movant submits the motion before the Court enters a final judgment as to "all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b).

Rule 60(b) provides a different means for a party to seek relief from judicial decisions. Rule 60(b) states the following:

On motion and just terms, the court may relieve a party or its legal representative <u>from a final judgment, order, or proceeding</u> for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b) (emphasis added). By its plain terms, Rule 60(b) only applies to <u>final</u> judgments and orders and only when at least one of six potential circumstances have occurred. <u>Id.</u> While Rule 60(b) provides many grounds for relief, including a catch-all provision in (b)(6), it is a "well-settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal." <u>Buffalo Wings Factory, Inc. v. Mohd</u>, No. 1:07-cv-612, 2008 U.S. Dist. LEXIS 48250, at *6 (E.D. Va. June 23, 2008) (citing <u>Ackermann v. United States</u>, 340 U.S. 193, 198, 71 S. Ct. 209, 95 L. Ed. 207 (1950)).

Because <u>pro se</u> litigants lack the assistance of legal counsel, they are "entitled to have their pleadings given a liberal

18

construction." <u>Rashad v. Jenkins</u>, No. 3:15-cv-655, 2016 U.S. Dist. LEXIS 27879, at \*8 (E.D. Va. Mar. 3, 2016) (citing <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); <u>Gordon v. Leeke</u>, 574 F.2d 1147, 1151 (4th Cir. 1978)). Notwithstanding the leniency and understanding that are to be afforded the filings of <u>pro se</u> litigants, they too "are subject to the time requirements and respect for court orders," <u>Ballard v. Carlson</u>, 882 F.2d 93, 96 (4th Cir. 1989), as well as "procedural rules," <u>Cooper v. FedEx Ground Package Sys.</u>, No. 1:16-cv-547, 2017 U.S. Dist. LEXIS 20996, at \*2-3 (E.D. Va. Feb. 14, 2017) (citations omitted), "without which effective judicial administration would be impossible." <u>Ballard</u>, 882 F.2d at 96. The RECONSIDERATION MOTION will be assessed with this <u>pro se</u> standard in mind.

## 2. Analysis

The RECONSIDERATION MOTION suffers from many afflictions; some of them are fatal. Most importantly, the RECONSIDERATION MOTION does not present Lucas' arguments in the construct called for by the applicable legal standards on which the RECONSIDERATION MOTION is based. In fact, other than a brief mention of Fed. R. Civ. P. 54(b) and 60(b) in the first clause of the first sentence of the first paragraph of the RECONSIDERATION MOTION, it does not actually present any argument or reasoning that would support

relief under either Rule.[11]

### a. Rule 60(b)

As it pertains to Rule 60(b), the RECONSIDERATION MOTION fails
without the need of much analysis. By the Rule's plain terms,
litigants may only seek relief under Rule 60(b) from "<u>final</u>"
judgments and orders. Fed. R. Civ. P. 60(b) (emphasis added);
<u>Fayetteville Invs. v. Comm. Builders, Inc.</u>, 936 F.2d 1462, 1469
(4th Cir. 1991) ("Rule 60(b) [is] not available for relief from an
interlocutory order."). A "judgment is final and appealable when
the court enters a decision ending the litigation, leaving nothing
to be done except the execution of the judgment." <u>Bernstein v.
Menard</u>, 728 F.2d 252, 253 (4th Cir. 1984) (citing <u>Coopers & Lybrand
v. Livesay</u>, 437 U.S. 463, 467, 98 S. Ct. 2454, 57 L. Ed. 2d 351
(1978)); <u>Kinsale Ins. Co. v. Jdbc Holdings, Inc.</u>, 31 F.4th 870,
874 (4th Cir. 2022). The show cause ORDER, ECF No. 157 (which Lucas
asks to be reconsidered), is not a final judgment because it does
not "end[] the litigation." <u>See id.</u> Indeed, it does not even
purport to resolve either claim in the COMPLAINT against any party.
The show cause ORDER finds that Lucas has violated a permanent
injunction by which she is bound and that she has engaged in the
unauthorized practice of law without a law license; and then it
invites her to respond to those findings by showing cause why she

---

[11] Indeed, aside from this one instance, the RECONSIDERATION MOTION
never again mentions Rule 54(b) or 60(b).

should not be sanctioned for those violations. ECF No. 157. Therefore, the show cause ORDER, ECF No. 157, is not a final judgment, and the Rule 60(b) challenge to it fails for that reason.

### b. Rule 54(b)

Unlike the posture of the Rule 60(b) basis for the RECONSIDERATION MOTION, the RECONSIDERATION MOTION is timely under Rule 54(b) because Rule 54(b) does not require the Court to have entered a final judgment before the movant files for relief. Fed. R. Civ. P. 54(b). However, the RECONSIDERATION MOTION fails under Rule 54(b)'s standard because it has not demonstrated that: (1) any "substantially different evidence" has been unearthed since the show cause ORDER was entered; (2) there has been a "change in applicable law" in that time; or (3) the ORDER contained a "clear error causing manifest injustice" to Lucas. U.S. Tobacco Coop. Inc., 899 F.3d at 256-58. Indeed, the RECONSIDERATION MOTION makes no argument whatsoever that any new evidence was discovered. Nor does it point to any change of law between the entry of the show cause ORDER and Lucas' filing of the RECONSIDERATION MOTION.[12] So, as to Rule 54(b), the RECONSIDERATION MOTION must necessarily fail under those grounds.

That leaves the third facet of the test—that the show cause ORDER somehow committed a clear error causing manifest injustice

---

[12] The show cause ORDER was entered on May 23, 2025. ECF No. 157. Lucas filed the MOTION on June 2, 2025. ECF No. 168.

to Lucas. The RECONSIDERATION MOTION fails under that facet of the standard as well.

The RECONSIDERATION MOTION does not actually present any argument that fits the manifest injustice facet of Rule 54(b). However, some of its arguments sound in an assertion of manifest injustice. So, because Lucas is proceeding pro se, the Court liberally construes those arguments and will assess them within that facet of the analytical framework. However, in extending that lenient consideration, courts do not allow arguments to carry water where they are completely detached from the rules of procedure lest "effective judicial administration . . . be [made] impossible." Ballard, 882 F.2d at 96.

### i. Lucas' Role as Special Advocate: Related Services

The primary argument seems to be that the show cause ORDER misunderstands Lucas' role as an IDEA special advocate. The argument is that, because Lucas is an IDEA special advocate to Skinger and H.S., she has the power to "provide[] 'parent counseling and education' as a related service under the [IDEA]," which, she claims, includes the authority to submit the FUNDING BRIEF on Skinger's behalf. ECF No. 168, at 2-5 (emphasis removed). That conduct, says Lucas, is protected by the IDEA, and so cannot either constitute the unauthorized practice of law or violate the Court's permanent injunction from acting as an IDEA special advocate for any family before this Court. Id. at 2-3. Lucas also

argues that she has the right to have submitted the FUNDING BRIEF as part of her own defense as a pro se co-Defendant in this action, and, therefore, its submission cannot constitute the unauthorized practice of law. Id. at 2. Therefore, says the RECONSIDERATION MOTION, the show cause ORDER "misapplies the facts and law." Id. That seems to be asserted as a clear error.

Even according liberal and lenient construction to that argument, it is confusing and full of contradiction. More importantly, it actually admits, rather than refutes, the very violations identified in the show cause ORDER.

The analysis starts with the IDEA's definition of "related services":

> [T]ransportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children.

20 U.S.C. § 1401(26)(A); 34 C.F.R. 300.34(a). The general definition of "related services" is thorough and, indeed, encompasses a wide variety of different types of support and

counseling that special advocates can provide to parents and children as they navigate IDEA procedures at the administrative level. But, nowhere within its text, however, does the related services definition state that special advocates can provide legal advice or counsel to the parents.

Perhaps that is why the RECONSIDERATION MOTION turns to another provision in the federal regulations interpreting "related services" for support. Specifically, it cites to, and principally relies on, the service of "[p]arent counseling and training," which includes (i) "assisting parents in understanding the special needs of their child; (ii) [p]roviding parents with information about child development; and (iii) [h]elping parents to acquire the necessary skills that will allow them to support the implementation of their child's IEP or IFSP." 34 C.F.R. § 300.34(c)(8)(i)-(iii). The FUNDING BRIEF filed by Lucas on behalf of Skinger does none of those things.

To begin, the FUNDING BRIEF in no way attempts to assist Skinger in "understanding the special needs" of H.S. or to provide him with "information about [H.S.'s] development" as a child. Id. § 300.34(c)(8)(i)-(ii). Of course, in the FUNDING BRIEF, Lucas does ask, on behalf of Skinger, that the Court appoint, at public expense, a specific attorney to represent Skinger for the purpose of settlement negotiations. That request is in the nature of legal representation. Whatever else may be said of the FUNDING BRIEF, it

24

certainly does not operate as an informational tool for Skinger to assist in the educational care of his daughter, H.S.

Nor does the FUNDING BRIEF help Skinger "acquire the necessary skills . . . to support the implementation of [H.S.'s] IEP." <u>Id.</u> § 300.34(c)(8)(iii). And, the RECONSIDERATION MOTION does not even argue that the FUNDING BRIEF seeks that result. In sum, what Lucas sought in the FUNDING BRIEF does not fall within the IDEA's definition of "related services."

Furthermore, the RECONSIDERATION MOTION actually concedes that Lucas acted as a special advocate (in a proceeding in this Court) to Skinger. That is because the asserted related service is one that is performed by a special advocate and, if it was a related service, it was undertaken in a proceeding in this Court. That, of course, admits a violation of the permanent injunction prohibiting Lucas from acting as a special advocate in cases before this Court, <u>Matthews</u>, <u>supra</u>, (ECF No. 221). And, it also violates other prior holdings of this Court. <u>Matthews</u>, 2019 WL 2179221, at *1 n.1

Virginia law states that parents "shall have the right to be represented by legal counsel or other representative before [administrative] hearing officer[s]." Va. Code Ann. § 22.1-214 (emphasis added). The Court held in 2019 that this administrative-level assistance by special advocates "does not constitute the practice of law because the text of Va. Code Ann. § 22.1-214 makes

representation in these [administrative] hearings an explicit exception to the general rule that persons not authorized as attorneys cannot practice law." Matthews, 2019 WL 2179221, at *1 n.1 (citing Va. Code Ann. §§ 22.1-214, 54.1-3904). However, Matthews also held that neither the "IDEA nor Virginia law authorizes these advocates to represent the parents once the matter is appealed to federal court." Id. (citing 20 U.S.C. § 1414(d)(1)(B)(vi); Va. Code Ann. § 22.1-214 (emphasis added)). Other IDEA regulations also support that understanding:

> Any party to an [administrative] hearing conducted pursuant to §§ 500.507 through 300.513 or §§ 300.530 through 300.534, or an [administrative] appeal conducted pursuant to § 300.514, has the right to—
>
> > (1) Be accompanied and advised by counsel and by individuals with special knowledge or training with respect to the problems of children with disabilities, except that whether parties have the right to be represented by non-attorneys at due process hearings is determined under State law.

34 C.F.R. § 300.512(a)(1) (emphasis added).[13] If special advocates cannot legally provide legal representation (or special advocacy)

---

[13] Lucas implicitly acknowledges this reality by stating that the "IDEA expressly allows for the participation of individuals 'with special knowledge or training with respect to the problems of children with disabilities' in meetings and due process hearings." ECF No. 168, at 8-9 (citing 34 C.F.R. § 300.512(a)(1)) (emphasis added). That regulation clearly delineates between attorneys and special advocates as different providers of different services. Further, it explicitly states that those services apply only to IDEA meetings, administrative due process hearings, or administrative appeals thereto in federal or state court. This proceeding does not fall in any of those categories.

to parents once an administratively adjudicated IDEA due process complaint reaches a federal court under the IDEA's own appellate procedures, it must necessarily be true that special advocates are likewise restricted in this action's present posture (i.e., where the school board has sued to stop vexatious and frivolous IDEA litigation at the administrative level). Just because this case in federal court involves the IDEA does not mean that the protections that the IDEA provides parents and children in administrative due process hearings, such as the retention of a special advocate, apply equally at the federal judicial level. Nothing in the IDEA or Virginia law alters the basic rule that only attorneys licensed to practice law in the Commonwealth of Virginia may provide legal representation to a party.[14] Id. (citing Local Civil Rule 83.1(A)-(B), (D), (F), (H)).

### (1). Lucas' Own Defense

The argument that the show cause ORDER undermines Lucas' ability as a pro se co-Defendant to maintain her own defense also fails to pass muster. Right out of the gate, that argument does not make sense in this context because Lucas was not a party to the settlement negotiations between PCSB and Skinger before Magistrate Judge Speight. Supra. Put simply, Lucas had no need, as part of her own defense, to submit the FUNDING BRIEF to Magistrate

---

[14] Or, the party may proceed pro se.

Judge Speight in the first instance because Lucas was not before Magistrate Judge Speight for those negotiations. ECF No. 90. Therefore, it is logically incongruent to claim that submitting the FUNDING BRIEF on Skinger's behalf, and purportedly for his benefit in his independent settlement negotiations with PCSB, somehow could assist Lucas in her own defense of the merits of the claims made against her in the COMPLAINT.

### (2). The Show Cause ORDER and the Permanent Injunction in Matthews

Contrary to the assertion in the RECONSIDERATION MOTION, neither the show cause ORDER nor any other decision of the Court "maliciously" (or otherwise) misapplied or stretched the permanent injunction against Lucas' special advocacy at the federal level to include the act of presenting her own defense as a pro se co-defendant. The permanent injunction in no way limits Lucas' ability to present her own defense. It merely restricts her ability to provide IDEA special advocacy counsel to others, including Skinger, in proceedings in this Court. Matthews, supra, (ECF No. 221). Nor does the show cause ORDER so hold. ECF No. 157.

Moreover, the FUNDING BRIEF, which Lucas submitted "on behalf of the Skinger family," which was signed by Lucas alone, and which made legal arguments on Skinger's behalf, ECF No. 157-1, presents no arguments on Lucas' own behalf. In other words, Lucas submitted the FUNDING BRIEF, which was purely on behalf of Skinger, for

28

Skinger's benefit. That rather clearly seems to be the unauthorized practice of law. ECF No. 157.[15] Requiring Lucas to show cause otherwise does not constitute a clear error that caused her to suffer manifest injustice.

### ii. Lucas' Constitutional Argument

Second, the RECONSIDERATION MOTION argues, in substantially similar fashion to the first argument, that the show cause ORDER violates Lucas' rights under the First, Fifth, Sixth, and Fourteenth Amendments to associate with her co-Defendant, to procedural due process, and to present her own defense in the action as a co-defendant. Id. at 5-7. The constitutional argument is not developed and is supported by no legal authority at all. In fact, the RECONSIDERATION MOTION simply recites provisions of the United States Constitution (the First, Fifth, Sixth, and Fourteenth Amendments) without explaining how the show cause ORDER is thought to infringe those constitutional provisions. No discussion. No decisional law. Just conclusory, generalized assertions untethered to any identified deprivation of constitutional right. That alone is sufficient reason to reject the RECONSIDERATION MOTION's constitutional assertions.

It is true that the show cause ORDER notes that Lucas appears

---

[15] If, as Lucas now claims, the FUNDING BRIEF was submitted by her as a special advocate representing Skinger, that is a violation of the permanent injunction issued in Matthews.

to have engaged in conduct in which she cannot lawfully engage
(the conduct enjoined in the permanent injunction in <u>Matthews</u> and
the unauthorized practice of law). But, none of those
constitutional provisions mentioned in the RECONSIDERATION MOTION
is offended by identifying apparently unlawful conduct and
requiring someone to answer for it or show that it is not unlawful.
Thus, the suggestions that the show cause ORDER somehow is a clear
error or presents a manifest injustice are without merit.

What Lucas really seems to be targeting with this argument is
the <u>Matthews</u> permanent injunction itself, which somehow is thought
to constitute an impermissible restriction on the conduct of Lucas'
defense. For the reasons explained above, and in other decisions
in this case, as well as in the <u>Matthews</u> and <u>Halvorsen</u> matters,
that permanent injunction is lawful. It does not restrict Lucas'
ability to present a defense in this case because it only prohibits
how she can act as an <u>IDEA special advocate</u> once in this Court.[16]
The Fourth Circuit affirmed the imposition of that permanent
injunction. <u>Lucas</u>, 827 Fed. App'x at 367. Rule 54(b) cannot be
employed as a guise to challenge it anew here.

### iii. Lucas' Prejudice Argument

Third, the RECONSIDERATION MOTION says that unidentified

---

[16] The permanent injunction issued in <u>Matthews</u> in no way restricts
or prohibits Lucas from acting as an IDEA special advocate for
parents and students at the administrative-proceeding level.

decisions in the case demonstrate a "pattern of hostility and bias that intentionally obstruct [Lucas'] access to the courts and chills her exercise of protected legal and civil rights," ECF No. 168, at 7. That argument also fails.

In reality, the argument is based on the fact that many decisions in this case have been unfavorable to Lucas. But, the unfavorable decisions have been the consequence of the fact that the positions taken by Lucas lack merit or legal support. And, the reasons why that is so have been fully explained either in writing or orally, depending on whether the decision was in an opinion or order or made from the bench in open court. That Lucas disagrees with the decisions, or does not like them, is no basis on which to assert that they were the product of hostility and/or bias.

Nor does the record support the unsupported assertion that the unidentified decisions "intentionally [or otherwise] obstruct[ed] [Lucas'] access to the courts and chill[ed] her exercise of protected legal and civil rights." ECF No. 168, at 7. Lucas has filed 36 papers in this case and has been included in approximately 20 hours of evidentiary and motions hearings. So, to put it politely, it is disingenuous for the RECONSIDERATION MOTION to state that Lucas' access to the Court has been obstructed or that the exercise of her rights has been chilled. Thus, the argument provides no basis for a finding of either clear error or

manifest injustice.[17]

### iv. Lucas' Immunity Argument

Fourth, Lucas argues that she is "immune from state [unauthorized practice of law] allegations under the Supremacy Clause of the U.S. Constitution (Article VI, Clause 2)." ECF No. 168, 1. Other than making a cameo appearance in one clause in one sentence of the introductory paragraph, that contention is not addressed or developed. Accordingly, it need not be addressed other than to say that it is not possible to understand how the show cause ORDER could violate the Supremacy Clause. So, the Supremacy Clause argument does not serve to identify any clear error or any manifest injustice.

### c. Summary: RECONSIDERATION MOTION, ECF No. 168

After approaching the arguments made in the RECONSIDERATION MOTION with the deference and leniency that is required for all pro se litigants, it is clear that none of its arguments for relief under Fed. R. Civ. P. 54(b) meet the requirements of that Rule's standard for relief. No new evidence has been presented or change of law has been identified. And, none of Lucas' arguments support the conclusion that the show cause ORDER committed a clear error that has been shown to cause manifest injustice to Lucas.

As discussed above, the show cause ORDER is also not a final

---

[17] Lucas is also a party in the Halvorsen, No. 3:24-cv-216, and Sims, No. 3:25-cv-238, cases, and has filed many papers in each.

judgment or order. Accordingly, Rule 60(b) relief is not available.

For the foregoing reasons, the RECONSIDERATION MOTION, ECF No. 168, will be denied.

## B. THE RECUSE AND VACATE MOTION

The first six pages of the RECUSE AND VACATE MOTION are a motion to recuse the undersigned from presiding over this action for various reasons. ECF No. 169, at 1-6. The Court already has addressed and denied this portion of the RECUSE AND VACATE MOTION. ECF Nos. 224, 227.

Then, Lucas tells us that pages seven through fifteen of the document represent her "Response to Show Cause Order – ECF No. 157." Id. at 7-15. On multiple past occasions, in this case as well as in others in which Lucas is involved, the Court has admonished Lucas from filing these improper "multipurpose filings" or stricken them from the record as violative of the Federal Rules of Civil Procedure as well as the Local Civil Rules. E.g., ECF Nos. 94, 171; Powhatan Cnty. Sch. Bd. v. Halvorsen, No. 3:24-cv-216, 2024 U.S. Dist. LEXIS 150086, at *8-9 (E.D. Va. Aug. 21, 2024) (ECF No. 26); Sims, supra, (ECF No. 19). Because the RECUSE AND VACATE MOTION violates these admonishments, rules, and orders, there is cause to strike the entirety of ECF No. 169 from the record pursuant to Fed. R. Civ. P. 12(f)(1). In this instance, the Court chooses not to do so because Lucas is a pro se defendant who faces the possibility of monetary sanctions if she does not respond

33

to the show cause ORDER. And, Lucas clearly has attempted to do so with the last part of ECF No. 169. So, the filing, ECF No. 169, will not be stricken notwithstanding the fact that it violates the previous orders prohibiting multipurpose filings. Instead, the Court will consider the arguments that Lucas claims to show sufficient cause to avoid sanctions. The merits of those arguments will be addressed in turn.

The show cause ORDER required Lucas to show cause why she should not be sanctioned for violating an ORDER of the Court, namely, the Matthews permanent injunction prohibiting her from acting as an IDEA special advocate before the Court, Matthews, supra (ECF No. 221), and for the unauthorized practicing of law without a license in violation of Va. Code Ann. § 54.1-3904. ECF No. 157. In the first part of the RECUSE AND VACATE MOTION, Lucas presents four reasons why "contempt and sanctions are unwarranted." ECF No. 169, at 7. Those reasons include: (1) that she "acted strictly within the lawful and federally protected scope of her role as a 'related service provider' under the IDEA"; (2) that the FUNDING BRIEF, ECF No. 157-1, "was an attempt to secure no-cost related services for co-defendant [H.S.] and Lucas herself, not legal representation"; (3) that "[a]ny restriction imposed by the 2019 Matthews injunction is preempted by the Supremacy Clause where it conflicts with the exercise of rights under federal IDEA law"; and (4) that she "did not hold herself

34

out as an attorney or provide legal representation, but instead delivered parent counseling and training [to Skinger], a recognized non-attorney service permitted under 34 C.F.R. § 300.34(c)(8)." Id. (emphasis removed).

For the reasons set forth below, the Court rejects each of these arguments and finds that Lucas has <u>not</u> shown cause why sanctions should not be imposed.

### 1. Legal Standard

It is settled that a court has inherent authority to impose sanctions on litigants:

> The Supreme Court has held that the authority of district courts to impose sanctions against parties "extends to a full range of litigation abuses." <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991). As the United States of Appeals for the Fourth Circuit has put it, district courts have the "inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." <u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 461 (4th Cir. 1993). "This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." <u>Id.</u> Therefore, a district court, can, upon a finding that a party has willfully violated a rule of conduct and/or procedure, impose an appropriate sanction. <u>See id.</u>

<u>Sanderson v. Boddie-Noell Enters.</u>, 227 F.R.D. 448, 452 (E.D. Va. 2005).

This inherent power to sanction, like all inherent powers of the federal courts, is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."

Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S. Ct. 1386, 8
L. Ed. 2d 734 (1962). This power is "deeply rooted in the common
law tradition." Carlucci v. Piper Aircraft Corp., 775 F.2d 1440,
1446-47 (11th Cir. 1985). It extends to "attorneys and litigants"
when necessary to "manage the court's affairs." PLX, Inc. v.
Prosystems, Inc., 220 F.R.D. 291, 297 (N.D. W.Va. 2004) (quoting
Malautea v. Suzuki Motor Corp., 148 F.R.D. 362, 370 (S.D. Ga.
1991)) (citing In re Howe, 800 F.2d 1251, 1252 (4th Cir. 1986)).

The Court has the power to exercise "its inherent authority
to impose sanctions . . . sua sponte and must consider the whole
of the case in choosing the appropriate sanction." Projects Mgmt.
v. Dyncorp Int'l LLC, 734 F.3d 366, 375 (4th Cir. 2013) (citing
Hazel-Atlas Glass Co. v. Hartford-Empire Co., 332 U.S. 238, 246,
64 S. Ct. 997, 88 L. Ed. 1250 (1944) ("The public welfare demands
that the agencies of public justice be not so impotent that they
must always be mute and helpless victims of deception and fraud.");
Brickwood Contractors, Inc. v. Datanet Eng'g Inc., 369 F.3d 385,
389 n.2 (4th Cir. 2004)). Indeed, when discussing the inherent
power to sanction, the Fourth Circuit has held that:

> Due to the very nature of the court as an institution,
> it must and does have an inherent power to impose order,
> respect, decorum, silence, and compliance with lawful
> mandates. This power is organic, without need of a
> statute or rule for its definition, and it is necessary
> to the exercise of all other powers.

Untied States v. Shaffer Equip. Co., 11 F.3d 450, 461 (4th Cir.

1993) (citing Chambers, 501 U.S. at 42-43). The power "must be exercised with the greatest restraint and caution, and then only to the extent necessary," because it is unmoored from "Congress or the people and is particularly subject to abuse." Id. Ultimately, "a district court's decision of whether to impose sanctions under its inherent power is within its discretion." Valizadeh v. Doe, No. 3:16-cv-3098, 2017 U.S. Dist. LEXIS 78067, at *6 (D.S.C. May 23, 2017) (citing Chambers, 501 U.S. at 55).

For example, the power can be exercised to impose sanctions "against a party who 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" and it "extends to a full range of litigation abuses." Thomas v. Ford Motor Co., 244 Fed. App'x 535, 538 (4th Cir. 2007) (per curiam) (unpublished) (quoting Chambers, 501 U.S. at 45-46). Those sanctions can take many forms, including "assessing fees and costs, excluding evidence or defenses, or even the dismissal of a party's claims." Steele v. Goodman, No. 3:17-cv-601, 2020 U.S. Dist. LEXIS 117197, at *23 (E.D. Va. July 2, 2020) (quoting White v. Golden Corral of Hampton, LLC, No. 4:13-cv-27, 2014 U.S. Dist. LEXIS 195901, at *1 (E.D. Va. Jan. 15, 2014) (citations and quotation marks omitted)).

These principles inform the analysis that follows. And, as stated before, arguments made in filings by pro se litigants are "entitled to . . . a liberal construction." Rashad, 2016 U.S. Dist. LEXIS 27879, at *8. That liberal and lenient construction must

37

remain grounded, however, because even <u>pro se</u> litigants must abide time requirements, respect court orders, and obey procedural rules lest "effective judicial administration . . . be [made] impossible." <u>See Ballard</u>, 882 F.2d at 96.

### 2. Analysis

In the show cause ORDER, the Court found that Lucas submitted the FUNDING BRIEF "on behalf of the Skinger family"; that she prepared and submitted it herself without any apparent involvement by Skinger; and that she signed it and Skinger did not. ECF No. 157. Lucas then sent it (by email) to Magistrate Judge Speight to request that the Court appoint legal counsel to Skinger "in connection with the ongoing federal settlement negotiations," with PCSB. ECF No. 157-1. Lucas was not a participant in the settlement negotiations between Skinger and PCSB. ECF No. 90. The FUNDING BRIEF contained legal arguments, rested on legal authorities, and made legal conclusions to support a position taken solely for Skinger's benefit. And, if any of the relief sought in the FUNDING BRIEF had been granted, it would not have benefited Lucas at all—only Skinger. Nor did the FUNDING BRIEF seek counsel for Lucas for any portion of the case. Consequently, the Court held that, in submitting the FUNDING BRIEF, Lucas violated the <u>Matthews</u> permanent injunction against her as well as engaged in the unauthorized practice of law without a license. Lucas was ordered to show cause, by June 2, 2025, why the Court should not sanction

38

her for a total of $6,000.00—$3,000.00 for each violation. In the timely filed RECUSE AND VACATE MOTION, Lucas makes her response to the show cause ORDER explaining her views on why she should not be sanctioned. ECF No. 169, 7-15. However, a review of that part of the RECUSE AND VACATE MOTION shows that Lucas did not sufficiently show cause to avoid sanctions.

Most of the arguments that Lucas makes in the RECUSE AND VACATE MOTION are ones that she also made as part of the RECONSIDERATION MOTION. For the same reasons set forth in denying the RECONSIDERATION MOTION above, those arguments fail in this context as well.

As in the RECONSIDERATION MOTION, Lucas' primary argument is that, in submitting the FUNDING BRIEF on behalf of Skinger, she was acting "within the lawful and federally protected scope of her role as a 'related service provider' under the IDEA," which, in her view, permitted her to submit the FUNDING BRIEF as part of her related services as a special advocate to provide "parent counseling and training" to Skinger. ECF No. 169, at 7 (citing 34 C.F.R. § 300.34(c)(8)) (emphasis removed). The Court has already rejected the argument that Lucas' conduct in submitting the FUNDING BRIEF falls within the scope of 34 C.F.R. § 300.34(c)(8)'s related services. Supra. There is simply no way to construe the language of that regulation as permitting the submission of a brief to a Magistrate Judge before whom her co-Defendant was pursuing

39

settlement negotiations to which she was not a party. The FUNDING BRIEF did not act as an informational tool to assist Skinger in the implementation of H.S.'s IEP or in the navigation of some other IDEA-related process. And, it did not assist Skinger himself in acquiring the requisite skills to carry out H.S.'s IEP. 34 C.F.R. § 300.34(c)(8). Instead, the FUNDING BRIEF, which Lucas admittedly submitted on behalf of Skinger and without his input or signature, seeks specific relief for Skinger (appointment of legal counsel), and, in pursuit of that relief, Lucas presented legal arguments and conclusions and cited legal authorities. That conduct was the unauthorized practice of law. So, this argument does not provide cause for Lucas to avoid sanctions.

Also, in the RECUSE AND VACATE MOTION, Lucas admits that she was acting as an IDEA special advocate to Skinger in submitting the FUNDING BRIEF. She therefore admits to violating a previous Court ORDER, namely, the permanent injunction that prohibits her "from participating in any way, directly or indirectly, in any case filed in this Court under the [IDEA]." Matthews, supra (ECF No. 221, at 1). In other words, rather than showing cause why Lucas should not be sanctioned, the RECUSE AND VACATE MOTION confirms that Lucas did in fact act in the very manner that the permanent injunction forbids her from acting in this Court. In sum, the arguments purportedly justifying the filing of the FUNDING BRIEF fail, and so Lucas has not shown cause sufficient to avoid

sanctions.

In what, in effect, acts as a collateral attack against the show cause ORDER by attempting to challenge the legality of the permanent injunction itself (which, in itself, is an improper argument at this juncture), the RECUSE AND VACATE MOTION again argues that the Court cannot prohibit Lucas from acting as a special advocate to Skinger in federal court. The Court has already rejected that argument, and, as noted, the initial ORDER imposing the permanent injunction was upheld by the Fourth Circuit. Lucas, 827 Fed. App'x at 367. That ORDER imposing the permanent injunction is final and cannot be challenged here.

In the current iteration of the challenge to the permanent injunction, the RECUSE AND VACATE MOTION cites three decisions: (1) "Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007)," (2) "Arons v. New Jersey Bd. of Educ., 842 F.2d 58 (3d Cir. 1988)," and "Hansen v. Republic R-III Sch. Dist., 201 F. Supp. 2d 1076 (W.D. Mo. 2001)." ECF No. 169, at 8.[18] The first two, Winkelman and Arons, are real cases that do not add any support to the current (and improper) challenge to the permanent injunction. The third case, which Lucas cites as "Hansen," does not exist. When searching for the reporter citation provided by Lucas, no case by that name

---

[18] The Court provides the exact citation as cited in the RECUSE AND VACATE MOTION.

41

returns. Instead, the closest case by citation that was found is:

In re Ramp Networks, Inc. Sec. Litig., 201 F. Supp. 2d 1051 (N.D. Cal. 2002).[19] And, that decision provides nothing of pertinence to this case.

The second argument is that the FUNDING BRIEF was filed in "an attempt to secure no-cost related services for co-defendant [H.S.] and Lucas herself, not legal representation." ECF No. 169, at 7, 9.[20] That statement is patently wrong and entirely misrepresents the content of the FUNDING BRIEF. In no portion of that brief does Lucas request that the Court appoint counsel for Lucas herself.[21] Although Lucas is a defendant in this action, she was not before Magistrate Judge Speight for the settlement

---

[19] The Court previously has admonished Lucas that she must not file papers containing nonexistent legal authority. Persisting in that practice likely represents an independent basis for imposing sanctions against her. ECF No. 170, at 23-26. The Court has not yet taken that step, however, and chooses not to do so again today in the hope that Lucas will learn from these admonishments and cease the practice in its entirety.

[20] Lucas incorrectly stated that her co-Defendant in the matter was Skinger's daughter, H.S., rather than Skinger himself. In doing so, Lucas again uses H.S.'s full name in a filing on the public docket after being repeatedly admonished, in both written ORDERS and oral instructions, to not do so. Lucas is again warned to not do so and that doing so makes her contentions that she is acting in the best interests of her minor clients lack credibility. Further, Lucas is advised that, if she includes identifying information of a minor again in any case, she will face criminal prosecution for contempt of court.

[21] Because it was submitted "on behalf of the Skinger family," the FUNDING BRIEF could potentially be construed as a request for legal counsel for H.S. However, H.S. is not a party to the action, making any such request unnecessary.

discussions between Skinger and PCSB. So, Lucas cannot attempt to reconstrue the FUNDING BRIEF as a request for legal counsel for herself in the settlement proceedings. In sum, the argument does not make sense nor does it have any support in the record.[22]

By its plain text, the FUNDING BRIEF was a request by Lucas "on behalf of the Skinger family to establish their legal entitlement to compensatory related services" in the form of the appointment of a publicly-funded attorney to represent Skinger in the Court-ordered settlement negotiations. ECF No. 157-1 (emphasis added).[23] Lucas' attempt to reframe that clear text falls flat. Therefore, this argument also fails to show sufficient cause why sanctions should not be imposed.

Lastly, in yet another improper collateral attack on the Matthews permanent injunction, the RECUSE AND VACATE MOTION argues that the permanent injunction is "preempted by the Supremacy Clause

---

[22] Lucas can, of course, retain outside legal counsel to defend the merits of the claims against her in the COMPLAINT. She has not done so, and has, instead, chosen to represent herself pro se, which is also her prerogative.

[23] The Court makes available to pro se litigants pursuing settlement the option to retain pro bono legal counsel. The Court informed Skinger of this option during a session of the April Evidentiary Hearing. ECF No. 102. Thereafter, Magistrate Judge Speight issued an ORDER further informing Skinger of this right and providing him with the necessary documentation to complete and return so that the Court could appoint him such counsel. ECF No. 103. Skinger submitted the requisite paperwork to have pro bono counsel appointed to him in his pursuit of a settlement with PCSB. ECF No. 179. That request came approximately three weeks after Lucas submitted the RECUSE AND VACATE MOTION.

where it conflicts with the exercise of rights under federal IDEA law." ECF No. 168, at 7. However, nothing in that motion explains how an injunction imposed by a federal court under the Court's equitable powers is preempted by the IDEA or any other federal statute. Instead, the RECUSE AND VACATE MOTION pivots to a second Supremacy Clause argument: That the Supremacy Clause prohibits "state court injunctions and bar regulations" from "prohibit[ing] conduct that is authorized or prohibited under federal law." Id. at 8 (emphasis removed). The Court is not aware to what "state court injunctions" that statement refers. And, the reference is not explained. In any event, the permanent injunction is a federal one. It appears that what the Supremacy Clause argument really seems to be getting at is that the Court cannot find that Lucas violated Virginia's statute that prohibits the unauthorized practice of law, Va. Code Ann. § 54.1-3904, because doing so is preempted by the IDEA and the Supremacy Clause of the U.S. Constitution. See ECF No. 169, at 9-10. That claim is made in a purely conclusory fashion without citation to any legal authority to support it other than general references to the IDEA and the United States Constitution. So, even when read in this highly liberal fashion accorded to pro se litigants, the argument as presented makes it practically impossible for the Court to

44

address.[24] Nonetheless, because Lucas is a _pro se_ litigant and is entitled to leniency in construing her arguments, the notion that the IDEA somehow preempts Virginia's unauthorized practice of law statute will be addressed.

Under the Supremacy Clause, federal law reigns supreme over state law. Consequently, federal statutes and regulations "can nullify conflicting state or local actions." College Loan Corp. v. SLM Corp., 396 F.3d 588, 595-96 (4th Cir. 2005). State laws are preempted only in three specific circumstances: "(1) when Congress has clearly expressed an intention to do so ('express pre-emption'); (2) when Congress has clearly intended, by legislating comprehensively, to occupy an entire field of regulation ('field pre-emption'); and (3) when a state law conflicts with federal law ('conflict pre-emption')." Id. None of these circumstances are present here.

Nowhere in the IDEA does Congress explicitly permit nonlawyer special advocates to practice law in state or federal court. Nor does the IDEA state anywhere that special advocates who attempt to practice law in state or federal court are not subject to unauthorized practice of law statutes. Therefore, neither express

---

[24] Furthermore, as is Lucas' wont, the argument is clothed in pejorative language, calling the show cause ORDER and other actions "retaliation as well as a hate crime of conspiracy against rights" against her without any evidence or justification for so claiming. ECF No. 169, at 10.

nor conflict preemption theories support Lucas' argument.

Further, the IDEA does not "occupy an entire field of regulation" such that field preemption exists. While the IDEA is a comprehensive federal education law, states' restrictions on the unauthorized practice of law have nothing to do with education, an entirely different "field." While it is possible that the IDEA may preempt state educational policy, that does not mean that the IDEA bears any import on states' restrictions of the unauthorized practice of law by nonlawyers. Therefore, the field preemption theory also does not support Lucas' argument.

After having been more generous to Lucas' arguments than was likely necessary, the Court does not see any reason to believe that Congress sought to preempt, or did in fact preempt, Virginia's statute that prohibits the unauthorized practice of law by nonlawyers in its jurisdiction.

Moreover, the Court's Local Civil Rules govern who can practice law in this Court. Local Civil Rule 83.1(A), thus, provides:

> Eligibility: Any person who is an Active Member of the Virginia State Bar in good standing is eligible to practice before the Court upon admission.

Local Civ. R. of the U.S. Dist. Ct. E. Dist. of Va. 83.1(A).[25] And,

---

[25] Local Civil Rule 83.1(E) provides for pro hac vice admission for foreign attorneys. Local Civil Rule 83.1(E). Local Civ. R. of the U.S. Dist. Ct. E. Dist. of Va. 83,1(E).

Local Civil Rule 83.1(C) specifies the requisite procedures for securing admission to practice in this Court. Only attorneys admitted under the applicable Local Civil Rule may practice law in this Court. Id. 83.1(G). And, any person who, without being properly admitted, "exercises any of the privileges of a member of the bar of this Court, or who pretends to be entitled so to do, shall be guilty of contempt of court and subject to appropriate punishment therefor." Id. 83.1(I).

It is not disputed that Lucas is not a member, active or otherwise, of the Virginia State Bar. It is undisputed that she has never been admitted to practice law before this Court. Thus, if Lucas engaged in conduct that is a privilege reserved for members of the bar of this Court by representing another person and providing services that only lawyers can provide, or if she pretended to do so, she is in contempt of court. That, of course, is what happened when Lucas filed the FUNDING BRIEF for and "on behalf of" Skinger.

In the last few pages of her RECUSE AND VACATE MOTION, Lucas makes sweeping claims about opposing counsel, and the undersigned, and their inability to "practice" "special education law" in Virginia because they lack the accreditation that Lucas says (erroneously) that she has as a special advocate as well as her education in the field. ECF No. 169, at 10-14. She claims that opposing counsel overstepped the bounds of their own powers of

47

representation as barred attorneys in this Commonwealth. Finally, she then goes on to list a litany of instances where, she claims, opposing counsel improperly billed for attorneys' fees in this matter. Id. All of this information and these claims are utterly irrelevant to the matter before the Court. None of it pertains to whether Lucas should (or should not) be sanctioned, and none of it purports to show cause why sanctions should not be imposed. Therefore, the Court does not address any of those assertions, and, instead, will strike that section of ECF No. 169 from the record as "redundant, immaterial, impertinent, or scandalous matter" pursuant to Fed. R. Civ. P. 12(f)(1).[26]

* * *

Having considered the entirety of the RECUSE AND VACATE MOTION, in a manner that affords its arguments the same due understanding and leniency afforded to all pro se litigants, it is clear that Lucas has failed to show cause why she should not be sanctioned for practicing law without a license in violation of Va. Code Ann. § 54.1-3904 and for participating as an IDEA special advocate to Skinger in violation of a permanent injunction against her, Matthews, supra, (ECF Nos. 220, 221). Therefore, the Court will sanction Lucas for a total amount of $6,000.00--$3,000.00 for

---

[26] The specific stricken material of ECF No. 169 begins on page ten (10) at Header "E." and continues through the bottom of page fourteen (14). ECF No. 169, at 10-14.

each violation. Lucas must pay that sanction by the date provided in the ORDER accompanying this MEMORANDUM OPINION. The Court concludes that this sanction is appropriate and necessary to deter repetition of the sanctioned conduct, and hopes that it indeed does deter Lucas from so acting in the future lest additional, and perhaps more severe, sanctions follow in its wake.

### III. CONCLUSION

For the foregoing reasons, the DEFENDANT KANDISE LUCAS'S MOTION FOR RECONSIDERATION OF MAY 23, 2025 ORDER (ECF NO. 157), ECF No. 168, will be denied, and the RENEWED MOTION TO RECUSE JUDGE ROBERT E. PAYNE AND TO VACATE PRIOR RULINGS FOR CAUSE, ECF No. 169, will be denied to the extent that it seeks to show cause in response to the show cause ORDER, ECF No. 157. Lastly, the material beginning on page ten (10) at Header "E." through the bottom of page fourteen (14) of ECF No. 169 will be stricken from the record pursuant to Fed. R. Civ. P. 12(f)(1).

The Clerk shall send a copy of this MEMORANDUM OPINION and the accompanying ORDER to Lucas.

It is so ORDERED.

_____  /s/    REP
                          Robert E. Payne
                          Senior United States District Judge

Richmond, Virginia
Date: July 31, 2025