IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

POWHATAN COUNTY SCHOOL BOARD,

    Plaintiff,

v.                        Civil Action No. 3:24-cv-874

TODD SKINGER AND
KANDISE LUCAS,

    Defendants.

**MEMORANDUM OPINION**

This matter is before the Court on COUNT I of Powhatan County School Board's ("PCSB") COMPLAINT, ECF No. 1,[1] which seeks permanent injunctive relief against Defendant Kandise Lucas ("Lucas") barring Lucas: (1) "from pursuing any further due process hearings [under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"),] concerning any Powhatan County student without first obtaining leave of this Court"; ECF No. 1, at 11, WHEREFORE ¶ (a); or, alternatively, (2) entering a "pre-filing injunction against Lucas barring her from pursuing any further due process hearings concerning H.S. [(a specific PCSB student)] without first obtaining leave of this Court"; id. at 11, WHEREFORE ¶ (b); and (3) entering "an injunction staying the

---

[1] Todd Skinger ("Skinger"), the father of H.S., was Lucas' co-Defendant in this case; however, on June 30, 2025, Skinger and PCSB reached a settlement, removing Skinger as a co-Defendant from the case and leaving Lucas as the sole Defendant. ECF Nos. 188, 193.

currently pending tenth due process hearing request pending further order of this Court." Id. at 11, WHEREFORE ¶ (c). Also pending are two related motions by PCSB seeking injunctive relief against Lucas, the MOTION FOR PRELIMINARY INJUNCTION, ECF No. 12 ("the PI MOTION"), and the EMERGENCY MOTION FOR PRELIMINARY INJUNCTION, ECF No. 14 ("the EMERGENCY MOTION") (collectively, the "MOTIONS"), which seek to preliminarily enjoin Lucas from continuing to pursue several due process complaints that she, on behalf of Skinger, has already filed against PCSB.

For the reasons set forth below, a permanent injunction will be entered that prohibits Lucas from participating, directly or indirectly, as a special advocate on behalf of any Powhatan County student, including the pursuit of any further due process complaints under the IDEA as to any Powhatan County student, without first obtaining leave of this Court.[2] As explained below, Skinger has settled this case with PCSB and, as part thereof, he has agreed to sever all professional ties with Lucas. And, of course, Lucas cannot proceed with any due process hearing as to H.S. without Skinger. So, the requested injunctive relief in WHEREFORE ¶ (b) is moot and will be denied as such. So too is the relief requested in WHEREFORE ¶ (c). Finally, the grant of injunctive relief requested in WHEREFORE ¶ (a) renders moot the PI

---

[2] This relief is granted as requested in COUNT I of the COMPLAINT, ECF No. 1, at 11, WHEREFORE ¶ (a).

MOTION, ECF No. 12, and the EMERGENCY MOTION, ECF No. 14. They too will be denied as moot.

## I. BACKGROUND[3]

This action was initiated by PCSB on December 6, 2024. In addition to the injunctive relief sought in COUNT I, PCSB seeks an award of attorneys' fees (COUNT II)[4] against Lucas and Skinger. The claims in COUNTS I and II arose from a series of actions taken by Lucas, on behalf of Skinger and H.S., against PCSB pursuant to the IDEA. So, it is necessary briefly to summarize: (1) the IDEA provisions under which that conduct occurred; and (2) the actions that precipitated the filing of this action.

### A. THE IDEA: A SUMMARY OF RELEVANT PROVISIONS

The IDEA guarantees students a "free appropriate public education." 20 U.S.C. § 1401(9). To ensure that objective is met, and as a condition to receive federal IDEA funding, the statute requires public schools to provide students with certain disabilities with an "Individualized Education Plan" ("IEP") that

---

[3] The factual and procedural history has been stated, and repeated, several times throughout the MEMORANDUM OPINIONS and ORDERS thus far entered in the case file. The Court restates here the portions of that record relevant to the resolution of the issues that it addresses today.

[4] Briefing and discovery are underway on the attorneys' fee claim (COUNT II), and an Evidentiary Hearing is set for October 20, 2025, to address the merits of that claim. ECF No. 206. Therefore, this MEMORANDUM OPINION only addresses the merits of the injunctive relief (COUNT I) requested in the COMPLAINT.

is to be devised (with the involvement of the school and the parents) to meet the needs of the particular student's disability. Id. § 1414(d). The IDEA permits "other individuals who have knowledge or special expertise regarding the child" to assist parents with the intricacies of this complex process. Id. § 1414(d)(1)(B)(vi). Those people are often referred to as IDEA "special advocates" and that appellation is used here. States are given the responsibility of devising a system that enables special advocates to act pursuant to the statute.

As instructed by the IDEA, Virginia created a statutory scheme that permits individuals to act as IDEA special advocates on behalf of students and families. Va. Code Ann. § 22.1-214. However, that system lacks structure, specificity, and regulation. The defects in Virginia's special-advocate system were manifest, for example, in Henrico Cnty. Sch. Bd. v. Matthews[5]:

> Virginia does not define the qualifications necessary to undertake [IDEA] representation. Nor does Virginia regulate or review non-attorney advocates who undertake a representational role in the due process hearing under the IDEA . . . [T]he course taken by Virginia is fraught with problems. And, in this case that approach was harmful to the parents and, more importantly, the child.

Matthews, 2019 U.S. Dist. LEXIS 171735, at *5. Those unremedied problems have allowed kindred results in this case.

_____

[5] Henrico Cnty. Sch. Bd. v. Matthews, No. 3:18-cv-110, 2019 U.S. Dist. LEXIS 171735 (E.D. Va. Oct. 2, 2019), aff'd sub nom. Henrico Cnty. Sch. Bd. v. Lucas, 827 Fed. App'x 367 (4th Cir. 2020) (per curiam) (unpublished).

The IDEA provides various procedural measures to assist in resolving issues that may arise in the creation and implementation of IEPs. 20 U.S.C. § 1415. One of those measures allows a special advocate (in coordination with the parent and on behalf of the parent and child) to file a "due process complaint" against the school that challenges the IEP proposed by the school officials under the IDEA. Id. § 1415(b)(6). If such a challenge is filed, an administrative hearing officer is assigned to conduct a "due process hearing" to resolve the administrative due process complaint. Id. § 1415(f). If the hearing officer rules in favor of the school's proposal, the parent may file an administrative appeal or choose not to do so. Id. § 1415(g). If the appeal is resolved against the parent, or if the parent chooses not to appeal an adverse administrative decision, the hearing officer's decision is final. Id. § 1415(k)(3). At that point, the hearing officer's decision can be reviewed in a civil action against the school in either state or federal court. Id. § 1415(i)(2). Likewise, the school board may administratively appeal a hearing officer's decision adverse to it and may thereafter seek judicial review in federal or state court. The IDEA also permits an award of attorneys' fees to a prevailing party. Id. § 1415(i)(3).

The IDEA also provides that, if an "issue separate from [one alleged in] a due process complaint already filed" with an administrative hearing officer arises, then the parent may file

5

another complaint at the administrative level. Id. § 1415(o) (emphasis added). In that case, the previously described process takes place as to the separate issue presented in the new due process complaint.

## B. THE ACTIVITY THAT FORMS THE BASIS FOR THIS ACTION

Beginning in April 2024, Lucas, in coordination with Skinger, filed nine due process complaints against PCSB challenging the IEP proposed for H.S. As explained below, hearing officers resolved each of those nine due process complaints adversely to Lucas and Skinger. None of those adverse decisions were appealed. Instead, Lucas and Skinger pursued the approach of filing successive IDEA due process complaints based on substantially the same set of operative facts as the previous ones, with some minor adjustments (sometimes, "the follow-on due process complaints").

The administrative hearing officers dismissed the original due process complaint on its merits. ECF No. 27, at 45. Thereafter, the respective hearing officers dismissed each of the eight follow-on due process complaints based on res judicata and/or collateral estoppel grounds because the follow-on complaints were based on the same set of operative facts as the first complaint and for other reasons. ECF No. 1, ¶¶ 9-31 Nonetheless, Lucas and Skinger filed a tenth due process complaint against PCSB. It was also based on the same set of operative facts as in the previously dismissed nine complaints. The record, which contains the due process

6

complaints (as well as the decisions of the administrative hearing officers) for each of the first ten due process complaints, fully substantiates that description of the history before the tenth follow-on due process complaint was filed. ECF Nos. 126-140.

After an administrative hearing officer again ruled against Lucas and Skinger on the tenth due process complaint, and after PCSB had filed this action, Lucas and Skinger filed an eleventh due process complaint involving the same set of operative facts as the previous ten that had been resolved in PCSB's favor.

So, on February 24, 2025, PCSB filed the PI MOTION, requesting that the Court preliminarily enjoin Lucas and Skinger from pursuing that complaint either by ordering its withdrawal or staying ("pausing") its administrative adjudication. ECF No. 12. Then, in less than a month, and while the PI MOTION was still pending, Lucas and Skinger filed an additional six due process complaints against PCSB, again based on the same set of operative facts as the ten previous proceedings decided adversely to Lucas and Skinger. In some instances, the additional due process complaints contained minor changes, but nothing meaningful was changed as part of the operative facts. ECF Nos. 142-147. Like the preceding ten due process complaints, these new ones sought home-schooling for H.S.

That conduct prompted PCSB to file the EMERGENCY MOTION, ECF No. 14. In the EMERGENCY MOTION, PCSB sought injunctive relief to halt the consideration of the newly filed follow-on due process

7

complaints at the administrative level and to further enjoin Lucas
and Skinger from filing any additional due process complaints on
the same set of operative facts as those already decided by
administrative hearing officers. ECF Nos. 14-15.

The Court convened an Evidentiary Hearing on the EMERGENCY
MOTION, which consisted of three sessions, one each on April 2, 9,
and 10, 2025. ECF No. 81, 98, 102. During that Hearing, it was
brought to the Court's attention that the Defendants had filed an
eighteenth administrative due process complaint on the morning of
April 2—just hours before the first session of the Evidentiary
Hearing began. At the conclusion of the Evidentiary Hearing's first
session on April 2, the Court issued an oral ruling that
temporarily stayed: (1) the consideration of due process
complaints thirteen through eighteen at the administrative level;[6]
and (2) the Defendants' ability to file additional IDEA due process
complaints at the administrative level until the resolution of the
Evidentiary Hearing. The temporary stay was partially lifted at
the conclusion of the third session of the Evidentiary Hearing on
April 10, 2025,[7] and the Court ordered additional briefing to aid

_____

[6] Upon the oral agreement of both parties, the Court did not
temporarily stay the consideration of due process complaints
eleven and twelve because due process hearing dates for those
complaints had already been scheduled and the complaints were
actively under consideration by administrative hearing officers.

[7] The temporary stay on the adjudication of the already-filed due
process complaints pending the resolution of the pending motions

in deciding the EMERGENCY MOTION. Id. at 19-20.

On June 30, 2025, the Court held a Motions Hearing to hear remaining argument on the EMERGENCY MOTION and to consider whether any issues remained before ruling on the PI MOTION and EMERGENCY MOTION. ECF No. 178. The day before that Hearing was convened, Skinger and PCSB settled the claims against Skinger. ECF Nos. 188, 189. As part of the settlement agreement, Skinger agreed to "sever his professional relationship with" Lucas as his IDEA special advocate and to no longer "confer with [her] concerning [H.S.'s] educational needs." ECF No. 188-1, at 1.

At the June 30 Hearing, the Court questioned whether injunctive relief was still appropriate against Lucas following Skinger's removal from the case because the IDEA only authorizes special advocates to bring due process complaints on behalf of disabled students—not on behalf of the special advocate. 20 U.S.C. § 1415. The Court also inquired into the effect of the recent decision of the Supreme Court of the United States in Trump v. CASA, Inc., ___ U.S. ___, 145 S. Ct. 2540, 222 L. Ed. 2d 930 (2025) as to whether it should, or could, impose, in this case, the injunctive relief requested in COUNT I of the COMPLAINT, ECF No. 1, at 11, WHEREFORE ¶ (a). Further briefing was ordered on those

_____

remained in effect, but the stay was lifted as to the filing of new due process complaints that were not based on the same set of operative facts as those already filed. ECF No. 104, at 19-20.

issues. ECF No. 206, at 1-2.

In its final supplemental brief, PCSB argues that, even in light of Skinger's settlement, and the consequent termination of his special-advocate relationship with Lucas, its claim for permanent injunctive relief against Lucas is not moot. ECF No. 210, at 2. In support of the position that the Court retains the authority to permanently enjoin Lucas from filing any IDEA due process complaints on behalf of any Powhatan County student against PCSB, it points to: (1) the detrimental conduct in which Lucas has engaged in the IEP processes and due process hearings in this case, and in others; (2) the damage inflicted by that conduct; (3) how Lucas continues the practice of filing repeated, redundant due process complaints on behalf of the students even after administrative hearing officers previously have denied closely related, or identical, preceding due process complaints (or, in some instances, how Lucas has filed such redundant due process complaints before the hearing officer has even ruled on pending complaints involving the same set of operative facts); (4) how Lucas continues to advocate on behalf of families who have severed the special-advocate relationship with her, such as Skinger and the Halvorsens (who were co-defendants with Lucas in a separate case before the Court), Powhatan Cnty. Sch. Bd. v. Halvorsen, No. 3:24-cv-216; and (5) how PCSB continues to be injured by the need to defend against those improper follow-on due process complaints.

10

ECF No. 210, at 2-5.[8]

Lucas was directed to file a response brief to PCSB's supplemental brief by July 10, 2025. ECF No. 206, at 1-2. Lucas did not do so. On July 14, 2025, PCSB timely filed a reply brief to note Lucas' lack of response and to reiterate its position that injunctive relief against Lucas remains appropriate. ECF No. 222.[9]

Although Lucas did not respond to PCSB's supplemental brief, she did respond to other portions of the ORDER that required her to file the response to PCSB's supplemental brief. That filing was ECF No. 214. And, even though Lucas did not file a response to PCSB's supplemental brief, she did submit a litany of other (unrelated) filings during the timeframe in which her response was due. E.g., ECF Nos. 215, 216, 217. She has also filed several additional briefs and motions since that time, but none of them provide a response to PCSB's supplemental brief as required by the ORDER, ECF No. 206. ECF Nos. 228, 229, 237, 238, 239, 257, 258. Taken together, these facts demonstrate that Lucas had the knowledge, capability, and capacity to file a response to PCSB's supplemental brief, but did not do so—whether by willful choice or

---

[8] PCSB also explains why the CASA decision does not foreclose the requested injunction because that injunction would only affect Lucas' ability to act as a special advocate, if granted. ECF No. 210, at 6-12.

[9] For both the supplemental brief, ECF No. 210, at 14, and the reply brief, ECF No. 222, at 4, PCSB certified that it sent an electronic version to Lucas on the same day as filing.

Case 3:24-cv-00874-REP    Document 270    Filed 08/29/25    Page 12 of 57 PageID# 5419

neglect.

Even though Lucas has not responded to PCSB's supplemental brief, she has filed, from time to time, various and sundry papers that might be construed to address PCSB's claims and motions for injunctive relief. Those filings include ECF Nos. 115 (STRUCK by ORDER ECF No. 171), 154 (STRUCK by ORDER ECF No. 205), 155 (STRUCK by ORDER ECF No. 205), 175, 180 (STRUCK by ORDER ECF No. 254), 187 (DENIED by ORDER ECF No. 255), 216 (DENIED by ORDER ECF No. 256), 217 (DENIED by ORDER ECF No. 256), 229 (DENIED by ORDER ECF No. 256).

Lucas is a pro se litigant who, under settled law, is entitled to a measure of leniency and understanding in consideration of the issues and arguments that she presents.[10] Therefore, in considering PCSB's request for permanent injunctive relief, the Court has given due consideration to each of Lucas' filings that can reasonably be construed to address the requested injunctive relief, even where

---

[10] Because pro se litigants lack the assistance of legal counsel, they are "entitled to have their pleadings given a liberal construction." Rashad v. Jenkins, No. 3:15-cv-655, 2016 U.S. Dist. LEXIS 27879, at *8 (E.D. Va. Mar. 3, 2016) (citing Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978)). Notwithstanding the leniency and understanding that the Court must provide to the filings of pro se litigants, they too "are subject to the time requirements and respect for court orders," Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989), as well as "procedural rules," Cooper v. FedEx Ground Package Sys., No. 1:16-cv-547, 2017 U.S. Dist. LEXIS 20996, at *2-3 (E.D. Va. Feb. 14, 2017) (citations omitted), "without which effective judicial administration would be impossible." Ballard, 882 F.2d at 96.

they are inappropriate, incomprehensible, untimely, or have been stricken. And, even though Lucas has not responded to PCSB's final supplemental brief, ECF No. 210, the Court addresses the merits of PCSB's arguments and considers the oral argument by Lucas made during the hearings on the MOTIONS in deciding whether to grant any of the requested injunctive relief.

The exhibits filed with PCSB's motions and brief, and the testimony and exhibits presented during the three-day April Evidentiary Hearing on the EMERGENCY MOTION, seemed to the Court to provide a complete record on the PI MOTION, the EMERGENCY MOTION, and the prayer for permanent injunctive relief sought in COUNT I of the COMPLAINT and its WHEREFORE ¶¶ (a), (b), and (c). But, to ensure that the requests for injunctive relief, including the request for permanent injunctive relief in the COMPLAINT, were ripe for decision, the Court convened a telephone conference between the parties to "assess whether the record is sufficiently developed for the Court to make a decision on the merits of the requested relief in the COMPLAINT as stated in the [WHEREFORE] paragraphs (a) and (b) on page 11. ECF No. 1, at 11." ECF No. 232.

During that telephone conference, the Court asked counsel for PCSB whether any additional evidence or argument needed to be presented before the adjudication of PCSB's permanent injunctive relief as requested in the COMPLAINT, noting that a decision on the request for a permanent injunction would necessarily subsume

13

the preliminary injunctive relief also requested by PCSB in ECF Nos. 12 and 14 (the PI MOTION and the EMERGENCY MOTION). Counsel for PCSB:

> [A]gree[d] that no further evidence is necessary to be taken for the Court for purposes of the injunctive relief, whether it's permanent, emergency, or preliminary in this particular aspect. And thinking about the permanent injunction, we don't believe that the Court needs any additional evidence. There's ample evidence in the record for the Court to enter a permanent injunction.

ECF No. 262, at 4.

When asked for her position, Lucas stated that:

> [T]here's definitely not sufficient evidence, specifically when you're looking at the fact that we have yet to receive all of the invoices, unredacted, to see exactly what is going on regarding the injunctive relief request, and who's involved in it.

Id. at 4-5. She also stated that:

> [T]here is a pending due process proceeding that was interrupted by this proceeding – by the emergency filing by Powhatan in which the hearing officer had already determined the issue to be litigated. And so none of that has been addressed.

Id. at 5.

> PCSB responded to Lucas' statements by pointing out that:

> [T]he invoices [do not] have anything to do with the injunctive relief. And [the attorneys' fees] issue the Court has already addressed as part of scheduling out the remainder of this case.

                    * * *

As per the injunctive relief, Mr. Skinger, per his settlement agreement, has agreed to sever ties with Dr. Lucas, and to not pursue due process complaints on behalf

> of his child with Dr. Lucas. So, the matters that were
> previously stayed, I think should likely be dismissed,
> but I haven't confirmed that with Mr. Skinger himself.
> But, again, . . . I don't think the fact that those
> matters remain has anything to do with whether or not
> the Court can proceed with the permanent injunction
> against Dr. Lucas at this time.

Id. at 5-6.

Lucas was afforded the final opportunity to address this issue. She stated that:

> [T]he invoices are key because as our forensic team was
> going through the information, we're finding that the
> school division did not make the decisions regarding
> [H.S.] The attorneys did. [Plaintiff's counsel] all
> billed for extra work related to the IEP development,
> discussed it with the superintendent. All of those
> invoices show the pattern of Sands Anderson engaging the
> school board's contracted duties. There were only four
> special licensed educators. So, when we say that they're
> not relevant, they're highly relevant because they
> identify who did what, when, and how.

Id. at 7-8.

PCSB is not entirely correct that the invoices for legal fees have nothing to do with the injunctive relief. That is because the fact that PCSB has incurred, and continues to incur, legal fees that cannot be recovered is a component of its claimed irreparable injury that is offered in support of PCSB's request for injunctive relief. However, the undisputed record is that PCSB has incurred significant legal fees because of Lucas' practice of filing the follow-on due process complaints; and that, absent injunctive relief, PCSB will continue to incur such fees. Whatever, if any, facts that Lucas may find in reviewing the fee invoices

for accuracy, the undisputed fact is that significant fees have been incurred, and paid, and more are on the way. And, the undisputed record is that Lucas cannot pay any fee award that PCSB might obtain. <u>Infra</u>.

So, the reasons offered by Lucas for further proceedings respecting the request for permanent injunctive relief[11] miss the mark. The review of the invoices for legal fees for discrepancies goes to the accuracy of the attorneys' fees claimed by PCSB, not to whether significant fees have been incurred and will continue to mount absent an injunction. So the review of the fee invoices does not mean that the request for a permanent injunction is not ripe for decision.

Therefore, having considered all papers and arguments, the Court determined, on July 22, that the record was complete as it pertained to the permanent injunctive relief requested as to Lucas in the WHEREFORE paragraphs (a), (b), and (c) on page 11 of the COMPLAINT, as well as to the preliminary injunctive relief requested as to Lucas in the PI MOTION and the EMERGENCY MOTION. After again considering all of the evidence and argument received, the Court is satisfied that the testimonial and documentary record has been fully developed, and that the parties have been given sufficient time (through both oral argument and briefing) to

---

[11] COUNT I as presented in the WHEREFORE paragraphs of the COMPLAINT, ECF No. 1, at 11, WHEREFORE ¶¶ (a)-(c).

present their positions on injunctive relief so that a decision can be issued on whether permanent injunctive relief in any form requested by the Plaintiff against Lucas is appropriate.

## II. FINDINGS OF FACT

Based on the testimonial and documentary record, and having considered the oral arguments pertaining to the evidence, the Court finds that the following facts have been proven by a preponderance of the evidence.

H.S. is a student in the public schools of Powhatan County, Virginia. H.S. also is a child who is covered by the IDEA and who is entitled to the educational benefits that it provides and to have her education directed pursuant to an IEP. Skinger is H.S.'s father.

Lucas holds herself out, and has also represented to the Court and to Skinger, that she is an IDEA special advocate licensed and certified by the Commonwealth of Virginia. But that is not true because Virginia neither licenses nor certifies IDEA special advocates. Powhatan Cnty. Sch. Bd. v. Skinger, No. 3:24-cv-874, 2025 U.S. Dist. LEXIS 147778, at *6 (E.D. Va. July 31, 2025) (ECF No. 246). However, Lucas does possess degrees and training in education. Specifically, she possesses a Doctor of Philosophy in Education (a Ph.D.) with a concentration in education law from Liberty University and she has certifications from the Virginia Department of Health Profession's Board of Counseling, including

17

QMHP-T and QMHP-C certifications. _Id._ at *5-6 n.2. And, Lucas has served as an IDEA special advocate for several years.

In April 2024, Lucas undertook to be a special advocate in the IEP process for H.S. The record does not reflect Skinger's contractual arrangements, if any, with Lucas. But, it does show that, beginning in April 2024, Lucas has been serving as a special advocate who, with Skinger, has interacted with PCSB officials about an IEP for H.S. ECF No. 77-1, ¶ 4. The record also shows that PCSB proposed an IEP for H.S. that, as is one of the IDEA's principal objectives, has her attending public school, while Skinger and Lucas have taken the view that H.S. must be schooled at home. The record of the due process hearings shows that Skinger and Lucas offered some evidence to support that view. But, that record also shows that PCSB offered evidence to support its view. That difference of views has precipitated the filing of some eighteen due process complaints by Lucas acting on behalf of Skinger and H.S. Those actions, in turn, spawned this action.

To challenge PCSB's IEP, Skinger and Lucas first filed a due process complaint on April 8, 2024. Like all of the due process complaints, the core issue was the homeschool/in-school issue, and the operative facts centered on that issue. On May 3, 10, and 16, Lucas, on behalf of Skinger, filed three more due process complaints. Those focused on the same issue but contained some additional evidence thought by Lucas to relate to the

18

homeschool/in-school issue. ECF No. 77-1, ¶¶ 6-7; ECF Nos. 24-28, 30.

As provided under the IDEA and Virginia law, a hearing officer was assigned. The hearing officer ("HO1") consolidated all four due process complaints because they "involved the same parties, the issues arose out of the same operative facts, and the witnesses are the same." ECF No. 77-1, ¶ 9 (internal quotation marks omitted). The due process hearing took place from June 18-21, 2024, and HO1 issued a decision on July 17, 2024 (amended July 31, 2024) resolving all issues in favor of PCSB. ECF No. 77-1, ¶¶ 9-11; ECF No. 27. That decision was not appealed and thus is final.

However, while those four due process complaints were pending before HO1, Lucas, on behalf of Skinger, filed another due process complaint on May 22, 2024. ECF No. 29. It was assigned to another hearing officer ("HO2") who, on June 10, 2024, issued a decision dismissing the complaint, finding that it presented issues already pending before HO1 that, although "not identical," were "intrinsically related to said issues." ECF No. 77-1, ¶¶ 13-14 (internal quotation marks omitted); ECF No. 30. The dismissal of that due process complaint was not appealed and thus it is final.

There followed more due process complaints in 2024, on August 5 and 8, September 17, October 7, and December 3, and, in 2025, on February 10 and 27, March 20 (two complaints), 21, and 24 (two complaints), ECF No. 77-1, ¶¶ 6, 15-33; ECF Nos. 31, 33, 35, 38,

40, 42-48, and April 2. Hearing officers decided the complaints that were filed on August 5, 2024, through December 3, 2024. ECF Nos. 32, 34, 36, 38, 41. Each was resolved adversely to Skinger and Lucas.[12] The complaints filed on February 10, 2025 and after, remained pending and have been stayed by order of this Court. ECF No. 104. None of the complaints decided by the hearing officers have been appealed. ECF No. 77-1, ¶¶ 12, 19, 29, 35.

On this point, it is well to recall that, as required by state law, PCSB filed, in the Powhatan Juvenile and Domestic Relations Court, a child in need of services petition ("CHINS") to address H.S.'s chronic absence from school. According to the record, the chronic absence occurred on Lucas' advice that H.S. should not attend school unless she was allowed to be schooled at home. See ECF No. 77-1, ¶ 39. On January 21, 2025, a state court judge resolved the CHINS petition and issued an order directing H.S. to return to school "all day, every day, for full academic schedule, without any unexcused absences." ECF No. 13, at 3. That order was part of the record considered by the hearing officers who decided due process complaints after the state court issued it on January 21, 2025.

Significantly, the hearing officers have continued to

---

[12] ECF No. 77-1, ¶¶ 17-18, 21-22, 25-26, 31-32; ECF Nos. 32, 34, 36, 38, 41.

conclude that the follow-on due process complaints are based on the same set of operative facts and barred by the doctrine of res judicata.[13] Typical of these findings is the decision resolving the August 5 and 8, 2024, due process complaints, finding that the complaints arose "from the same nucleus of operative facts involving the same parties" and that all "22 issues listed is barred by res judicata" (as to the August 5 complaint), ECF No. 32, at 1, 9, and, as to the August 8 complaint, finding that the "doctrine of res judicata bars all of the Parent's allegations . . . [because] [the] issues were either litigated or could have been addressed in the five due process hearing requests filed . . . between April 8, 2024 and May 22, 2024." ECF No. 77-1. ¶¶ 17-18; ECF No. 34, at 9.

The same fate was visited by the hearing officers on the other due process complaints that have thus far been decided. Every one was resolved against Skinger and Lucas and in favor of PCSB. Not one was appealed. ECF No. 77-1, ¶¶ 15-40; ECF Nos. 32, 34, 36, 38, 41.

And, so it came to pass that PCSB filed the COMPLAINT in this action. But, as explained above, that did nothing to stop the onslaught of due process complaints, filed by Lucas on behalf of

---

[13] In some decisions, the hearing officers have dismissed claims that are not addressable under the IDEA and thus are not properly included in a due process complaint. Infra, n.20.

Skinger and H.S., all arising out of the same set of operative facts. ECF Nos. 42-48.

Lucas' strategy to inundate PCSB with repetitive, vexatious due process complaints is not a new one. For example, in Henrico Cnty. Sch. Bd. v. Matthews, supra, the Court found that Lucas was engaged in a "scorched earth" practice of bringing endless, meritless, and repetitive due process complaints in an effort to cause Henrico County to incur such great expense that it would just capitulate to her IEP demands, without regard to the merits of the due process complaints and in complete disregard of administrative hearing officers' repeated dismissals of the due process complaints for lack of merit or repetition. Matthews, 2019 U.S. Dist. LEXIS 171735, at *23-25. In fact, Lucas, as to the Matthews' due process complaints, actually declared to a reporter from the Richmond Times Dispatch that:

> It was intentional to start filing due process [complaint] after due process [complaint] to show the financial impact we could have if the school division didn't address these issues.
>
> * * *
>
> We wanted to send a strong message to the school division: "If you don't listen to us, we will start costing you money." I think we got that message across.

Id. at *25 (emphasis added). Her admitted strategy was then clear: Overwhelm the school system with repetitive claims until it relents or is forced to incur significant legal fees to respond to the

successive, repetitive, and redundant claims. That same strategy
has animated Lucas' conduct as a special advocate on behalf of
H.S. As Lucas herself put it on March 21, 2025:

> We will continue to file one due process complaint for
> each day that PCPS, Sands Anderson, and the Hearing
> Officers are permitted to obstruct VIRGINIA FOIA, as
> amended; [sic] in violation of their own ethical codes
> to uphold state law . . .

ECF No. 82-1, at 1.[14] In fact, beginning last year, this action and
two other civil actions have been filed against Lucas in this Court
alleging that, in those three cases, Lucas continues to engage in
the same scorched earth practice that she was found to have engaged
in against Henrico County in the Matthews decision.

First came Powhatan Cnty. Sch. Bd. v. Halvorsen, supra, in
which Lucas filed ten due process complaints against PCSB on behalf
of the student, A.H. Hearing officers dismissed each for lack of
merit and/or repetitiveness. Powhatan Cnty. Sch. Bd. v. Halvorsen,
No. 3:24-cv-216, 2024 U.S. Dist. LEXIS 150086, at *2-7 (E.D. Va.
Aug. 21, 2024). Eventually, the Halvorsens reached a settlement
with PCSB, which, inter alia, severed the special-advocate
relationship with Lucas and left Lucas as the sole defendant in

---

[14] Of course, nothing in the IDEA permits use of its due process
hearing system to be used to enforce any Freedom of Information
Act ("FOIA") request. Likewise, Virginia's IDEA hearing officers
do not have authority to award any relief under any FOIA request.
Nonetheless, Lucas routinely includes in the due process
complaints demands for hearing officers to compel information
pursuant to Virginia's FOIA. E.g., ECF No. 38, at 12-14.

that case. After Lucas failed to properly respond to the Complaint
in Halvorsen, PCSB moved for default judgment against her, which
the Court granted on April 22, 2025. Halvorsen, supra, (ECF No.
55, at 1). As part of the judgment, Lucas was permanently enjoined
from acting as an IDEA special advocate and bringing IDEA due
process complaints against PCSB on behalf of A.H. The Court found
that such relief was justified because of the "scorched earth
practice" in which Lucas engaged in that case (the same practice
as in Matthews) and because of the harm that practice inflicted.
Id. at 5-6. Lucas appealed that decision, but the Fourth Circuit
dismissed her appeal. Powhatan Cnty. Sch. Bd. v. Lucas, No. 25-
1525, 2025 U.S. App. LEXIS 17083, at *1 (4th Cir. July 10, 2025).
Therefore, the judgment in Halvorsen is final.

Notwithstanding that injunction and the fact that the
Halvorsens severed their professional relationship with Lucas, she
continues to try to advocate on behalf of the Halvorsens. E.g.,
ECF No. 204-3, at 3, 5; 204-5, at 7;[15] see also ECF No. 210, at 3-
4 (describing filings made by Lucas in the Court of Appeals of
Virginia on behalf of the Halvorsens). That conduct is probative
of Lucas' disinclination to abide by Court orders, a factor to be

---

[15] The documents in ECF No. 204 were stricken from the record
because Lucas disobeyed orders prohibiting her from sending
substantive information regarding cases to the Court and its staff
via email. However, the documents contain information that shows
that Lucas was representing the Halvorsen family even after Lucas
and the Halvorsens had severed their professional relationship.

considered in the injunctive relief calculus.

Then came the second case—this one—which also seeks to stop Lucas' scorched earth practice against PCSB. Lucas has been sanctioned three times in this case: (1) for $3,000.00 after making material misrepresentations during a hearing, ECF No. 158;[16] (2) for $3,000.00 after practicing law without a license; and (3) for $3,000.00 after violating the Matthews permanent injunction by participating before this Court on behalf of Skinger as an IDEA special advocate. ECF No. 247.[17]

In emails sent to the Court, Lucas has indicated that she has continued to file administrative due process complaints on behalf

---

[16] Before the imposition of this sanction, the Court issued a SHOW CAUSE ORDER, ECF No. 119, requiring Lucas to show cause why she should not be sanctioned. She never responded. Therefore, the Court sanctioned her. ECF No. 158. After she was sanctioned, Lucas then chose to file a "Memorandum in Opposition of Sanctions" that did not show cause and did not present any new or meritorious argument for why she should not have been sanctioned. ECF No. 163.

[17] Before the imposition of the second and third sanctions, the Court issued a SHOW CAUSE ORDER, ECF No. 157, requiring Lucas to show cause why she should not be sanctioned. Lucas responded by attempting to show cause, ECF No. 168, at 7-15, and by asking the Court to reconsider and set aside the SHOW CAUSE ORDER. ECF No. 169. The Court denied the reconsideration motion, ECF No. 227. And, the Court found that Lucas did not sufficiently show cause to avoid being sanctioned and, consequently, sanctioned her for both violative actions. ECF No. 247.

The Court has also issued an additional SHOW CAUSE ORDER, requiring that Lucas show cause why she should not be sanctioned for violating several judicial ORDERS. ECF No. 243. That order required that Lucas submit a brief to show cause by August 14, 2025. She failed to do so. This issue will be addressed separately.

of H.S. as recently as May 16, 2025. ECF No. 204-2, at 9-12.[18]
However, Skinger is not shown as receiving a copy of that due
process complaint, and it does not otherwise appear that Skinger
himself was aware that Lucas was filing that due process complaint
on behalf of H.S. See ECF No. 204-2. In the wake of the settlement
agreement between PCSB and Skinger, Lucas, of course, cannot
continue to pursue these due process complaints on behalf of
Skinger's daughter because the special-advocate relationship
between Skinger and Lucas has been severed. ECF No. 188-1.

The third case brought against Lucas is Goochland Cnty. Sch.
Bd. v. Sims, No. 3:25-cv-238, which was filed on March 26, 2025.
In Sims, the Goochland County School Board ("GCSB") filed a
Complaint, id. (ECF No. 1), alleging that Lucas and her co-
Defendant Cheryl Sims ("Sims") have continued Lucas' strategy of
filing frivolous, repetitive, and vexatious due process complaints
against GCSB on behalf of Sims' grandchildren. At the time of the
filing of the complaint in Sims, a total of seven (7) due process
complaints had been filed on behalf of one of Sims' grandchildren,
Ca.G., and a total of nine (9) due process complaints had been
filed on behalf of Sims' second grandchild, Cr.G. Id. at 2. When
the Complaint in Sims was filed, all but the most recent due

---

[18] The Court ordered that these emails be given a docket number and
placed on the record and then simultaneously struck them for being
submitted in violation of a judicial order and in violation of
Fed. R. Civ. P. 12(c). ECF No. 203.

process complaint had been dismissed by the administrative hearing officers on the merits or for its repetitive nature. Sims, supra, (ECF Nos. 1-1 – 1-10).

In Sims, GCSB seeks the same relief against Lucas as PCSB seeks against her in this case, namely, a permanent injunction against Lucas from participating as an IDEA special advocate and filing IDEA due process complaints on behalf of Ca.G and Cr.G. as well as on behalf of any other present and future Goochland County student against GCSB. Id. (ECF No. 1, at 7-11). GCSB also seeks attorneys' fees from Lucas and Sims.

After Sims and Lucas failed to respond to the complaint, the Clerk granted GCSB's request to enter default against both Sims and Lucas. Id. (ECF Nos. 28 (Sims), 29 (Lucas)). Default judgment was subsequently entered against Sims, which resulted in an award of approximately $14,000.00 in attorneys' fees against her. Id. (ECF No. 52). Lucas contested the entry of default as to her, and so, the request for default judgment against her is pending. (ECF No. 30).

During the April Evidentiary Hearing in this case, Lucas called Sims as a witness. Lucas asked Sims whether she had any intention to stop filing due process complaints against GCSB until she got what she wanted from the school, even though over a dozen due process complaints submitted on behalf of her grandchildren had already been denied as meritless and/or repetitive. Sims

27

responded in the negative. When Lucas was later asked by the Court the same question, she too responded in the negative.

The record in this case, thus, teaches that, as in Matthews, Lucas continues to employ in the IDEA cases in which she serves as a special advocate the same improper, vexatious practice identified in Matthews. It also teaches that, notwithstanding the decision and injunction issued in Matthews, Lucas has no intention to abandon that practice.

Lucas' refusal to cease that practice, as found in Matthews, and to which Lucas has admitted in this case, was the basis of imposing in Halvorsen a permanent injunction prohibiting Lucas from acting as an IDEA special advocate and filing due process complaints on behalf of A.H. against PCSB. Halvorsen, supra, (ECF No. 55). In Halvorsen, the Court chose not to impose a permanent injunction against Lucas from participating as an IDEA special advocate and filing IDEA due process complaints against PCSB on behalf of any and all PCSB students. Today, for the reasons that follow, the Court finds that such injunctive relief is necessary in this case, and, thus, will permanently enjoin Lucas from participating as an IDEA special advocate and from filing, or continuing to pursue, IDEA due process complaints on behalf of any current and future PCSB students (including H.S.) against PCSB

without first obtaining leave from the Court to do so.[19]

### III. THE LEGAL STANDARD

A permanent injunction may be awarded only if PCSB proves that:

> (1) [PCSB] has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for the injury; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

eBay v. MercExchange, L.L.C., 547 U.S., 388, 391, 126 S. Ct. 1837, 14 L. Ed. 2d 641 (2006). Here, the record conclusively establishes that PCSB, having satisfied the eBay factors, is entitled to the permanent injunctive relief described below.

### IV. ANALYSIS

The analysis begins by recalling that PCSB's COMPLAINT presents three requests for injunctive relief. Specifically, in its WHEREFORE section, paragraphs (a), (b), and (c), the COMPLAINT asks the Court to:

> (a) Enter a pre-filing injunction against Lucas barring her from pursuing any further due process hearings concerning any Powhatan County student without first obtaining leave of this Court;

> (b) In the alternative, enter a pre-filing injunction against Lucas barring her from pursuing any further due process hearings concerning H.S. without first obtaining leave of this Court;

---

[19] The Court will address the similar claims relevant to the Sims case and GCSB separately as part of that case.

> (c) Enter an injunction staying the currently pending
> tenth due process hearing request pending further order
> of this Court.

ECF No. 1, at 11, WHEREFORE ¶¶ (a)-(c). Also, there is pending the PI MOTION, ECF No. 12, which seeks an order preliminarily enjoining Lucas from continuing to pursue due process complaint number eleven at the administrative level against PCSB, ECF No. 12, and the EMERGENCY MOTION, ECF No. 14, which seeks an order preliminarily enjoining Lucas from continuing to pursue due process complaint numbers fourteen through seventeen at the administrative level against PCSB, ECF No. 14.

### A. COUNT I, WHEREFORE ¶ (a)

In COUNT I, WHEREFORE ¶ (a), PCSB seeks a permanent pre-filing injunction prohibiting Lucas "from pursuing any further due process hearings concerning any Powhatan County student without first obtaining leave of this Court." ECF No. 1, at 11, WHEREFORE ¶ (a). In effect, such an injunction would prohibit Lucas from acting as an IDEA special advocate or filing any new IDEA due process complaints on behalf of not only H.S. but also on behalf of any and all current and future Powhatan County student against PCSB without first obtaining leave of the Court. To assess whether, and what kind of, if any, injunctive relief is appropriate, we take the analysis for each eBay factor in turn.

30

## 1. Irreparable Injury and Inadequate Remedies at Law

When the COMPLAINT was filed, Lucas, acting on behalf of
Skinger, had filed ten due process complaints against PCSB on
behalf of H.S. The record demonstrates that those due process
complaints were based on the same set of operative facts insofar
as they related to issues cognizable under the IDEA,[20] and all were
adjudicated by an administrative hearing officer who denied and
dismissed them either on the merits or for being repetitive and
therefore in violation of the principles of res judicata or
collateral estoppel. ECF No. 77-1, ¶¶ 15-40; ECF Nos. 27, 30, 32,
34, 36, 38, 41; ECF No. 104, at 5, 12.

After the COMPLAINT was filed, Lucas, on behalf of H.S., filed
at least eight more due process complaints against PCSB. ECF Nos.
42-48.[21] In the ORDER temporarily staying the adjudication of those
newly-filed due process complaints, the Court found that each new
due process complaint was also likely to be dismissed for the same

---

[20] Some of the due process complaints raised issues, such as FOIA
requests, allegations of various forms of fraud and barratry,
requests for student information pursuant to the Family
Educational Rights and Privacy Act ("FERPA"), and others, which
are just not covered by the IDEA and, thus, are issues that simply
cannot be decided by an IDEA hearing officer. ECF No. 82, at 24
n.9 (citing ECF No. 38, at 12-14, 17). Therefore, those extra-IDEA
complaints were properly rejected.

[21] The eighteenth request was not filed on the record and so does
not have a CM/ECF number. However, at the April Evidentiary
Hearing, PCSB informed the Court that an eighteenth due process
complaint was filed, which Lucas and Skinger confirmed on the
record in open court.

31

reasons as the ones prior. That is because those new complaints were based on the same set of operative facts as their predecessors with slight alterations to the text, ECF No. 104, at 13, or, as is Lucas's wont, those new due process complaints contained "matters over which an IDEA hearing officer has no jurisdiction, such as FOIA requests." Id.; supra n.20. "The hearing officers saw through this 'artful' pleading and rejected it. [Those new] Due Process [Complaints] are more of the same." ECF No. 104, at 13.

The record further demonstrates that Lucas, and the parents that she advises, never filed an administrative appeal, as permitted by the IDEA, 20 U.S.C. § 1415(g), to seek the review of any of the adverse decisions made by administrative hearing officers. Instead, after a due process complaint was disposed of in an adverse ruling, Lucas simply filed a new due process complaint based on the same set of operative facts, which sometimes added some new small point that did not alter the operative facts or added a matter not cognizable under the IDEA.

While filing a new due process complaint is permissible under the IDEA, the new complaint must be based on an "issue separate from [the issues alleged in] a due process complaint already filed." Id. § 1415(o) (emphasis added). Nowhere in its text does the IDEA permit or envision the practice in which Lucas continues to engage. No judicial decision interprets Section 1415(o) of the IDEA to permit its misuse by employing the tactics used by Lucas.

32

And, in many decisions by hearing officers, Lucas has been told as much. But, those admonishments have not deterred the now familiar practice that brought PCSB to seek injunctive relief against Lucas.

And, this practice is in pursuit of an insidious purpose: To force school boards, like PCSB, to expend their limited time, money, and human resources to address and defend against the claims in never-ending due process complaints or, as Lucas sees it, to cave to her demands—even though her demands have been dismissed as repetitive and meritless time and time again. See Matthews, 2019 U.S. Dist. LEXIS 171735, at *23-25. That, quite simply, is a gross misuse of the IDEA.

What happens to the children whom Lucas purports to represent during all of this frivolous, vexatious filing? The record shows that Lucas usually advises the parents to hold the child out of school until the school board caves in to her demands. In this case, H.S. was held out of school for almost a year, from February 5, 2024, to January 27, 2025, ECF No. 77, at 3 n.2; see ECF No. 77-1, ¶ 39, and so, she accumulated dozens of absences, resulting in the failure of many of her courses and her being retained in the sixth grade for the following school year rather than being promoted to the seventh grade. ECF No. 87.[22] In sum, the children

---

[22] Similarly, in the Halvorsen case, upon Lucas' consultation, A.H. did not attend public school for almost three consecutive years, during which time he attended only approximately six weeks of private schooling. This was after PCSB had proposed a new IEP,

are used as pawns in Lucas' match, and their interests are lost, and they are harmed, along the way. Matthews, 2019 U.S. Dist. LEXIS 171735, at *5.

The record shows that Lucas has practiced that strategy in Powhatan County.[23] For example, not only has Lucas brought the eighteen due process complaints on behalf of H.S., but also she has brought almost a dozen due process complaints against PCSB on behalf of A.H. Halvorsen, 2024 U.S. Dist. LEXIS 150086, at *2-7. As part of the Default Judgment ORDER in Halvorsen, the Court found that all eBay factors were satisfied, and, as it relates to the first and second factor, that:

> PCSB has incurred significant fees and costs to defend against all of the [due process complaints] that Lucas has filed [on behalf of A.H.] Attending to those requests imposes significant hardship on school officials, administrators, and staff who must devote their time and resources to address those [due process complaints]

which was rejected by the Halvorsens, after advisement by Lucas, without any reasonable proposed replacement. ECF No. 77, at 4 (citing Halvorsen, supra (ECF No. 33, at 3-6)); ECF No. 77-2, ¶¶ 40-41. And, in the Sims case, upon Lucas' consultation, Cr.G. and Ca.G. were removed from school by Sims for approximately two years without any replacement educational services being rendered. ECF No. 77-2, ¶ 11.

[23] Lucas also pursues the same strategy in other counties. In the Matthews case, Lucas brought seven due process complaints against the Henrico County School Board on behalf of the student in that case, G.M. Matthews, 2019 U.S. Dist. LEXIS 171735, at *8. In the Sims case, Lucas has thus far brought a combined sixteen due process complaints against the Goochland County School Board on behalf of Sims' grandchildren, Ca.G. and Cr.G. Sims, supra, (ECF No. 6). That is relevant here insofar as it is probative of Lucas' intent to continue the strategy against PCSB absent a permanent injunction that is enforceable, civilly and criminally.

34

rather than attending to students' needs. This has taken
a toll on the mental and emotional health and physical
performance of educators and staff members at PCSB's
schools;

\* \* \*

The mental, emotional, and physical toll exerted on
PCSB's teachers, administrators, and staff members as
well as the concomitant harm that students experience
due to diminished care, attention, and instruction
cannot be remediated by legal remedies. Furthermore, in
other cases before the Court, it has been demonstrated
that Lucas is likely judgment proof because of her
unwillingness or inability to pay monetary debts, even
under court order. Powhatan Cnty. Sch. Bd. v. Skinger,
No. 3:24-cv-874.

Halvorsen, supra, (ECF No. 55, at 3-4). The Court found that these
findings were sufficient to impose a permanent injunction against
Lucas from acting as an IDEA special advocate, and filing IDEA due
process complaints, on behalf of A.H. Those same findings are
proven by the record in this case.

Relatedly, the record in this case contains evidence that
Lucas continues to attempt to be a special advocate for A.H.,
notwithstanding the Default Judgment entered against Lucas in
Halvorsen, which prohibits such conduct, and the settlement
reached between PCSB and the Halvorsens that requires the severance
of Lucas' and the Halvorsens' special-advocate relationship. For
example, in many, if not most, of the papers that Lucas files in
this case, she provides arguments that seek relief from, contests
rulings in, or makes other statements about the rulings in
Halvorsen, all in an effort to continue to represent A.H. E.g.,

ECF Nos. 174; 180; 187; 204-3; 204-5; 216; 217; 237. In the Matthews case, the Court found that "Lucas filed the seventh due process complaint with Henrico County, <u>without the knowledge or consent of the Matthews</u>, and <u>when she knew that the Matthews had already moved to New Kent County</u>." <u>Matthews</u>, 2019 U.S. Dist. LEXIS 171735, at *22 (emphasis added) (footnote omitted).

Lucas' conduct in <u>Matthews</u> and <u>Halvorsen</u> teaches that she is continuing to act as a special advocate in cases that are pending before this Court even when she has been told not to by the Court and by former clients themselves. That is further illustrated by the fact that, in this case, Lucas has even filed a motion attempting to void the settlement agreement entered into between Skinger and PCSB. ECF No. 215.[24] Lastly, Lucas actually advised in open court at the April Evidentiary Hearing that she, like her co-defendant in <u>Sims</u>, would not stop filing due process complaints against school boards, including PCSB, until her demands are met.

Taken together, this evidence demonstrates that Lucas has every intention to continue to employ against PCSB the scorched earth strategy that she employed in <u>Matthews</u> and <u>Halvorsen</u>, and that she is currently employing in <u>Sims</u> and this case, until she is ordered to stop that practice by an injunction, the disobedience of which can be enforced with civil and criminal penalties.

---

[24] This motion will be addressed separately.

The real-world consequences of Lucas' scorched earth tactics are severe, irreparable, and have no adequate remedy at law. As the Court has already found:

> There is evidence that PCSB has incurred significant fees and costs associated with defending against all of [Lucas'] repeated [due process complaints]. There is evidence that attending to those requests takes significant time and resources from school officials. Those individuals must divert their energy and resources away from educating and providing for students, and, instead, toward dealing with the repetitive requests and complaints against them. Unsurprisingly, this also takes a toll on the mental health and physical performance of educators and staff members at PCSB's schools.

ECF No. 104, at 14.

Here, as in <u>Halvorsen</u>, the record proves that PCSB has sustained significant, irreparable injury in the form of: (1) unrecoverable legal fees to defend against the serial attacks mounted by Lucas in this case; (2) having to divert the limited fiscal and human IDEA resources available from other needful students to meet the barrage of improper due process complaints filed by Lucas as leverage to get PCSB to do as she wants; and (3) the emotional and physical toll imposed on PCSB's IDEA staff that is caused by the manner in which Lucas acts as a special advocate.

PCSB has filed initial documentation that substantiates the significant (almost $195,000.00) attorneys' fees that it already has incurred in defending against the due process complaints that Lucas has filed so far on behalf of Skinger and H.S. <u>See</u> ECF Nos.

37

152, 212.[25] And, the record shows that Lucas is highly unlikely to be able to pay any judgment award on the billed fees. As the Court already has found, Lucas is likely "judgment proof," ECF No. 104, at 8 n.6, because there is a civil judgment entered against her in a defamation case and the Default Judgment award in <u>Halvorsen</u> is approximately $330,000.00 (plus interest). Lucas has sought to have the state defamation judgment discharged in bankruptcy. And, she has not yet paid any of the balance of three separate $3,000.00 sanctions imposed upon her by this Court in this case. ECF Nos. 158, 247.[26]

So, although the attorneys' fee amount is quantifiable, there is no adequate legal remedy because an award of attorneys' fees that would remedy the financial harm already experienced by PCSB is not collectable. It is settled that an uncollectable award of money damages is not an adequate remedy at law. <u>Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.</u>, 22 F.3d

---

[25] The Court does not today address PCSB's attorneys' fees claim against Lucas (COUNT II) or the adequacy of the evidence to support that claim. A discovery schedule has been established on COUNT II and a Hearing has been set for October 20, 2025, to assist the Court in the consideration of the claim in that COUNT. ECF No. 206. Nevertheless, the record shows that PCSB has incurred almost $195,000.00 in invoices of attorneys' fees for addressing the due process complaints at issue and litigating this matter. ECF No. 152, at 12-13 (summarizing the invoices in ECF No. 152-1 through 152-26); ECF No. 212-2, at 7.

[26] Those payments are due to be paid to the Clerk's Office by August 29, 2025, at 5:00 P.M. ECF Nos. 247-248.

546, 551-52 (4th Cir. 1994); BMO Harris Bank, N.A. v. S & F Logistics, LLC, No. 3:20-cv-574, 2022 U.S. Dist. LEXIS 43226, at *23-24 (E.D. Va. Mar. 10, 2022).

Further, even if Lucas could ameliorate the financial hardship that she has caused to PCSB (she cannot), as has already been found in a previous ORDER:

> damages will not adequately compensate for the mental and physical toll exerted on teachers, staff members, and administrators at [PCSB's] schools. Nor will damages adequately compensate for the resulting reduction of teacher capacity to serve other special needs students who suffer from having school officials who are less attentive and available to respond to their needs. And, there is evidence that Lucas is abusive to the school officials.

ECF No. 104, at 14. These very real, intangible harms can in no way be remedied by an award of damages or fees. The record shows that PCSB officials and employees have already diverted "significant time and resources" and "energy . .. . away from educating and providing for [other] students [in need of IDEA services] and, instead, toward dealing with the repetitive requests and complaints against them" by Lucas. Id. For example, four PCSB administrators and teachers already have devoted 1,360 hours to responding to the due process complaints filed by Lucas on behalf of Skinger. That is 170 eight-hour days, or 34 work weeks. Time spent in that way is time taken away from other special needs students. ECF No. 91-1, at 2. These are "irreparable injuries" that have harmed, and continue to harm, PCSB, its

students, and its employees. A remedy at law cannot redress those harms.

Lucas' vexatious and harassing conduct is not confined to the filing of repetitive, meritless due process complaints. That is because Lucas' special advocacy is punctuated with mean and baseless allegations of improper, unlawful conduct. Specifically, Lucas freely accuses any school employee who does not agree with her about the contents of an IEP of being racist and of committing criminal conduct such as fraud, of being abusive, and of lying. Her vitriol is not confined to the School Board or its employees. As explained above, Lucas circulated, on a state-wide basis, vitriolic criticism about a hearing officer (who had rejected Lucas' views about an IEP) that was so intense that the hearing officer recused herself from that case and declined to accept assignment to any case in which Lucas was involved. ECF No. 91-2, at 2, 4-5.

Nor is Lucas' defamatory conduct reserved for PCSB. For example, Lucas has "repeatedly harassed [Goochland County School Board] staff, threatening their licenses and livelihood and making repeated baseless allegations of child abuse" against them. ECF No. 77-2, at 3-4. So defamatory was Lucas' public abuse of a school board employee of the Chesterfield County School system in an IEP matter that the employee was awarded $110,000 in damages ($65,000 in compensatory damages, and $45,000 in punitive damages) and costs

40

and fees amounting to $9,143.00 against Lucas for defamation. ECF No. 77-4, at 3-5. That evidence is probative of the serious nature of the way in which Lucas practices her IDEA strategy and the toll it takes on the employees who are subjected to it.

As another exemplar of how Lucas conducts herself as an IDEA special advocate when interacting with school officials in the IEP process, PCSB filed a recorded Facebook Live video of an IEP meeting. ECF No. 76.[27] In that video, Sims (Lucas' co-defendant in Sims, supra), recorded and livestreamed to Facebook an IEP meeting between herself and GCSB on behalf of Sims' grandchild, Cr.G. The meeting's purpose was to collaborate with Sims to finalize a draft IEP for Sims' grandchild. Lucas was present by telephone and was working with Sims as a special advocate.

Sims was told at the outset of the meeting by the school officials that she was not allowed to record the meeting and so they asked her to stop recording. Sims represented to those officials that she had stopped filming; however, instead, she put her phone that was recording the meeting into her purse but left the recording to continue. At that point, no video of the meeting is available, but sound was still audible from the recording.

While Sims was streaming the meeting on her phone, Lucas was

---

[27] At the beginning of the video, Sims identifies Lucas as the person to whom she is speaking with on the phone.

speaking to her on another phone. Throughout most of the meeting, Sims had Lucas on speaker phone and Lucas can be heard yelling at the school officials for various reasons, making demands of them for documentation or information, and interrupting them by shouting over them while they were talking and attempting to explain or read portions of a proposed IEP to Sims. Further, it is evident from the audio part of the exhibit that Lucas was either interrupting the proceedings by yelling into the phone or was speaking to Sims over the phone so that Sims was distracted during the meeting.[28] Indeed, near the end of the recorded portion of the meeting, Sims can be heard telling Lucas to "calm down," "hold on," or "wait" because Lucas' disruptions had grown so severe, and had been so persistent, that the school officials were telling Sims that they intended to end the meeting. ECF No. 76, at 33:50-34:14, 38:05-39:35. And, Lucas' interjections also impeded the ability of the school officials to communicate with Sims about the draft IEP and related documents.[29]

---

[28] Although some of these attempted interjections were less audible than others, it is possible to discern much of what Lucas says, and, it is quite obvious that Lucas is, in fact, yelling her interjections.

[29] When the school officials told Sims about the impediments that Lucas was creating and informed her that they were told that she was continuing to record the meeting after having been asked to stop doing so, Sims exclaimed that that was false, that they had no proof, and that the threat to shut down the meeting was more of the officials' practice of "lynching" Sims for her advocacy on behalf of her grandchild. ECF No. 76, at 44:32-36.

At several points during the meeting, Lucas spoke over the school officials and was telling Sims specific things to say or asking for specific information for the expressed purpose of creating a "record." E.g., id. at 37:46-47.[30] In so doing, Lucas' questions and interruptions prohibited the school officials from communicating to Sims meaningful information about Sims' grandchild's IEP, from answering Sims' questions, and from being able to finalize the draft IEP that was the subject of the meeting.

The video, ECF No. 76, demonstrates how Lucas treats school officials with whom she must interact when engaging in her kind of special advocacy on behalf of the children whom she purports to represent; namely, by abusing, demeaning, insulting, interrupting, and belittling them. It also shows how Lucas' disruptive actions make it next to impossible for real progress to be made in finalizing and effectuating IEPs for the children involved. And, it illustrates how Lucas can: (1) disrupt the normal functioning of schools and their employees; (2) waste the time of those officials; (3) divert resources away from the children who need them; and (4) demoralize school officials to the point of making

---

[30] Lucas does not state, and the video otherwise does not make clear, what "record" she was attempting to build. However, based on the due process hearing records in this case, it can reasonably be inferred that Lucas was trying to build a "record" of perceived violations or issues that occurred during the IEP meeting to form the basis of future due process complaints against the school board.

them unable to perform, or less effective at performing, their jobs on behalf of the public's school-aged children. Indeed, the March 26 IEP meeting was ended without the draft IEP being finalized and with Sims' grandchild remaining out of school.

The exhibit also discloses a most disquieting aspect of the approach to the IEP process and the scorched earth practice practiced by Lucas. Specifically, the exhibit discloses that Sims, with the knowledge of Lucas, brought to the IEP meeting one of Sims' grandchildren, Cr.G. Even before the meeting, the child was visibly upset and he cried loudly throughout the meeting. So loudly, in fact, that the meeting was utterly chaotic. When asked to remove the child so that the meeting could proceed, Sims refused, and told the school officials that "I want [Cr.G.] right in this room where he is, thank you. You traumatized him. You watch him and see the damage that you have caused." Id. at 10:01-10. In other words, Sims, with Lucas' knowledge and approval, used a disabled and distressed child as a pawn.

Lucas' disruptive and abusive practices are not confined to IEP meetings with school staff. They extend into the record in this Court. For example, pleadings that Lucas has filed in this case accuse, without any support, PCSB, counsel for PCSB, and even the Court of racist, criminal, and unethical conduct in words that, as accurately described by one administrative hearing officer, are vitriolic. ECF No. 91-2, at 2. And, Lucas has pursued a scorched

earth litigation strategy in this case by flooding the record with a proliferation of baseless, repetitive motions.[31] Lucas' conduct in this case confirms what she does in serving as an IDEA special advocate in due process hearings: she (1) consistently attacks, without any restraint, those who do not agree with her; and (2) files vexatious papers.

For her part, Lucas does not really seek to defend the abusive conduct in the filing of repetitive due process complaints. To the contrary, she actually vows to continue it. And, her habit is to file papers peppered with conclusory statements followed (sometimes) by citations to purported legal authority. Much of this cited authority has been found to be nonexistent. Powhatan

---

[31] By the Court's count, Lucas has, in total filed 25 motions in this case thus far. ECF Nos. 7, 9, 88, 115, 149, 150, 154, 166-169, 173-174, 180, 185, 187, 195, 217, 228-229, 237-239, 258. A few are innocuous. E.g., ECF Nos. 150 (requesting e-notifications of when documents are filed on the case's docket), 238 (requesting an extension of time to file a document). Many have been struck for reasons pursuant to Fed. R. Civ. P. 12(f). ECF Nos. 7, 9, 88, 115 (all struck via ECF No. 171); ECF No. 154 (struck via ECF No. 205); ECF No. 166 (struck via ECF No. 201); ECF No. 169 (struck in part via ECF No. 247); ECF No. 180 (struck via 254); ECF No. 185 (struck via ECF No. 250). Many were filed while Lucas was in Default and so were denied for that reason with leave to refile. ECF No. 256 (denying ECF Nos. 216-217, 228-229, 237, 239). Others have been denied or granted, in part or in whole, for reasons reflected in the record.

Similarly, in the Sims case, Lucas has thus far filed 16 motions. ECF Nos. 14, 17, 20-21, 24, 31, 35, 37, 39, 40-45, 47, 59. And, she has filed 14 in Halvorsen. ECF Nos. 13, 15, 19, 31, 43-44, 49-51, 58, 61, 65, 67-68. The last of the Halvorsen motions came after default judgment was entered against Lucas from which Lucas appealed and the Fourth Circuit dismissed that appeal.

Cnty. Sch. Bd. v. Skinger, No. 3:24-cv-874, 2025 U.S. Dist. LEXIS 104564, at *6-18 (E.D. Va. June 2, 2025) (holding that Lucas cited over forty nonexistent legal authorities across six filings and, as a result, striking from the record those filings) (ECF No. 170, at 5-20). None of it has been found pertinent to the issues and facts presented in this case. Id. And, in most instances, the filings contain ad hominin attacks of the ilk that has been previously described.

In sum, Lucas has offered no response to the COMPLAINT or to the eBay factors of irreparable injury or adequacy of legal remedy.

In the face of these irreparable harms, and considering that damages or other legal remedies will not ameliorate them, the first two eBay factors have been satisfied.

### 2. The Balance of the Hardships Warrants Equitable Relief

The third factor that PCSB must demonstrate is that, "considering the balance of the hardships between [PCSB] and [Lucas], a remedy in equity is warranted." eBay, 547 U.S. at 391. That factor is also satisfied.

As explained, PCSB bears the entirety of the financial harm that comes with responding to, and defending against, Lucas' meritless and repetitive due process complaints. Supra; ECF No. 104, at 15 ("This [harm] occurs by paying attorney's fees to address these actions as well as diverting the time and resources of teachers, administrators, and staff members to address the

46

repetitive requests."). The record shows that PCSB's employees suffer the emotional, mental, and physical harms wrought by Lucas' scorched earth strategy and the way in which Lucas conducts herself in the IEP process, which makes it more difficult for those employees to perform their IDEA obligations. And, the children whom Lucas represents oftentimes remain out of school for long stretches of time as a result of the strategy used in pursuit of the special-advocate services as engaged in by Lucas. That further harms PCSB by eroding its ability to perform the statutory obligation to give those children the free adequate public education mandated by the IDEA. Matthews, 2019 U.S. Dist. LEXIS 171735, at *5 (detailing how Lucas' scorched earth strategy ultimately "was harmful to the parents and, more importantly, the child"); ECF No. 1, ¶ 14 ("[S]ince working with Lucas, Skinger's minor child H.S. has not attended school since approximately February 5, 2024."). These harms can only be avoided by stopping the implementation of the strategy that Lucas uses in providing IDEA special-advocacy services.

Compared to the harm suffered by PCSB, Lucas will suffer very little harm, if any at all. Lucas is under no obligation to conduct herself and to engage in IDEA advocacy by using the strategy that she employs. Indeed, it is the Court's understanding that there are many IDEA special advocates in Virginia, and that they do not pursue such an approach to providing this service. Lucas could

47

properly follow the procedures of the IDEA, but she chooses not to do so in an effort to force PCSB to capitulate to her demands without regard to the merits of the positions for which she advocates.

Further, there is no evidence in the record that demonstrates that Lucas receives any sort of payment for her IDEA special advocacy by the parents of the child for whom she serves as a special advocate.[32] Nor is there evidence in the record that any state entity pays Lucas for her special advocate services. And, Lucas has offered no evidence that she will sustain any financial loss if she is forced to abandon the strategy that she has used in this and other IDEA proceedings. So, enjoining Lucas from acting as a special advocate, including from filing due process complaints, on behalf of Powhatan County students against PCSB has not been shown to be a substantial financial burden to Lucas. Nor has Lucas presented evidence of any non-monetary harm that the requested permanent injunctive relief would impose on her.

---

[32] For example, Skinger represented to the Court that he was destitute and could not afford to own a car or retain legal counsel, and that he generally struggled to make ends meet. It is the Court's understanding that Skinger did not pay Lucas for her services in advocating on behalf of H.S. It is also the Court's understanding that Lucas was not paid by the Halvorsens for the IDEA special advocacy on behalf of A.H. And, as part of the settlement with PCSB, Skinger was only required to pay $1.00 out of the thousands of dollars that PCSB sought in attorneys' fees against him. ECF No. 188-1.

But, even if the record did show some financial loss, or non-monetary harm, that Lucas would face if an injunction of the sort and scope sought by PCSB were issued, it is difficult to envision any harm that would be greater than the irreparable injury that PCSB has established.[33]

For all of these reasons, the balance of equities tips decidedly in PCSB's favor and warrants equitable relief in the form of a permanent injunction.

Of course, an "injunction 'must be narrowly tailored to fit the particular [factual] circumstances of the case'" that necessitate the extraordinary equitable relief. In re Head, 174 Fed. App'x 167, 168 (4th Cir. 2006) (per curiam) (unpublished) (quoting Brow v. Farrelly, 994 F.2d 1027, 1038 (3d Cir. 1993)). Here, the record shows that injunctive relief limited to the case of Lucas' advocacy on behalf of one specific child (e.g., Halvorsen, supra) is of no effect in curbing the abuses in which Lucas engages or in redressing the harm that those abuses have had on PCSB. The only injunction that will protect PCSB is one that permanently enjoins Lucas from acting as a special advocate, including from filing any IDEA due process complaints, on behalf

---

[33] And, because no Virginia entity credentials or oversees special advocates' IDEA advocacy, any injunction permanently prohibiting Lucas' advocacy will not run afoul of state procedures or regulations.

of any current or future Powhatan County student against PCSB without first obtaining leave of Court so that she cannot engage in the practices that have necessitated injunctive relief.

### 3. The Public Interest Would Not Be Disserved by a Permanent Injunction

The fourth factor that PCSB must demonstrate is that "the public interest would not be disserved by a permanent injunction." eBay, 547 U.S. at 391. That factor has been met as well.

On April 11, 2025, the Court held that:

> [I]t is in the public's interest that public school teachers, administrators, and staff members can devote their undivided attention to assisting their students and ensuring that they can provide every resource and opportunity for those students' success . . . [W]ithout an injunction, those educators will continue to disadvantage PCSB students' educational and professional development. This is true also for the student in this case, H.S., who continues to fall behind in her education as [Lucas] pursue[s her] serial filing tactics. Therefore, it is likely that a preliminary injunction would serve, rather than disserve, the public interest.

ECF No. 104, at 16. That statement remains as true today as it was four months ago, when the Court held that a temporary stay was warranted.

The record clearly reflects that Lucas' strategy, and the manner in which she conducts it, wreaks havoc on PCSB's employees and officials and on the ability of PCSB to provide services under the IDEA. In the implementation of that strategy, Lucas subjects school board employees to utterly unacceptable, demeaning, belittling, and insulting conduct that makes preparing an IEP an

50

impossible task, thereby frustrating the very purpose of the IDEA. And, what Lucas does actually diverts their attention, resources, and time from tending to the needs of all other PCSB students—both disabled and not—to dealing with the frivolous, meritless, and repetitive due process complaints that Lucas files. That has both a detrimental impact on PCSB's employees themselves, as well as, of course, the students whose IDEA needs they should be attending. And, PCSB must pay its attorneys the fees and costs associated with addressing all of the due process complaints that Lucas files, and the subsequent litigation that follows. That expenditure of resources for attorneys' fees diverts funds from the school's limited coffers that would, absent Lucas' abusive practices, be dedicated to supporting its employees and its students so that the best education, and IDEA services, could be provided to PCSB's students. Lucas' scorched earth practices have substantially harmed, and (if not stopped) will continue to substantially harm, any member of the public with children entitled to IDEA coverage in the Powhatan County schools, including, of course, the children themselves. Finally, Lucas' abuse of the IDEA due process system is a misuse of the IDEA. That misuse, as the record here shows, frustrates the objectives of the IDEA. It clearly is in the public interest to eliminate Lucas' practice that frustrates the IDEA.

After carefully reviewing the record, and, for the foregoing reasons, it is evident that all four eBay factors have been

established. Therefore, PCSB has met its burden to demonstrate that a permanent injunction is warranted. The Court will permanently enjoin Lucas from acting as an IDEA special advocate, directly or indirectly, including from filing or pursuing IDEA due process complaints, on behalf of any and all current and future Powhatan County students against PCSB without first securing leave of Court.

It is important to take a moment to explain to Lucas exactly what this permanent injunction does, particularly because Lucas oftentimes seems to misunderstand the boundaries of the Court's orders. In Matthews, the Court entered a permanent injunction prohibiting Lucas from "participating in any way, directly or indirectly, in any case filed in this Court" as an IDEA special advocate. Matthews, supra, (ECF No. 221, at 1-2).[34] As part of the default judgment entered in Halvorsen, the Court permanently enjoined Lucas from "pursuing any ongoing, or filing any new, [due process complaints] against PCSB on behalf of A.H., A.H.'s family, or Lucas herself." Halvorsen, supra, (ECF No. 55, at 6). The permanent injunction that the Court enters today goes farther than either the Matthews or the Halvorsen permanent injunctions because it has been determined that granting the same relief as in either

---

[34] That permanent injunction, of course, does not prohibit Lucas from conducting her own defense as a party to any case before the Court.

of those cases would not stop—indeed has not stopped the serious harm imposed upon PCSB by Lucas' strategy and conduct.

So, the permanent injunction that the Court imposes against Lucas today permanently prohibits her from acting as a special advocate, directly and indirectly, and therefore, from filing or pursuing any IDEA due process complaint, on behalf of <u>any and all, current and future</u>, Powhatan County student against PCSB without first obtaining leave so to do from the Court.[35] From now on, Lucas cannot engage in <u>any</u> special advocacy, directly or indirectly, against PCSB on behalf of any Powhatan County student in any IDEA proceeding. So, the permanent injunction requires that Lucas immediately and permanently cease her IDEA advocacy on behalf of any current Powhatan County student whom she represents. Lucas must also not take on any new Powhatan County students to represent as an IDEA special advocate. The <u>Matthews</u> injunction, of course, also remains in effect.

Finally, Lucas is admonished that failure to comply with this permanent injunction can result in both civil and criminal

---

[35] The injunction in no way prohibits Powhatan County students themselves from retaining a different IDEA special advocate who is not Lucas. Virginia has many IDEA special advocates who work on behalf of the students of its public schools. So, Powhatan County students and parents may still retain the services of those other IDEA special advocates to assist them in the creation and implementation of their IEP and to bring due process complaints against PCSB if issues arise.

penalties.

## B. COUNT I (WHEREFORE ¶¶ (b) AND (c)), THE MOTION, AND THE EMERGENCY MOTION

The permanent injunctive relief that the Court imposes today necessarily subsumes PCSB's other requests for injunctive relief, rendering them moot.

Under the mootness doctrine, a claim becomes moot when "the parties lack a legally cognizable interest in the outcome," United States v. Hardy, 545 F.3d 280, 283 (4th Cir. 2008) (quoting Powell v. McCormack, 395 U.S. 486, 496, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969))) (internal quotation marks omitted), which occurs when "the claimant receives the relief [that] he or she sought to obtain through the claim." Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 763 (4th Cir. 2011) (internal citation omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell, 395 U.S. at 496.

The injunctive relief granted to PCSB today renders moot the other requests for injunctive relief that remain pending. The relief requested in COUNT I, WHEREFORE ¶ (b) of the COMPLAINT seeks a permanent injunction against Lucas from acting as a special advocate, and from filing due process complaints, on behalf of Skinger and his daughter H.S. against PCSB. ECF No. 1, at 11, WHEREFORE ¶ (b). Because H.S. is a Powhatan County student, Lucas

54

can no longer represent Skinger or H.S. as an IDEA special advocate under the permanent injunctive relief that the Court imposes today. Therefore, through the permanent injunction imposed against Lucas today, PCSB has received the relief that it sought in COUNT I WHEREFORE ¶ (b), ECF No. 1, at 11, ¶ (b), and that request will be denied as moot.

The COMPLAINT also seeks injunctive relief against Lucas and Skinger under WHEREFORE (c), which seeks "an injunction staying the currently pending tenth due process hearing request pending further order of this Court." Id. at 11, ¶ (c). As part of his settlement with PCSB, Skinger agreed to: (1) sever his professional relationship with Lucas as his special advocate; (2) sign a more recent IEP for H.S. that would replace the old IEP, which was the subject of due process complaint number ten; and (3) not pursue any due process complaints that pertain to "issues which purportedly occurred prior to May 19, 2025." ECF No. 118-1, at 1-2. And, pursuant to the permanent injunctive relief entered today, Lucas can no longer act as a special advocate and pursue any pending due process complaint on behalf of any Powhatan County student, including H.S., which includes the adjudication of due process complaint number ten. Therefore, PCSB has received the relief that it sought in COUNT I WHEREFORE ¶ (c), ECF No. 1, at 11, ¶ (c). So, that claim for relief will be denied as moot.

The PI MOTION, ECF No. 12, seeks a preliminary injunction

55

against Lucas and Skinger from continuing to adjudicate due process complaint number eleven against PCSB. And, the EMERGENCY MOTION, ECF No. 14, seeks a preliminary injunction against Skinger and Lucas from the continued administrative adjudication of due process complaint numbers fourteen through seventeen and from the future filing of any more due process complaints against PCSB. The PI MOTION, ECF No. 12, and the EMERGENCY MOTION, ECF No. 14, are moot for the same reasons that the relief sought in COUNT I WHEREFORE (c) is moot.[36] Therefore, pursuant to the permanent injunctive relief entered today, PCSB already has received the relief it sought in the PI MOTION, ECF No. 12, and in the EMERGENCY MOTION, ECF No. 14. So, they will be denied as moot.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant COUNT I of the COMPLAINT in the WHEREFORE ¶ (a), ECF No. 1, at 11, WHEREFORE ¶ (a), and COUNT I in the WHEREFORE ¶¶ (b) and (c) of the COMPLAINT, ECF No. 1, at 11, WHEREFORE ¶¶ (b)-(c), will be denied as moot. The PI MOTION, ECF No. 12, and the EMERGENCY MOTION, ECF No. 14, will be denied as moot.

---

[36] At the A pril Evidentiary Hearing, PCSB also represented to the Court that, at that time, it was no longer seeking a temporary stay of the adjudication of due process complaint number eleven and twelve before the administrative hearing officer because the proceedings had already begun and PCSB did not want those proceedings interrupted. This serves as another basis for why the PI MOTION is moot.

The Clerk shall send a copy of this MEMORANDUM OPINION and the accompanying ORDER to Lucas and to the United States Marshal who shall serve it on Lucas.[37]

It is so ORDERED.

                                    /s/      REP
                              Robert E. Payne
                              Senior United States District Judge

Richmond, Virginia
Date: August 29, 2025

---

[37] Because of the significance of the injunctive relief granted, these requirements are imposed notwithstanding the provision of the ORDER, ECF No. 265, relieving the Clerk and the United States Marshal of such obligation.